UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **DANNY BRICENO SOLANO,**<br><br>    **Petitioner,**<br><br>    v.<br><br>**CHRISTOPHER MASON, Superintendent, South Central Regional Jail; MICHAEL T. ROSE, Acting Field Office Director, Philadelphia Field Office, United States Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; PAMELA JO BONDI, United States Attorney General,** *in their official capacities*,<br><br>    **Respondents.** | CASE NO.: |

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

1. Petitioner, Danny Briceno Solano, by and through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge his ongoing civil immigration detention by the United States Department of Homeland Security and its agents. Petitioner is a citizen and national of Venezuela and is currently detained in the custody of Immigration and Customs Enforcement at South Central Regional Jail ("SCRJ") in Charleston, West Virginia.

2. Petitioner seeks immediate release from immigration detention, or in the alternative, an order directing Respondents to provide him with a constitutionally adequate custody

1

hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions.

3. Petitioner was previously placed in removal proceedings that were ultimately dismissed on January 7, 2025, on motion of the Department of Homeland Security. In these proceedings, Petitioner filed a *pro se* application for asylum and withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, and protection under the Convention Against Torture, based on persecution he suffered in Venezuela, including kidnapping in Zulia at the hands of a guerrilla group associated with the Venezuelan government.

4. Petitioner's continued civil confinement, maintained without any individualized custody determination by a neutral decisionmaker authorized to assess flight risk, danger to the community, or the availability of conditions of release, violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Civil immigration detention must bear a reasonable relation to its purported purpose and may not be imposed in a punitive or arbitrary manner. Accordingly, issuance of the writ of habeas corpus is warranted.

## JURISDICTION & VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner is in federal immigration custody and challenges the legality of his ongoing civil immigration detention by the United States Department of Homeland Security and its officers. The relief sought lies at the core of the writ of habeas corpus.

6. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action raises questions of federal law arising under the Constitution and laws of the United States, including the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

7. The Suspension Clause of the United States Constitution independently guarantees Petitioner the right to seek habeas corpus review to test the legality of his physical confinement where no other adequate and effective remedy exists.

8. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because at least one Respondent is in this District, Petitioner is detained in this District, Petitioner's immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("the proper respondent to a habeas petition is 'the person who has custody over [the petitioner]'") (quoting 28 U.S.C. 2242).

## PARTIES

9. Petitioner Danny Briceno-Solano is a citizen and national of Venezuela and is currently detained by Respondents at South Central Regional Jail ("SCRJ"), a West Virginia state jail with which ICE has a task order for detention services/bed space. As of the date of filing (January 20), Petitioner is in his tenth day in ICE custody since he was detained on January 11, when he was arrested on Interstate 77 without a warrant.

10. Respondent Chrisopher Mason is the Superintendent of South Central Regional Jail, where Petitioner is currently detained. He is the physical custodian of Petitioner and is named in his official capacity.

11. Respondent Michael T. Rose is the Acting Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in his official capacity.

12. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

13. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

14. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

## FACTUAL BACKGROUND

15. Danny Briceno Solano is a citizen and national of Venezuela. He is a noncitizen present in the United States and is subject to civil immigration custody by the United States Department of Homeland Security.

16. Petitioner entered the United States in or about June of 2022 and has resided in Clinton, North Carolina. During his time in the United States, Petitioner applied for and received Temporary Protected Status (TPS) (*Exhibit A*), an Employment Authorization Document (work permit) (*Exhibit B*), and a North Carolina driver's license (*Exhibit C*). He is employed as a contractor and is a taxpayer. He is married and supports his wife and child, who also reside in the United States.

17. Petitioner was previously placed in removal proceedings that were ultimately dismissed on January 7, 2025, on motion of the Department of Homeland Security. In these proceedings, Petitioner filed a *pro se* application for asylum and withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, and protection under the Convention Against Torture, based on persecution he suffered in Venezuela, including kidnapping at the hands of a guerrilla group associated with the Venezuelan government.

18. Petitioner is currently detained in the custody of Immigration and Customs Enforcement at SCRJ. ICE took Petitioner into custody on Interstate 77 on January 11, 2026.

19. Petitioner's detention is civil and administrative in nature. On information and belief, his confinement is not based on any criminal conviction or charge.

