## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

| | |
|---|---|
| **NURDIN SHAILOOKUL UULU,** | |
| **Petitioner,** | |
| **v.** | **Case No:** |
| **CARL ALDRIDGE, Superintendent, Western Regional Jail; VALERIE TOBIAS, Director, ICE Pittsburgh Field Office; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, KRISTI NOEM, Secretary of the Department of Homeland Security; PAM BONDI, Attorney General of the United States,** *in their official capacities*, | |
| **Respondents.** | |

## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

Petitioner Nurdin Shailookul Uulu ("Petitioner"), by and through undersigned counsel, hereby challenges his unlawful detention, which relies entirely on a legal fiction. Petitioner is not an individual seeking admission at the border today; rather, he is a resident who was inspected and paroled into the United States on April 9, 2023. Despite his established residence in Illinois and full compliance with the terms of his parole, Respondents have detained him under 8 U.S.C. § 1225(b) as if he were an "arriving alien" standing at the threshold of entry.

## I.    INTRODUCTION

1.         Petitioner Nurdin Shailookul Uulu sought safety in the United States through lawful channels rather than evading detection. On April 9, 2023, he presented himself for inspection at the port of entry pursuant to a scheduled CBP One humanitarian parole appointment.

2.         Upon arrival, Petitioner was inspected by U.S. Customs and Border Protection

1

and lawfully paroled into the United States under INA § 212(d)(5), with a Form I-94 authorizing his stay through April 6, 2024.

3.      Since his lawful entry, Petitioner has established significant ties to the United States. Until his detention, he obtained employment authorization, lawfully worked, and paid taxes, demonstrating his compliance with U.S. law and his integration into the community.

4.      Petitioner diligently complied with all legal requirements while awaiting his day in court. On April 17, 2024, he timely filed an application for asylum with the Immigration Court and was granted employment authorization. With a valid work permit, he obtained a commercial driver's license and worked lawfully as a truck driver, paid taxes, and maintained a fixed residence in California.

5.      Petitioner's removal proceedings were properly docketed with the Los Angeles Immigration Court under EOIR Case No. 246-559-298. The case was thereafter transferred to the Van Nuys Immigration Court. At the Master Calendar Hearing, the Immigration Court confirmed that Petitioner had complied with all court orders and had submitted the required documentation, and the Court therefore scheduled his Individual Hearing for April 7, 2027.

6.      Petitioner has no history of failing to appear and was actively pursuing his asylum claim before the Immigration Judge.

7.      Despite his full compliance with all court requirements and while he was lawfully residing and working in the community pending his Individual Hearing, Respondents prevented Petitioner from continuing his lawful life in the community.

8.      On November 12, 2025, Petitioner was detained by ICE while working as a truck driver. During a routine regulatory inspection while operating a commercial truck in the course of his employment, he was taken into custody. This arrest occurred in the interior of the United States, hundreds of miles from the border, yet Respondents have detained him as if he were

an "arriving alien."

9.      Following his arrest, Petitioner was transported across state lines, removed from his community in the San Francisco area, and ultimately transferred to Western Regional Jail, One O'Hanlon Place, in Barboursville, West Virginia.

10.     The basis for this continued detention is a misapplication of the statute. Although Petitioner was inspected, paroled, and released into the interior years ago, ICE is detaining him under 8 U.S.C. § 1225(b). By classifying a resident paroled noncitizen as an "applicant for admission" seeking entry at the border, Respondents have categorically denied him the opportunity for a bond hearing. This detention does not stem from a border encounter; it stems from the arrest of an individual living and working in the United States while awaiting his scheduled day in court.

11.     Respondents' invocation of 8 U.S.C. § 1225(b) rests on a fundamental legal error. That statute is textually and structurally limited to noncitizens seeking admission at the border or apprehended immediately upon entry. It does not grant DHS the authority to reach into the interior of the country and retroactively apply mandatory detention to an individual who was inspected, paroled, and released years earlier. Petitioner's arrest did not occur at the border; it occurred in the heart of the United States, while he was residing and working lawfully. By treating a long-time resident parolee as an "arriving alien" standing at the threshold of entry, Respondents are relying on a legal fiction to deny Petitioner his statutory right to a bond hearing.

12.     In *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the Board of Immigration Appeals held that Immigration Judges lack bond jurisdiction where the Department of Homeland Security classifies a noncitizen's detention as arising under 8 U.S.C. § 1225(b). Nothing in *Matter of Q. Li* purports to resolve whether § 1225(b) lawfully applies to noncitizens who were inspected, paroled into the United States, released into the interior, and later arrested by ICE. Nevertheless,

as applied in practice, *Matter of Q. Li* has resulted in Immigration Judges declining to exercise bond jurisdiction once DHS invokes § 1225(b), without adjudicating whether that detention provision properly governs the circumstances of such interior arrests. As a result, the application of *Matter of Q. Li* in this context operates to foreclose any meaningful administrative forum for Petitioner to challenge the statutory basis of his detention.

