## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| GERSON ANIBAL UMANA VILLATORO, | ) )<br>) C/A No.<br>) |
| Petitioner, | ) |
| v. | )<br>) |
| WARDEN, *in his or her official capacity* as Warden of the South Western Regional Jail, Holden, West Virginia; | ) **EMERGENCY PETITION FOR A WRIT**<br>) **OF HABEAS CORPUS AND**<br>) **APPLICATION FOR AN ORDER TO**<br>) **SHOW CAUSE WITH A STAY ON**<br>) **TRANSFER OUT OF THE SOUTHERN**<br>) **DISTRICT OF WEST VIRGINIA** |
| BRIAN MCSHANE, *in his official capacity* as Field Office Director of the Philadelphia Field Office of Enforcement and Removal Operations, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; | )<br>)<br>) **A # 215 772 161**<br>)<br>)<br>)<br>) |
| TODD M. LYONS, *in his official capacity* as Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; | )<br>)<br>)<br>)<br>) |
| KRISTI NOEM, *in her official capacity* as Secretary, U.S. Department of Homeland Security; and | )<br>)<br>)<br>) |
| PAMELA JO BONDI, *in her official capacity* as Attorney General of the United States; | )<br>)<br>)<br>) |
| Respondents. | )<br>) |

## **INTRODUCTION**

1. Petitioner-Plaintiff ("Petitioner") is a citizen of El Salvador who has resided in the U.S. for at least seven (7) years. On information and belief, Immigration and Customs Enforcement ("ICE") officers detained him on or about January 7, 2026.

2. Petitioner is currently detained at the West Virginia Jail and Correction Facility Authority's Southwestern Regional Jail at 13 Gaston Caperton Drive, WV 25625. *See* Exhibit A.

3. On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a precedential decision that unlawfully reinterpreted the Immigration and Nationality Act ("INA"). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Prior to this decision, noncitizens like Petitioner who had lived in the U.S. for many years and were apprehended by ICE in the interior of the country were detained pursuant to 8 U.S.C. § 1226(a) and eligible to seek bond hearings before Immigration Judges ("IJs"). Instead, in conflict with nearly thirty years of legal precedent, Petitioner is now considered subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and has no opportunity for release on bond while his removal proceedings are pending.

4. Petitioner's detention pursuant to § 1225(b)(2)(A) violates the plain language of the INA and its implementing regulations. Petitioner, who has resided in the U.S. for approximately seven years and who was apprehended in the interior of the U.S., should not be considered an "applicant for admission" who is "seeking admission." Rather, he should be detained pursuant 8 U.S.C. § 1226(a), which allows for release on conditional parole or bond.

5. Petitioner seeks declaratory relief that he is subject to detention under § 1226(a) and its implementing regulations and asks that this Court either order Respondents to release him from custody or provide him with a bond hearing.

## CUSTODY

6. Petitioner is currently in the custody of Immigration and Customs Enforcement ("ICE") at the West Virginia South Western Regional Jail in Holden, West Virginia. He is

therefore in "'custody' of [the DHS] within the meaning of the habeas corpus statute." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

## JURISDICTION

7. This court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause), and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et. seq*.

8. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq*., the All Writs Act, 28 U.S.C. § 1651, and the Immigration and Nationality Act, 8 U.S.C. § 1252(e)(2).

9. Federal district courts have jurisdiction to hear habeas claims by non-citizens challenging both the lawfulness and the constitutionality of their detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

10. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

11. Petitioner is "in custody" for the purpose of § 2241 because he was arrested and detained by Respondents.

## VENUE

12. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees or officers of the United States acting in their official capacity and because

a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of West Virginia. Petitioner is under the jurisdiction of ICE's Philadelphia Field Office, and he is currently detained in Holden, West Virginia, at the West Virginia Southwestern Regional Jail located there.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Administrative exhaustion is unnecessary as it would be futile. *See, e.g., Aguilar v. Lewis*, 50 F. Supp. 2d 539, 542–43 (E.D. Va. 1999).