20. While detained, Petitioner remains physically confined and deprived of his liberty as his immigration case proceeds through the administrative process.

21. On information and belief, no Immigration Judge has conducted an individualized custody determination assessing whether Petitioner's continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release.

22. On information and belief, no immigration officer or decisionmaker has determined that continued physical confinement is justified by a legitimate governmental purpose in Petitioner's case—i.e., the risk of flight or danger to the community.

23. Although Petitioner's detention is civil in character, it has resulted in ongoing physical confinement without release.

24. Petitioner remains detained while his immigration proceedings continue, without any individualized custody review reflected in the record.

25. As a result, Petitioner continues to suffer a deprivation of physical liberty solely on the basis of civil immigration detention.

26. Petitioner's detention has imposed significant restraints on his freedom of movement and personal autonomy. Petitioner was previously detained in Southern Regional Jail and is now detained in SCRJ.

27. On information and belief, there has been no mechanism by which Petitioner has received a meaningful opportunity to challenge the necessity of his continued detention.

28. Absent judicial intervention, Petitioner will remain detained without an individualized custody determination addressing whether continued confinement is necessary or justified.

## STANDARD OF LAW

29. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (cleaned up). A petitioner may seek a writ of habeas corpus when their custody violates the US Constitution or a federal law. 28 U.S.C. § 2241(c)(3), which should be granted if the petitioner meets their burden of proof–a preponderance of evidence. *See Post v. Boles*, 332 F.2d 738, 742 (4th Cir. 1964); *see also*, *e.g.*, *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *3 (D. Minn. 2025) (collecting cases).

30. The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless *for good cause* additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

31. Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022). Other courts in the Fourth Circuit have declined to require prudential exhaustion when evaluating a detained immigrant's petition under similar circumstances. *See Duarte Escobar v. Perry*, No. 3:25-cv758, ___ F.Supp.3d ____, 2025 WL 3006742, at *5 (E.D. Va. Oct. 27, 2025); *Velasquez v. Noem*, No.

GLR-25-3215, ___ F.Supp.3d ___, 2025 WL 3003684, at *2, 2025 U.S. Dist. LEXIS 210601, at *5 (D. Md. Oct. 27, 2025). Here, petitioner's liberty interests significantly outweigh any interest in exhausting administrative remedies when the agency has "predetermined the issue before it" and has no intention of granting petitioner an opportunity for release. *Id.*; *Velasquez*, F.Supp.3d ___, 2025 WL 3003683, at *2, 2025 U.S. Dist. LEXIS 210601, at *5 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 148, 112 S. Ct. 1081 (1992)).

32. "[T]he Due Process Clause applies to all 'persons' within the United States, including [immigrants], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

33. In July of 2025, DHS began ignoring the decades-long consensus of how 8 U.S.C. § 1225(b)(2) should be interpreted; the Board of Immigration Appeals ("BIA") articulated this new policy in a subsequent precedential ruling. *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA Sept. 5, 2025). Respondents now claim that individuals who are arrested while residing within the United States are somehow "seeking admission."

34. However, the overwhelming majority of district courts across the country, including numerous courts within the Fourth Circuit, have made clear that 8 U.S.C. § 1225(b)(2) only authorizes detention for noncitizens who are at the border seeking physical entry at the time of detention, not those who reside in the United States, whose detention is discretionary and governed by 8 U.S.C. § 1226(a). *See, e.g.*, *Villanueva v. Bondi*, No. 25-cv-4152-ABA, 2026 WL 100595, 2026 U.S. Dist. LEXIS 6852 (D. Md. Jan. 14, 2026); *Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, 2025 U.S. Dist. LEXIS 194070 (E.D. Va. Sep. 29, 2025); *Said v. Noem*, No. 3:25-cv-00938-MOC, 2025 WL 3657217, 2025 U.S. Dist. LEXIS 260237 (W.D.N.C. Dec. 17, 2025); *Mercado v. Francis*, No. 25-cv-6582 (LAK), ___ F.Supp.3d ___, 2025

WL 3295903, at *4, 2025 U.S. Dist. LEXIS 232876, at *9 (S.D.N.Y. Nov. 26, 2025) (finding that challenges to the new mandatory detention scheme had prevailed in 350 out of 362 cases decided by over 160 different judges).