13.     Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice of instead applying 8 U.S.C. 1226(a), which allows for release on conditional parole or allows for an IJ to consider bond requests or make bond redeterminations.

14.     Because Petitioner was paroled into the United States and was awaiting immigration court proceedings at the time of his arrest, his detention is governed, if at all, by 8 U.S.C. § 1226(a), which authorizes release on bond or conditional parole and requires an individualized custody determination. ICE's refusal to provide such process violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

15.     Petitioner has not been afforded an individualized custody determination or the opportunity to seek release on bond. Because DHS's asserted detention framework forecloses bond jurisdiction as a matter of nationwide administrative practice, Petitioner lacks any meaningful administrative forum in which to challenge the legality of his detention.

16.     Petitioner respectfully requests that this Court find his detention unlawful under 8 U.S.C. § 1225(b) and order his release, or in the alternative, direct that he be placed into standard removal proceedings under 8 U.S.C. § 1229(a), consistent with the due process principles established in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Landon v. Plasencia*, 459 U.S. 21 (1982), and require that Petitioner be released unless Respondents provide Petitioner an immigration bond hearing under 8 U.S.C. 1226(a) within seven days.

## II.    PARTIES

17.    Petitioner is a native and citizen of Kyrgyzstan who resided at 6340 Lankershim Blvd #252, North Hollywood, CA 91606, prior to his detention. He was issued a Form I-94 documenting his grant of parole and authorizing his presence in the United States for a period of one year, from April 9, 2023, through April 6, 2024.

18.    Respondents are the federal officials responsible for Petitioner's custody and the enforcement of the immigration detention laws, including: Carl Aldridge, Superintendent of the Western Regional Jail, One O'Hanlon Place; Valerie Tobias, Pittsburgh Field Office Director; Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement; Kristi Noem, Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, Attorney General of the United States. Respondents are all sued in their official capacities.

## III.    JURISDICTION

19.    This Court has jurisdiction over this Petition pursuant to 28 U.S.C. § 2241, which authorizes federal courts to grant habeas relief to individuals who are "in custody in violation of the Constitution or laws or treaties of the United States."

20.    Petitioner is currently detained within this District at Western Regional Jail ("WRJ") in Barboursville, West Virginia, and therefore, jurisdiction is proper in this Court. See *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (a habeas petition must be filed in the district of confinement and name the immediate custodian).

21.    This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No 104-208, 110 Stat. 1570. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 and the Suspension Clause of the Constitution because this action is a habeas corpus petition, and under

28 U.S.C. § 1331 because this action arises under federal law, including the INA, 8 U.S.C. § 1101, et seq., and the Administrative Procedure Act, 5 U.S.C. § 551, et seq. In sum, this Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

22.     This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. §2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

23.     Congress has stripped district courts of habeas jurisdiction in certain immigration-related contexts, including through provisions such as 8 U.S.C. § 1252. Those jurisdiction-stripping provisions, however, are inapplicable here. Although Congress possesses the authority to limit habeas jurisdiction, that authority is subject to strict construction. See *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482–83 (1999) (explaining that jurisdiction-stripping provisions should not be read expansively to encompass claims beyond those expressly identified). See also *Jennings v. Rodriguez*, 583 U.S. 281, 138 S. Ct. 830, 840–41 (2018) (noting that courts have historically declined to apply overly literal readings to broad statutory language when construing the scope of immigration statutes). Because the vast majority of jurisdiction-stripping provisions do not expressly reference challenges to immigration detention, they do not deprive this Court of habeas jurisdiction over Petitioner's detention-based claims.

24.     Consistent with that principle, the Supreme Court has made clear that habeas jurisdiction under 28 U.S.C. § 2241 remains available for statutory and constitutional challenges to immigration detention unless Congress has spoken with unmistakable clarity to eliminate such review. See *INS v. St. Cyr*, 533 U.S. 289, 305–14 (2001). The jurisdiction-stripping provisions set forth in 8 U.S.C. § 1252(a)(2) are limited in scope and address discrete categories of review, such as challenges to expedited removal orders or certain forms of discretionary relief. Those provisions do not purport to eliminate habeas jurisdiction over claims challenging the legality of immigration

detention itself. Accordingly, where a petitioner challenges the statutory and constitutional basis of his continued detention—rather than the merits of a removal order—§ 1252(a)(2) does not deprive this Court of jurisdiction to entertain a petition for habeas corpus.