14. It would be futile for Petitioner to seek a custody redetermination hearing before an IJ because of the BIA recent decision holding that anyone who has entered the U.S. without inspection is now considered an "applicant for admission" who is "seeking admission" and therefore subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025); *see also Zaragoza Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) (noting that BIA's decision in *Yajure Hurtado* renders exhaustion futile).

15. Additionally, the agency does not have jurisdiction to review Petitioner's claim of unlawful custody in violation of his due process rights, and it would therefore be futile for him to pursue administrative remedies. *Reno v Amer.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims).

## PARTIES

16. Petitioner is from El Salvador and has resided in the U.S. since at least July 2018. He is currently detained in the West Virginia Southwestern Regional Jail in Holden, West Virginia. *See* Exhibit A.

17. Respondent WARDEN is sued in his or her official capacity as Warden of the West Virginia Southwestern Regional Jail. In his official capacity, WARDEN is Petitioner's immediate custodian.

18. Respondent BRIAN MCSHANE is sued in his official capacity as Field Office Director, Philadelphia Field Office, Enforcement and Removal Operations, ICE. In his official capacity, Respondent MCSHANE is the legal custodian of Petitioner.

19. Respondent TODD M. LYONS is sued in his official capacity as Acting Director of ICE. As the Acting Director of ICE, Respondent Lyons is a legal custodian of Petitioner.

20. Respondent KRISTI NOEM is sued in her official capacity as Secretary of Homeland Security. As the head of the U.S. Department of Homeland Security, the agency tasked with enforcing immigration laws, Secretary Noem is Petitioner's ultimate legal custodian.

21. Respondent PAMELA JO BONDI is sued in her official capacity as the Attorney General of the United States. As Attorney General, she has authority over the Department of Justice and is charged with faithfully administering the immigration laws of the United States.

## LEGAL BACKGROUND AND ARGUMENT

22. The INA prescribes three basic forms of detention for noncitizens in removal proceedings.

23. First, individuals detained pursuant to 8 U.S.C. § 1226(a) are generally entitled to a bond hearing, unless they have been arrested, charged with, or convicted of certain crimes and are subject to mandatory detention. *See* 8 U.S.C. §§ 1226(a), 1226(c) (listing grounds for mandatory detention); *see also* 8 C.F.R. §§ 1003.19(a) (immigration judges may review custody determinations made by DHS), 1236.1(d) (same).

24. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) as well as other recent arrivals deemed to be "seeking

admission" under § 1225(b)(2).

25. Third, the INA authorizes detention of noncitizens who have received a final order of removal, including those in withholding-only proceedings. *See* 8 U.S.C. § 1231(a)–(b).

26. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208. Div. C, §§ 302-03, 110 Stat. 3009-546, 300-582 to 3009-583, 3009-585. Section 1226 was most recently amended earlier this year by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).

27. Following the enactment of the IIRIRA, the U.S. Department of Justice's Executive Office of Immigration Review ("EOIR") drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formed referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

28. Thus, in the decades that followed, most people who entered without inspection and were thereafter detained and placed in standard removal proceedings were considered for release on bond and also received bond hearings before an Immigration Judge ("IJ"), unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who had entered the United States, even if without inspection, were entitled to a custody hearing before an IJ or other hearing officer.

In contrast, those who were stopped at the border were only entitled to release on parole. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 220 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

29. For decades, long-term residents of the U.S. who entered without inspection and were subsequently apprehended by ICE in the interior of the country have been detained pursuant to § 1226 and entitled to bond hearings before an IJ, unless barred from doing so due to their criminal history.

30. In July 2025, however, ICE began asserting that all individuals who entered without inspection should be considered "seeking admission" and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

31. On September 5, 2025, the BIA issued a precedential decision adopting this interpretation, departing from the INA's text, federal precedent, and existing regulations. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

32. Defendants' new legal interpretation is plainly contrary to the statutory framework and its implementing regulations. Indeed, for decades, Defendants had applied § 1226(a) to people like the Petitioner. Defendants' new policies are thus not only contrary to law, but are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). They were also adopted without complying with the procedural requirements of the APA.