35. Only under certain circumstances are immigrants subject to ongoing detention without a bond hearing. *See*, *e.g.*, 8 U.S.C. § 1226(c) (individuals with certain criminal convictions may be detained without a bond hearing for the pendency of removal proceedings[1]) *and* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (authorizing mandatory detention of immigrants in expedited removal proceedings).

36. Otherwise, the "default rule" is that detention of immigrants already present in the United States and subject to pending removal proceedings is governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

37. Under this default rule, detained immigrants are constitutionally and statutorily entitled to a bond hearing. *See*, *e.g.*, *Campos-Flores v. Bondi*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303 (E.D. Va. Dec. 2, 2025); *Lopez v. Lyons*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, 2025 U.S. Dist. LEXIS 232158 (E.D. Va. Nov. 25, 2025).

## CLAIMS FOR RELIEF

### COUNT ONE

### Fifth Amendment Due Process

*Petitioner is being deprived of an adequate and meaningful process to challenge his ongoing confinement.*

38. Petitioner realleges and incorporates by reference the allegations contained above.

---

[1] Even when detained under 1226(c), immigrants retain due process rights and are entitled to a hearing if the period of detention becomes unreasonable. *See*, *e.g.*, *Portillo v. Hott,* 322 F. Supp. 3d 698, 709 (E.D. Va. 2018).

39. Petitioner has due process rights as a resident of the United States. *Zadvydas*, 533 U.S. at 693.

40. Civil immigration detention is constitutionally permissible only when it is reasonably related to a legitimate governmental purpose and is accompanied by adequate procedural safeguards. Detention that becomes arbitrary or imposed without an individualized determination of necessity violates the Due Process Clause.

41. Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

42. Here, all three factors favor the petitioner.

43. First, Petitioner has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner currently experiences the gambit of deprivations that come with physical detention, including separation from his family and his community, barriers to full participation in his pending immigration proceedings and forced imprisonment under inhumane and overcrowded conditions.

44. Second, Petitioner has already been deprived of this interest and will continue to be deprived of this interest if the current procedure (detaining Petitioner without a legal basis) is followed. With his lack of criminal record, employment, family ties, history of participation in removal proceedings, and the favorable termination of his prior removal proceedings, there is no rational explanation for detaining Petitioner. Even if he were detained properly under 8 U.S.C. § 1226(a), he has a strong likelihood of meeting the criteria for being released on bond. 8 CFR 236.1(c)(8); 8 CFR 1236.1(c)(8); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999).

45. Lastly, the Government has no legitimate interest in refusing to follow its own rules. Petitioner poses no safety threats to the community. Releasing him, or holding a hearing to release him on bond, would in fact *save* the government the resources and expense of continuing to imprison him.

46. The placement of Petitioner in detention pending the resolution of his ongoing immigration court proceedings violates Petitioner's constitutional right to due process guaranteed by the Fifth Amendment.

## COUNT TWO

### Immigration and Nationality Act, 8 U.S.C. § 1226

*Petitioner's Ongoing Detention, without the Opportunity for a Bond Hearing, Violates his Statutory Right to a Hearing as Guaranteed by 8 U.S.C. § 1226*

47. Petitioner realleges and incorporates by reference the allegations contained above.

48. Respondents' attempt to apply mandatory detention through 8 U.S.C. § 1225(b)(2) to Petitioner violates the Immigration and Nationality Act.

49. Petitioner is detained, without being afforded an opportunity to advocate for his release back into his community as the law requires.

50. In the absence of an individualized custody determination, Petitioner's continued detention is not meaningfully tethered to the limited statutory purposes authorized by the Immigration and Nationality Act.

## COUNT THREE
## Violation of the Administrative Procedure Act

51. Petitioner realleges and incorporates by reference the allegations contained above.

52. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

53. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

54. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States. Such noncitizens could potentially be detained under § 1226(a) but would then be eligible for release on bond unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

55. Nonetheless, the Board has adopted a policy and practice of applying § 1225(b)(2) to Petitioner and others in the same position.

56. Respondents through its recent administrative decision failed to articulate any reasoned explanations for new interpretation of the Act. The Board's decision represents a change in the agencies' policies and positions that negates the plain language of the Act, the will of Congress, and decades of administrative precedent.