25.     Section 1226(e) limits judicial review of discretionary judgments regarding the detention or release of noncitizens. That provision, however, does not bar habeas review of statutory or constitutional challenges to the legality of detention itself. See *Jennings*, 583 U.S. at 295 (explaining that § 1226(e) does not preclude challenges to the statutory framework governing detention). Accordingly, where a petitioner contests whether the government is detaining him under a lawful statutory authority, § 1226(e) does not deprive this Court of habeas jurisdiction.

26.     The inapplicability of 8 U.S.C. § 1226(e) to habeas challenges is confirmed by the statutory history of the INA. Prior to the Supreme Court's decision in *St. Cyr*, the INA's jurisdiction-stripping provisions did not specifically reference habeas corpus. See, e.g., 8 U.S.C. § 1252(a)(2)(A) (no express reference to habeas corpus). The Supreme Court explained that, absent a clear statement from Congress, statutory and constitutional challenges remained cognizable in habeas corpus proceedings. See *St. Cyr*, 533 U.S. at 312–13.

27.     At that time, Congress did not amend 8 U.S.C. § 1226(e) to include any reference to habeas corpus, and it has not done so since. Compare, for example, 8 U.S.C. § 1252(a)(2)(A) (2005), which expressly references habeas corpus, with 8 U.S.C. § 1226(e) (2005) and 8 U.S.C. § 1226(e) (2020), both of which contain no reference to habeas corpus. This statutory contrast supports the conclusion that Congress did not intend § 1226(e) to eliminate habeas review. See also H.R. Rep. No. 109-72, at 175 (2005) (explaining that the amendments were designed to eliminate habeas review over challenges to removal orders, while preserving habeas review over challenges to detention independent of removal orders).

28.     Canons of statutory construction support that conclusion. Courts presume that

when Congress amends a statute, the amendment is intended to have meaningful effect. *See Stone v. INS*, 514 U.S. 386, 397 (1995) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979), and *Moskal v. United States*, 498 U.S. 103, 109–11 (1990)). By contrast, where Congress elects not to amend a statutory provision while amending related provisions, that choice supports the inference that no change was intended. Accordingly, Congress's decision to leave 8 U.S.C. § 1226(e) unchanged supports the conclusion that habeas corpus jurisdiction over challenges to detention was preserved.

29. Furthermore, even if 8 U.S.C. § 1226(e) were construed to apply to petitions for habeas corpus generally, it would not extend to Petitioner's specific claims. Section 1226(e) limits judicial review only with respect to discretionary judgments regarding detention or release. Administrative agencies lack discretion to act in violation of the Constitution, and constitutional challenges therefore fall outside the scope of discretionary determinations. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Accordingly, as a matter of statutory interpretation, § 1226(e) does not preclude habeas review of constitutional challenges to the legality of detention.

30. Therefore, this Court has jurisdiction to review this habeas petition on behalf of Petitioner.

## IV. VENUE

31. The Southern District of West Virginia has recognized habeas jurisdiction over comparable challenges to statutory detention authority. *See, e.g., Machado de Oliveira v. Warden*, No. 2:25-cv-00668 (S.D.W. Va.) (Berger, I.); *Simanca Gonzalez v. Aldridge, et al.*, Civ. Act. No. 3:26-cv-00055 (S.D.W. Va.) (Chambers, R.).

32. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of West

Virginia.

33.     The venue is therefore proper in this District, as the Petitioner is detained here, and the immediate custodian responsible for his detention is located within this District.

## V.     REQUIREMENTS OF 28 U.S.C. § 2243

34.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

35.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. Habeas corpus is "perhaps the most important writ known to constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement*." Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## VI.     LEGAL FRAMEWORK

36.     The Immigration and Nationality Act ("INA") prescribes three basic detention frameworks applicable to noncitizens encountered by the Department of Homeland Security during the removal process.

37.     First, 8 U.S.C. § 1226 governs the detention of noncitizens placed in standard removal proceedings before an Immigration Judge ("IJ") under 8 U.S.C. § 1229a. Noncitizens detained pursuant to § 1226(a) are entitled to an individualized custody determination, including the opportunity for release on bond or conditional parole. See 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Mandatory detention under § 1226(c) applies only to a narrow category of individuals with specified criminal histories.

38.     Second, the INA provides for mandatory detention under 8 U.S.C. § 1225(b), which applies exclusively to noncitizens seeking admission at a port of entry or apprehended at or shortly after entry, before they have been admitted or paroled into the United States.

39.     Third, the INA authorizes detention under 8 U.S.C. § 1231(a) for noncitizens subject to a final order of removal, including individuals in withholding-only proceedings.