33. Numerous federal courts have rejected this interpretation and instead have consistently found that § 1226, not § 1225(b)(2), authorizes detention of noncitizens who entered without inspection and were later apprehended in the interior of the country. *See, e.g.*, *Sampiao v. Hyde*, 2025 WL 2607924 (D. Mass. Sept. 9, 2025) (noting court's disagreement with BIA's analysis in *Yajure Hurtado*); *Leal-Hernandez v. Noem*, 2025 WL 2430025 (D.

Md. Aug. 24, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326-LM-AJ (D.N.H. Sept. 8, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Cuevas Guzman v. Andrews*, 2025 WL 2617256, at *3 n.4 (E.D. Cal. Sept. 9, 2025); *see also Lepe v. Andrews*, No. 1:25-cv-01163-KES-SKO (HC) (E.D. Cal. Sept. 23, 2025), attached hereto as Exhibit C, *Lopez v. Hardin*, No. 2:25-cv-830-KCD-NPM (M.D. Fla. Sept. 25, 2025), attached hereto as Exhibit D, and *Chafla v. Scott*, No. 2:25-cv-00437-SDN (D. Maine Sept. 21, 2025), attached hereto as Exhibit E.

34. Under the Supreme Court's recent decision in *Loper Bright v. Raimondo*, this Court should independently interpret the statute and give the BIA's expansive interpretation of § 1225(b)(2) no weight, as it conflicts with the statute, regulations, and precedent. 603 U.S. 369 (2024).

35. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Following IIRIRA, the Executive Office for Immigration Review ("EOIR") issued regulations clarifying that individuals who entered the country without inspection were not considered detained under § 1225, but rather under § 1226(a). *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

36. The statutory context and structure also make clear that § 1226 applies to individuals who have not been admitted and entered without inspection. In 2025, Congress added new mandatory detention grounds to § 1226(c) that apply only to noncitizens who have not been admitted. *See* The Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (8 U.S.C. § 1226(c)(1)(E)).

37. By specifically referencing inadmissibility for entry without inspection under 8 U.S.C. § 1182(6)(A), Congress made clear that such individuals are otherwise covered by § 1226(a). Thus, § 1226 plainly applies to noncitizens charged as inadmissible, including those present without admission or parole.

38. The Supreme Court has explained that § 1225(b) is concerned "primarily [with those] seeking entry," and is generally imposed "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 297, 2987 (2018). In contrast, Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id*. at 289 (emphases added).

39. Furthermore, § 1225(b)(2) specifically applies only to those "seeking admission," and the implementing regulations at 8 C.F.R. § 1.2 address noncitizens who are "coming or attempting to come into the United States." The use of the present progressive tense would exclude noncitizens like Petitioner who are apprehended in the interior years after they entered, as they are no longer "seeking admission" or "coming […] into the United States." *See Martinez v. Hyde*, 2025 WL 2084238 at *6 (D. Mass. July 24, 2025) (citing the use of present and present progressive tense to support conclusion that INA § 1225(b)(2) does not apply to individuals apprehended in the interior); *see also Al Otro Lado v. McAleenan*, 394

F. Supp. 3d 1168, 1200 (S.D. Cal. 2019) (construing "is arriving" in INA § 235(b)(1)(A)(i) and observing that "[t]he use of the present progressive, like use of the present participle, denotes an ongoing process").

40. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to Petitioner, who had entered the U.S. approximately 7 years before he was apprehended.

## STATEMENT OF FACTS

41. Petitioner is a citizen of El Salvador.

42. Upon information and belief, Petitioner has resided in the U.S. since at least July 2018.

43. Shortly after entering the United States, Petitioner was detained by DHS. He passed a credible fear interview, was released from detention on bond, and was placed into removal proceedings pursuant to 8 U.S.C. § 1229a.