57. The application of § 1225(b)(2) to Petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. See 5 U.S.C. § 706(2).

58. Further, the continued detention of Petitioner is the absence of any articulated individualized assessment addressing whether detention is necessary to ensure appearance at future proceedings or to protect the community in light of Petitioner's individual circumstances constitutes arbitrary and capricious agency action and must be set aside.

### COUNT IV: VIOLATION OF THE EQUAL PROTECTION GUARANTEE OF THE FIFTH AMENDMENT

59. Petitioner realleges and incorporates by reference the allegations contained above.

60. The Fifth Amendment prohibits the federal government from treating similarly situated persons differently unless the differential treatment bears a rational relationship to a legitimate governmental purpose.

61. By continuing to detain Petitioner without providing access to an individualized custody determination, the Department of Homeland Security has subjected him to disparate treatment that is not supported by a rational justification tied to the purposes of civil immigration detention.

62. The unequal denial of access to individualized custody process, as applied to Petitioner, lacks a rational basis and violates the equal protection component of the Fifth Amendment.

### COUNT V: VIOLATION OF THE SUSPENSION CLAUSE OF THE UNITED STATES CONSTITUTION

63. Petitioner realleges and incorporates by reference the allegations contained above.

64. The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion

or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Suspension Clause guarantees the availability of judicial review to test the legality of executive detention.

65. Where no adequate and effective administrative substitute exists to permit review of executive detention, habeas corpus remains the sole means through which a detained individual may challenge the lawfulness of confinement.

66. Absent access to habeas corpus review, Petitioner would have no forum in which to test whether his continued civil immigration detention exceeds the limits imposed by the Immigration and Nationality Act and the Constitution.

67. The Suspension Clause forbids the government from maintaining a detention framework that eliminates all meaningful opportunity for a detainee to challenge the legality of executive confinement.

68. Petitioner's continued civil immigration detention, without access to any individualized custody review, falls within the core protections safeguarded by the Suspension Clause.

69. By continuing to detain Petitioner under civil immigration authority without providing any meaningful mechanism to challenge the legality of his confinement, Respondents have violated the Suspension Clause of the United States Constitution.

## REMEDY

70. An available remedy for Respondents' unlawful conduct as outlined in this complaint is for Petitioner to be released.

71. Immigration detention is civil in nature, and as a result Congress must have expressly authorized it by statute, and the detention must be reasonably related to its statutory purpose. *Zadvydas*, 533 U.S. at at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

72. Since Section 1225 does not apply to noncitizens who are in Petitioner's situation– who have been detained while residing within the United States—the law that Respondents are using to detain Petitioner simply does not apply so as to authorize Petitioner's detention.

73. When a habeas petitioner's detention is without legal basis, the typical remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

74. Respondents likely will argue that if the Court rules that Petitioner should have been detained pursuant to § 1226, instead of § 1225, then the remedy is a bond hearing as opposed to outright release. Candidly, many district courts have ordered the remedy of a bond hearing as opposed to outright release. Others, however, have ordered outright release, which is most appropriate under the circumstances of this case. *See Diego L. v. Bondi*, No. 26-CV-382, 2026 WL 145206, at *3-4 (D. Minn. Jan. 20, 2026) (Nelson, J.); *Washington G. v. Bondi*, No. 26-CV-250, 2026 WL 125173, at *1, *3 (D. Minn. Jan. 16, 2026) (Bryan, J.); *Juan R. v. Bondi*, No. 26-cv-252, 2026 WL 125255, at *2-3 (D. Minn. Jan. 16, 2026) (Nelson, J.); *Ahmed M. v. Bondi*, No. 25-cv-4711, 2026 WL 25627, at *3 (D. Minn. 2026) (Tostrud, J.); *Tzi v. Jamison*, No. 26-0099, 2026 WL 116486, *3 (E.D. Pa. Jan. 15, 2026) (ordering petitioner's immediate release and noting that "[s]ince Tzi has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful"); *Cristancho Nava v. Jamison*, No. 26-151, 2026 WL 126152 (E.D. Pa. Jan. 16, 2026); *Mardet v. Jamison*, No. 25-7169, 2025 WL 3772152 (E.D. Pa. Dec. 31, 2025); *Salinas Jaigua v. Jamison*, No. 25-7115, 2025 WL 3757076 (E.D. Pa. Dec. 29, 2025).