40.     This case concerns the misapplication of § 1225(b) to a noncitizen who was lawfully paroled into the United States, placed into standard removal proceedings, and detained while awaiting adjudication before an Immigration Judge, such that § 1226(a) governs Petitioner's custody.

41.     Petitioner was inspected and paroled into the United States pursuant to INA § 212(d)(5) through the CBP One humanitarian parole process and was issued a Form I-94 documenting parole. Parole under § 212(d)(5) constitutes lawful authorization to be physically present in the United States pending further proceedings.

42.     Following his parole, Petitioner was placed into removal proceedings under § 1229a, and jurisdiction vested with the Immigration Court. At the time of his arrest by ICE, Petitioner was awaiting a scheduled Individual Calendar Hearing and had not been ordered removed.

43.     Noncitizens who have been paroled into the United States and placed into § 1229a removal proceedings are, by statute, governed by the detention framework set forth in § 1226(a). Nothing in the INA authorizes DHS to treat such individuals as subject to mandatory detention under § 1225(b).

44.     Nevertheless, ICE has recently asserted detention authority inconsistent with

the statutory framework by detaining paroled noncitizens as though they were applicants for admission subject to § 1225(b), even when those individuals have long since entered the United States and are residing in the interior pending Immigration Court proceedings.

45.     That interpretation conflicts with the text, structure, and purpose of the INA. Section 1225(b) applies only to individuals "seeking admission" and is premised on inspections conducted at the border or immediately upon entry. See 8 U.S.C. § 1225(b)(2)(A).

46.     The Supreme Court has confirmed that § 1225(b)'s mandatory detention regime applies at the Nation's borders and ports of entry, where the government determines admissibility in the first instance. *Jennings* 583 U.S. at 287.

47.     By contrast, § 1226(a) applies broadly to noncitizens "pending a decision on whether the alien is to be removed from the United States", including individuals charged as inadmissible and placed into § 1229a proceedings.

48.     Federal courts have repeatedly held that DHS may not detain paroled noncitizens awaiting Immigration Court proceedings under § 1225(b). Rather, such individuals fall squarely within § 1226(a) and are entitled to an individualized custody determination. *See, e.g., Hyppolite v. Noem*, 2025 U.S. Dist. LEXIS 197628 (E.D.N.Y. Oct. 6, 2025).

49.     In *Hyppolite*, the court rejected the government's attempt to classify a paroled asylum seeker awaiting Immigration Court proceedings as subject to mandatory detention, holding that the government's characterization of detention authority is not controlling and that detention must comport with statutory limits and due process.

50.     The same reasoning applies here. Petitioner was paroled into the United States, released into the interior, authorized to work, and placed into standard removal proceedings. ICE therefore lacks statutory authority to detain him under § 1225(b).

51.     ICE's detention of Petitioner cannot be justified by reference to any

independent ground once Petitioner was paroled into the United States and placed into removal proceedings under 8 U.S.C. § 1229a. At that point, and in the absence of any criminal conduct, Petitioner's custody could only be governed by 8 U.S.C. § 1226(a).

52.     Section 1226(a) requires that detention be discretionary, subject to individualized review, and accompanied by the opportunity for release on bond or conditional parole.

53.     ICE's refusal to provide Petitioner with a bond hearing or other individualized custody determination violates the INA, implementing regulations, and the Due Process Clause of the Fifth Amendment.

54.     Because Petitioner is neither an arriving alien seeking admission nor subject to a final order of removal, his continued detention under any framework other than § 1226(a) is *ultra vires*.

55.     Accordingly, Petitioner's detention is not authorized by statute, and habeas relief is warranted.

## VII.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

56.     Exhaustion of administrative remedies is not required in this case. 28 U.S.C. § 2241 contains no statutory exhaustion requirement, and courts apply only a prudential exhaustion doctrine in immigration habeas matters. See *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (exhaustion not required where not mandated by statute); *Hernandez v. Gonzales*, 424 F.3d 42, 49 (1st Cir. 2005) (no exhaustion required for challenges to detention authority). Where, as here, a petitioner challenges the statutory and constitutional authority for detention, exhaustion is not required because administrative agencies cannot adjudicate constitutional claims and lack the power to grant habeas relief. See *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (BIA lacks authority to decide constitutional issues).

57.     Moreover, exhaustion would be futile because neither the IJ nor the Board of Immigration Appeals can review DHS's claim that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), nor can they order release where DHS invokes that statute. Administrative procedures, therefore, cannot provide the relief sought, release from unlawful detention. See *McCarthy*, 503 U.S. at 146–49 (exhaustion excused where agency remedies are inadequate or would cause irreparable injury).