44. Since his release in late 2018, Petitioner has lived here continuously in the United States, primarily in Louisiana.

45. In March 2024, he married Michelle Castillo Rivera, a United States citizen.

46. On March 27, 2024, the New Orleans Immigration Court dismissed Petitioner's removal proceedings without prejudice so he may move forward with a residency application based on his marriage to his U.S. Citizen wife, Michelle Castillo Rivera. *See* Exhibit B.

47. In November 2025, his wife filed an I-130 petition on his behalf.

48. As of the date of this filing, Ms. Rivera is nearly 30 weeks pregnant with the couple's first child, a son, with an expected due date of approximately May 5, 2026.

49. Upon information and belief, on January 7, 2026, nearly two years after his removal proceedings were dismissed, Petitioner was arrested by immigration authorities during a

traffic stop in West Virginia while traveling for work. He has been detained continuously since that date.

50. He is now detained at the West Virginia Southwestern Regional Jail.  *See* Exhibit A.

51. Absent relief from this Court, Petitioner faces continued detention without a bond hearing and potential transfer to an ICE detention facility in Pennsylvania.

## COUNT I
### Violation of 8 U.S.C. § 1226(a)
### Unlawful Denial of Release on Bond

52. Petitioner restates and realleges all paragraphs as if fully set forth here.

53. Petitioner may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

54. Under § 1226(a) and its associated regulations, Petitioner is entitled to a bond hearing.  *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

55. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

56. Petitioner's continuing detention is therefore unlawful.

## COUNT II
### Violation of the Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1 and 1003.19 Unlawful Denial of Release on Bond

57. Petitioner restates and realleges paragraphs 1 to 45 as if fully set forth here.

58. In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission,

[noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323. The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

59. The application of § 1225(b)(2) to Petitioner unlawfully mandates her continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

## COUNT III
### Violation of Fifth Amendment Right to Due Process

60. Petitioner restates and realleges paragraphs 1 to 45 as if fully set forth here.

61. The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V.

62. The Supreme Court has repeatedly emphasized that the Constitution generally requires a hearing before the government deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

63. Under the *Mathews v. Eldridge* framework, the balance of interests strongly favors Petitioner's release.

64. Petitioner's private interest in freedom from detention is profound. The interest in being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

65. The risk of erroneous deprivation is exceptionally high. Petitioner has deep ties to the community, including the marriage to a U.S. Citizen spouse and expectation of a child.

66. The government's interest in detaining Petitioner without due process is minimal. Immigration detention is civil, not punitive, and may only be used to prevent danger to the community or ensure appearance at immigration proceedings. *See Zadvydas*, 533 U.S. at 690.

67. Furthermore, the "fiscal and administrative burdens" of providing Petitioner with a bond hearing are minimal, particularly when weighed against the significant liberty interests at stake. *See Mathews*, 424 U.S. at 334–35.

68. Considering these factors, Petitioner respectfully requests that this Court order his immediate release from custody or provide him with a bond hearing.

69. Petitioner also respectfully requests that this Court issue an Order to Show Cause staying her transfer out of the Southern District of West Virginia, and setting a deadline for the Respondents to answer this petition.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court will:

(1) Assume jurisdiction over this matter;

(2) Order that he not be transferred outside of this District;

(3) Issue an Order to Show Cause ordering Respondents to show cause why his Petition should not be granted within three days;

(4) Declare that Petitioner's detention is unlawful;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release him from

    custody or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a) or the Due Process Clause within seven days;

(6) Award her attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(7) Grant him any further relief this Court deems just and proper.

Date: February 2, 2026

Respectfully Submitted,

*/s/Brian Scott Green*
BRIAN SCOTT GREEN
West Virginia Bar No. 8727
Law Office of Brian Green
8700 E Jefferson Avenue
# 370021
Denver, CO 80237
443-799-4225 (telephone)
BrianGreen@greenUSimmigration.com

Attorney for the Petitioner


### VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I, Brian Scott Green, hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief under 28 U.S.C. § 2242 or under the U.S. Constitution are true and correct to the best of my knowledge.

Dated this 2nd day of February, 2026.

            */s/Brian Scott Green*
            Brian Scott Green
            West Virginia Bar ID # 8727