75. Here, release is the most appropriate remedy. First, detention is unlawfully based on 8 U.S.C. §1225, which does not apply to Petitioner, and Respondents have failed to properly

invoke any valid statutory basis for detention. Second, even if 8 U.S.C. §1226, were properly invoked, Petitioner has already suffered a deprivation of the custody determination process which he is due. *See* paragraph 74, *supra*. Moreover, as explained by the Fourth Circuit in *Miranda*:

> [The Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention. The first opportunity is with an immigration officer. *Id.* § 1225(a). An immigration officer is authorized to release the [noncitizen] if the officer is satisfied that the [noncitizen] is not a danger to the community or a flight risk. 8 C.F.R. § 236.1(c)(8). If the immigration officer decides to release a[ ] [noncitizen], the officer may set a bond or place conditions on the [noncitizen's] release. *Id.* If an immigration officer denies bond, sets bond at an amount the [noncitizen] believes is too high or sets alternative conditions to bond the [noncitizen] contends are unreasonable, a[ ] [noncitizen] may appeal the officer's bond determination to an immigration judge, giving the [noncitizen] a second opportunity at release. . . .
>
> The first [opportunity], which occurs before an immigration officer, occurs almost immediately upon an alien being detained. The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter.

34 F.4th at 346-47, 362.

76. While many of the recent decisions regarding § 1225 and § 1226 focus exclusively on the second opportunity for release discussed in *Miranda*—i.e., detainees' right to a bond hearing—Petitioner here was not merely entitled to a bond hearing following to arrest (assuming that the government's authority pursuant to § 1226 had been invoked, which it wasn't). He was also entitled to an *ex ante* release determination by an immigration officer prior to his (as of the time of filing) ten-day period of incarceration. On information and belief, here, Petitioner was afforded no such individualized determination by any immigration officer. This due process violation cannot be remedied by a *post facto* bond hearing following more than ten days of incarceration. Immediate release is the only adequate remedy.

77. To the extent this Court deems a bond hearing the appropriate remedy, given the length and condition of his present detention absent any individualized due process, Petitioner

respectfully requests that the Court order that Petitioner be released unless a bond hearing pursuant to 8 U.S.C. 1226, at which the government bears the burden of proof, is held within seven (7) days of this Court's order. *See Campos-Flores*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303; *Lopez*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, at *3, 2025 U.S. Dist. LEXIS 232158.

## REQUEST FOR ORDER TO SHOW CAUSE

78. Within three days, unless good cause for a delay is shown, "[a] court, justice or judge entering a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

79. Petitioner respectfully requests that the Court promptly issue an Order to Show Cause directing Respondents to file a return within three days of the Court's order, showing cause, if any, why a writ of habeas corpus should not be granted

## PRAYER FOR RELIEF

Petitioner therefore respectfully requests that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative, afforded a bond hearing before a neutral Immigration Judge, at which the government bears the burden to prove by clear and convincing evidence that continued detention is justified based on danger to the community or risk of flight;

16

(3) Declare that Petitioner's continued detention without access to a bond hearing violates the Immigration and Nationality Act, its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

(4) Award Petitioner reasonable costs and attorneys' fees pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 and 28 U.S.C. § 2412, to the extent applicable; and

(5) Grant such other and further relief as the Court deems just and proper.

Dated: January 20, 2026

**Respectfully submitted,**
**COUNSEL FOR PETITIONER**

Jonathan Sidney
*Pro Hac Vice* Pending
Colorado Bar No. 52463
Ohio Bar No. 0100561
P.O. Box 97
Forest Hill, WV
Phone: (681) 335-0074
jsidney@climatedefenseproject.org

/s/ *Lesley M. Nash*
Lesley M. Nash (WVSB #14158)
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV 26505
Phone: (304) 326-0188
lesley@msjlaw.org

**<u>Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. 2242</u>**

I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I have discussed with Petitioner the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

<u>/s/ *Jonathan Sidney*</u>                                                                  Date: January 20, 2026