58.     The Southern District of West Virginia has exercised habeas jurisdiction over nearly identical claims challenging the statutory and constitutional basis of civil immigration detention. In *Larrazabal-Gonzalez v. Mason et al.*, Civil Action No. 2:26-cv-00049 (S.D.W. Va. Jan. 28, 2026) (Goodwin, J.), the court rejected the Government's argument that jurisdiction was barred by 8 U.S.C. §§ 1252(e)(3), 1252(g), or 1252(b)(9), holding that a challenge to the lawfulness of detention itself is properly brought through habeas corpus. The court emphasized that when the Government confines a person, it bears the burden of articulating the factual and legal authority justifying that confinement and that detention without a prompt, individualized custody determination violates due process. Because the Government failed to present evidence justifying continued detention, the court ordered the petitioner's immediate release.

59.     The court reached the same conclusion in *Rodriguez Flores v. Mason et al.*, Civil Action No. 2:26-cv-00044 (S.D.W. Va. Jan. 28, 2026) (Goodwin, J.), arising from the same ICE stop and arrest. There, the court again exercised habeas jurisdiction, rejected the Government's reliance on jurisdiction-stripping provisions of the INA, and held that detention without an individualized custody determination and without prompt access to a neutral decisionmaker violated the Fifth Amendment. The court ordered the petitioner released and prohibited re-detention absent a significant change in circumstances or a determination by an Immigration Judge.

60.	Accordingly, under binding precedent from this Court, challenges to the statutory and constitutional basis of civil immigration detention are properly brought through habeas corpus, and detention without a prompt, individualized custody determination is unlawful.

61.	The government's reliance on *Matter of Yajure Hurtado* and *Matter of Q. Li* to justify mandatory detention under 8 U.S.C. § 1225(b) is legally unsustainable. As the United States District Court for the Western District of Missouri recently held, 8 U.S.C. § 1225(b)(2)(A) applies only when a noncitizen "applicant for admission" is actively "seeking admission" into the United States. The court rejected DHS's attempt to apply § 1225(b) to noncitizens apprehended in the interior, concluding that such individuals fall outside the scope of § 1225(b) and are instead governed by 8 U.S.C. § 1226(a), which entitles them to an individualized custody determination, including the opportunity for a bond hearing. Because Petitioner was arrested in the interior of the United States after being inspected and paroled and while awaiting Immigration Court proceedings, § 1225(b) does not apply to his detention, and Respondents lack statutory authority to deny him access to a bond hearing.

62.	Federal courts have recognized that noncitizens who have been inspected and paroled into the United States and who are awaiting adjudication in removal proceedings are not subject to mandatory detention under 8 U.S.C. § 1225(b). In *Castañon-Nava v. Department of Homeland Security*, Civ. Act. No. 18-cv-3757 (N.D. Ill. Nov. 13, 2025), the district court squarely rejected DHS's position that individuals apprehended in the interior may be subjected to § 1225(b)(2) mandatory detention, holding instead that such individuals fall under the discretionary detention framework of 8 U.S.C. § 1226(a). The court emphasized that § 1225(b) is limited to individuals seeking admission at the border or apprehended upon or shortly after entry and does not extend to noncitizens who have already entered the United States and are residing in the interior pending Immigration Court proceedings.The court reaffirmed this conclusion days later in denying

the government's emergency motion to stay pending appeal. *Castañon-Nava v. DHS*, No. 18-cv-3757 (N.D. Ill. Nov. 18, 2025). There, the court again held that DHS lacks authority to detain paroled noncitizens under § 1225(b), explaining that ICE may not arrest an individual under § 1226(a) authority and then retroactively "convert" that detention into mandatory detention under § 1225(b)(2). Although the decision is currently on appeal and arises from a different jurisdiction, its reasoning is directly applicable here and provides persuasive authority confirming that paroled noncitizens awaiting Immigration Judge proceedings are governed by § 1226(a) and entitled to an individualized custody determination.

63.     Courts across multiple jurisdictions have reached the same conclusion as the Northern District of Illinois, holding that 8 U.S.C. § 1225(b) does not authorize mandatory detention of noncitizens who have already entered the United States and are apprehended in the interior while awaiting removal proceedings. In *Rodriguez-Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), the court held that § 1226(a), not § 1225(b), governs detention where a noncitizen was not apprehended at the border or immediately upon entry. The court emphasized that § 1225(b) is limited to individuals "seeking admission" and does not extend to those who are already present in the United States pending adjudication before an Immigration Judge.

64.     Similarly, the District of Massachusetts has repeatedly rejected DHS's attempt to expand § 1225(b) beyond its statutory limits. In *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at 6–8 (D. Mass. July 7, 2025), the court held that § 1225(b)(2) applies only at the border or shortly after entry and does not authorize mandatory detention of individuals apprehended in the interior months or years later. The court explained that the phrase "seeking admission" is written in the present tense, confirming that Congress intended § 1225(b) to apply only at the point of entry, not after a noncitizen has been released into the country.

65.     The court applied the same reasoning in *Martinez v. Hyde*, 792 F. Supp. 3d 211

(D. Mass. July 24, 2025), rejecting DHS's interpretation of 8 U.S.C. § 1225(b) as overly expansive and inconsistent with the statute's text, structure, and historical application. The court explained that once a noncitizen is physically present in the United States and placed into removal proceedings under 8 U.S.C. § 1229a, any detention authority must arise under 8 U.S.C. § 1226(a), which requires an individualized custody determination rather than mandatory detention.

66.     Courts in this District have likewise exercised habeas jurisdiction over challenges to the statutory and constitutional basis of immigration detention arising from interior enforcement actions. In *Larrazabal-Gonzalez*, Civ. Act. No. 2:26-cv-00049 and *Rodriguez Flores*, Civ. Act. No. 2:26-cv-00044, this Court rejected the Government's reliance on jurisdiction-stripping provisions of the Immigration and Nationality Act and held that challenges to the lawfulness of detention itself are properly brought through habeas corpus. The court emphasized that when the Government restrains an individual's liberty, it bears the burden of establishing a lawful statutory basis for that detention and must provide a prompt, individualized custody determination consistent with due process. Because the Government failed to justify continued detention under the governing statutory framework, the court ordered the petitioners released and prohibited further detention absent a meaningful individualized determination by a neutral decisionmaker. These decisions confirm that civil immigration detention following interior enforcement is subject to habeas review and cannot be sustained without a valid statutory basis and individualized process.

67.     Taken together, these decisions reflect a growing and consistent consensus among district courts that DHS lacks statutory authority to impose mandatory detention under § 1225(b) on noncitizens who have been paroled into the United States, apprehended in the interior, and are awaiting adjudication before an Immigration Judge. While these decisions arise from different jurisdictions, their reasoning is uniform and directly applicable here, confirming that

Petitioner's detention must be governed by § 1226(a) and accompanied by an individualized custody determination.

68.     In light of the foregoing authority, further administrative proceedings cannot remedy Petitioner's unlawful and unconstitutional detention. Immigration Judges lack authority to resolve the purely statutory and constitutional questions presented here, including whether DHS is detaining Petitioner under an inapplicable detention provision. As a practical matter, following the Board of Immigration Appeals' precedential decision in *Matter of Q. Li,* 29 I&N Dec. 66 (BIA 2025), Immigration Judges have routinely concluded that they lack jurisdiction to consider bond requests once DHS asserts detention authority under 8 U.S.C. § 1225(b), even where the noncitizen affirmatively disputes the applicability of that statute as a matter of statutory interpretation. Consequently, bond applications by individuals in Petitioner's posture are denied as a matter of course based solely on DHS's asserted detention framework, without any forum for adjudicating whether § 1225(b) lawfully applies to detention occurring in the interior of the United States after parole and release. Under these circumstances, administrative remedies are not merely inadequate, but functionally unavailable, rendering habeas corpus relief the only viable mechanism to challenge Petitioner's continued detention. Requiring prudential exhaustion would therefore be futile and would serve only to prolong unlawful custody and irreparable harm.

## VIII.   CLAIMS FOR RELIEF

### CLAIM ONE
### Detention Violates the Immigration and Nationality Act (INA)

69.     Petitioner incorporates by reference the allegations set forth in the preceding paragraphs.

70.     The government is unlawfully detaining Petitioner pursuant to 8 U.S.C. § 1225(b), despite the fact that § 1225(b) is directed to detention arising in connection with the inspection and admission process. Petitioner is not such an individual; rather, he entered the United

States pursuant to humanitarian parole on April 9, 2023 and has remained continuously present in the United States for approximately three (3) years. The statutory framework and decades of established agency practice make clear that individuals who entered long ago and were not apprehended at or near the border are detained, if at all, under 8 U.S.C. § 1226, which allows for discretionary custody and provides the right to a bond hearing.

71.     The government's effort to classify Petitioner as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b) rests entirely on a legal label that no longer corresponds to Petitioner's procedural posture. Petitioner was inspected and paroled into the United States pursuant to INA § 212(d)(5), released into the interior, and placed into standard removal proceedings under 8 U.S.C. § 1229a. Once parole was granted and jurisdiction vested with the Immigration Court, Petitioner ceased to be a noncitizen "seeking admission" within the meaning of § 1225(b).

72.     The Board of Immigration Appeals' decision in *Matter of Q. Li,* 29 I&N Dec. 66 (BIA 2025), confirms that detention authority turns on the statutory framework invoked by DHS and that Immigration Judges lack jurisdiction to reclassify detention once DHS asserts § 1225(b). That jurisdictional rule, however, does not expand DHS's underlying statutory authority. Nothing in the INA permits DHS to invoke § 1225(b) to mandatorily detain a noncitizen who has already been inspected, paroled, released into the interior, and placed into § 1229a removal proceedings. To the contrary, detention in such circumstances—if authorized at all—arises under 8 U.S.C. § 1226(a), which requires an individualized custody determination.

73.     Federal courts have rejected DHS's attempt to manufacture mandatory detention authority by continuing to classify paroled, interior noncitizens as "applicants for admission." Once a noncitizen has been released into the interior after inspection and parole, detention is governed by 8 U.S.C. § 1226(a), not § 1225(b), which is limited to individuals at the

border or in the immediate process of entry. The Western District of Missouri reaffirmed this statutory boundary in *Khutyaev v. Arnott*, holding that DHS could not lawfully apply § 1225(b) to a noncitizen who had been inspected and paroled into the United States and later apprehended in the interior. The court emphasized that detention without an individualized custody determination and without prompt access to a neutral decisionmaker violates due process and ordered the petitioner's release. That reasoning confirms that DHS may not evade individualized custody review by misclassifying paroled, interior noncitizens as subject to mandatory detention. District courts nationwide have reached the same conclusion, holding that § 1225(b) cannot be extended to paroled noncitizens apprehended in the interior. *See, e.g.*, *Rodriguez-Vazquez*, 779 F. Supp. 3d 1239; *Gomes*, No. 1:25-CV-11571-JEK.

74.     Because Petitioner is not subject to detention under § 1225(b), his continued detention without access to a custody redetermination hearing violates the INA, exceeds DHS's statutory authority, and is unlawful. Petitioner is entitled to habeas relief, including immediate release, or in the alternative, a constitutionally compliant bond hearing under 8 U.S.C. § 1226(a).

### CLAIM TWO
### Violation of the Due Process Clause of the Fifth Amendment

75.     Petitioner incorporates by reference the allegations set forth in the preceding paragraphs.

76.     Petitioner's continued detention without a bond hearing or individualized determination of flight risk or danger violates the Due Process Clause of the Fifth Amendment. The government asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), even though he has resided in the United States for approximately three (3) years, is deeply embedded in his community, and has not been apprehended at or near the border.

77.     Treating Petitioner as an "applicant for admission" and subjecting him to indefinite, mandatory detention without procedural safeguards is arbitrary, punitive, and contrary

19

to the basic guarantees of due process.

78.     As the Court explained in *Zadvydas*, freedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause. Even where the government possesses authority to detain individuals for immigration purposes, such detention must bear a reasonable relation to its asserted purpose and be accompanied by adequate procedural protections. *See Demore v. Kim*, 538 U.S. 510, 531 (2003). Here, Petitioner's detention is not reasonably related to any legitimate immigration purpose because he is not a recent entrant, has longstanding ties to the United States, and DHS cannot justify treating him as if he had just arrived under an expedited removal framework.

79.     Moreover, the United States District Court for the Western District of Michigan recently held that applying mandatory detention under § 1225(b) to a paroled noncitizen apprehended in the interior violates the Due Process Clause. *See Kozubaev v. Lynch*, No. 1:25-cv-1873, Slip Op. at 3–5 (W.D. Mich. Jan. 15, 2026). In *Kozubaev*, the court squarely rejected the government's attempt to detain a paroled asylum seeker under § 1225(b)(2), holding instead that '§ 1226(a), not § 1225(b)(2)(A), governs noncitizens... who have resided in the United States and were already within the United States when apprehended.' *Id.* at 3. Finding that continued detention without a bond hearing violated the Fifth Amendment, the court ordered the government to provide a bond hearing under § 1226(a) within five business days or immediately release the petitioner. *Id.* at 5. That rationale applies squarely here. The government provides no mechanism for Petitioner to contest his detention or seek release, resulting in effectively indefinite detention without process, which the Supreme Court has repeatedly condemned. See *Zadvydas,* 533 U.S. at 690–92; *Clark v. Martinez*, 543 U.S. 371, 386–87 (2005)."

80.     Accordingly, Petitioner's continued detention violates the Fifth Amendment, and this Court should grant habeas relief and order Petitioner's immediate release, or, at a

minimum, a prompt bond hearing with the government bearing the burden to justify continued detention by clear and convincing evidence.

**CLAIM THREE**
**Violation of the Suspension Clause of the U.S. Constitution**

81.     Petitioner incorporates by reference all preceding paragraphs. The Suspension Clause, U.S. Const. art. I, § 9, cl. 2, guarantees that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Petitioner's continued detention, without access to judicial review or a mechanism to challenge the legality of custody, violates this constitutional guarantee. By asserting mandatory detention authority under 8 U.S.C. § 1225(b) and denying Petitioner any opportunity to seek release or a bond hearing, the government has effectively extinguished the core function of the writ, to test the legality of restraint on personal liberty.

82.     The Supreme Court has long held that habeas relief remains available to noncitizens seeking to challenge unlawful executive detention. *See St. Cyr*, 533 U.S. at 301. ("At the absolute minimum, the Suspension Clause protects the writ as it existed in 1789."). The writ cannot be withdrawn where, as here, the Executive detains an individual without statutory authority and without due process safeguards. See *Boumediene v. Bush*, 553 U.S. 723, 797 (2008) (inadequate substitutes cannot replace habeas; detainees must have a meaningful opportunity to challenge detention).

83.     The government's position—that Petitioner is subject to categorical detention and barred from seeking release—would deprive him of any meaningful forum to challenge the legality of his custody and effectively foreclose judicial review. The United States District Court for the Southern District of West Virginia has rejected this result in closely related cases arising from interior enforcement actions. In *Larrazabal-Gonzalez*, Civ. Act. No. 2:26-cv-00049, and *Rodriguez Flores*, Civ. Act. No. 2:26-cv-00044, this Court exercised habeas jurisdiction over

challenges to immigration detention and held that the Government may not confine a noncitizen without articulating and proving a lawful statutory basis for that detention. The court emphasized that when the Government restrains an individual's liberty, due process requires a prompt and meaningful opportunity for an individualized custody determination by a neutral decisionmaker. Because the Government failed to justify continued detention under the governing statutory framework, the court ordered the petitioners released. Absent habeas review here, Petitioner would likewise remain confined without any effective mechanism to challenge the legal basis of his detention, contrary to the Constitution's guarantee of meaningful judicial review.

84.     Because Petitioner's detention without access to meaningful judicial review of his custody constitutes an effective suspension of the writ of habeas corpus, this Court must exercise jurisdiction and grant relief. Petitioner respectfully requests an order directing his immediate release, or, in the alternative, a prompt individualized custody hearing at which the government must justify continued detention by clear and convincing evidence.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter pursuant to 28 U.S.C. § 2241;

2. Issue an order prohibiting Respondents from transferring Petitioner outside this judicial district during the pendency of these proceedings;

3. Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative afforded a bond hearing before a neutral Immigration Judge, at which the government bears the burden to prove by clear and

convincing evidence that continued detention is justified based on danger to the community or risk of flight;

4. Declare that Petitioner's continued detention without access to a bond hearing violates the Immigration and Nationality Act, its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

5. Enjoin Respondents from re-detaining Petitioner absent lawful statutory authority and constitutionally sufficient procedures;

6. Declare that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b) and is entitled to custody review under 8 U.S.C. § 1226(a);

7. Grant such other and further relief as the Court deems just and proper in equity and under the circumstances.

Respectfully submitted on January 30, 2026.

                                                           **COUNSEL FOR PETITIONER,**


                                                           /s/ *Lesley M. Nash*
Harun Taskin                                               Lesley M. Nash (WVSB #14158)
*Pro Hac Vice* Pending                                     Mountain State Justice, Inc.
Illinois State Bar #6342748                                1029 University Ave., Ste. 101
Kent Law Partners LLC                                      Morgantown, WV 26505
1701 E. Woodfield Rd., Ste. 820                            Phone: (304) 326-0188
Schaumburg, IL 60173                                       lesley@msjlaw.org
Phone: (312) 724-5555
htaskin@kentlawpartners.com                                Sarah K. Brown (WVSB #10845)
                                                           Mountain State Justice, Inc.
                                                           1217 Quarrier Street
                                                           Charleston, WV 25301
                                                           Phone: (304) 344-3144
                                                           sarah@msjlaw.org

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have reviewed the relevant documentation of the events described in this Petition that was reasonably available to me prior to and at the time of filing. Based on those documents and on discussions with individuals whom the Petitioner authorized to speak on his behalf, I hereby verify that the statements made in this Petition and Complaint are true and correct to the best of my knowledge.

Respectfully submitted on January 30, 2026.

/s/ *Harun Taskin*
Harun Taskin, Esq.
*Pro Hac Vice* Pending
Illinois State Bar # 6342748
Kent Law Partners LLC
1701 E Woodfield Rd. Suite 820
Schaumburg, IL 60173
Phone: 312-724-5555
Fax: 312-724-5555
htaskin@kentlawpartners.com