**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| RASUL UMAROV<br>A-Number: 246086738<br>Confined in: SOUTH CENTRAL REGIONAL JAIL<br><br>Petitioner,<br><br>v.<br><br>Christopher Mason, Superintendent of South Central Regional Jail;<br><br>Michael Rose, Acting Field Director, Philadelphia Field Office, Immigration and Customs Enforcement;<br><br>Todd Lyons, Current or Acting Director, United States Immigration and Customs Enforcement;<br><br>Kristi Noem, Current or Acting Secretary, United States Department of Homeland Security;<br><br>Pamela Bondi, Current or Acting United States Attorney General; and<br><br>Respondents. | CASE No._____<br><br>**VERIFIED PETITION UNDER 28 U.S.C. 2241 FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY** |

## I. INTRODUCTION

1.   Petitioner Rasul Umarov ("Mr. Umarov")  brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 to challenge his detention as a violation of the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act.

2.   Mr. Umarov respectfully requests that this Court order his **immediate release**, and/or order constitutionally adequate process, including a **prompt custody hearing** before a neutral

decision maker where the government bears the burden to justify detention.

3.  Mr. Umarov is a native of the Russian Federation and a citizen of Russia. He was paroled into the United States on October 23, 2022, in order to pursue his claim for asylum in the United States. Mr. Umarov filed his affirmative application for asylum with United States Citizenship and Immigration Services ("USCIS") on August 16, 2023.

4.  Mr. Umarov was unexpectedly and without justification detained by Immigration and Customs Enforcement Officers on January 14, 2026. He has been detained at the South Central Regional Jail since January 14, 2026.

5.  The Due Process Clause applies to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

6.  Immigration detention is civil and thus is permissible for only two reasons: to ensure a noncitizen's appearance at immigration hearings and to prevent danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Here, Mr. Umarov has no criminal history, has complied with all immigration requirements Mr. Umarov does not present a flight risk or a danger to the community. Under these circumstances, his detention is thus not justified under the Constitution. *See id.*

7.  Additionally, generally "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis added).

8.  Mr. Umarov respectfully seeks a writ of habeas corpus ordering the government to

immediately release his from his ongoing, unlawful detention, and prohibiting his re-arrest without a hearing to contest that re-arrest before a neutral decisionmaker.

9.   In addition, to preserve this Court's jurisdiction, Mr. Umarov also requests that this Court order the government not to transfer him outside of the District or deport him for the duration of this proceeding.

## II. CUSTODY

10.  Mr. Umarov is in the physical custody of Respondents. Mr. Umarov is currently imprisoned at the South Central Regional Jail ("SCRJ"), a West Virginia state jail with which ICE has a task order for detention services/bed space. Mr. Umarov is under the direct control of Respondents and their agents.

## III. JURISDICTION

11. This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, general federal question jurisdiction; 5 U.S.C. §§ 701 et seq., the Administrative Procedure Act (APA); habeas jurisdiction pursuant to 28 U.S.C. § 2241 et seq.; Art I., § 9, Cl. 2 of the United States Constitution (the Suspension Clause); and the common law.

12. This action arises under the Due Process Clause of the Fifth Amendment of the U.S. Constitution and the INA.

13. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2001 et seq., and the All-Writs Act, 28 U.S.C. § 1651.

14.  Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of DHS conduct.  Federal courts are not stripped of jurisdiction under 8 U.S.C. § 1252.  See e.g., *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

15. Mr. Umarov is challenging how DHS detained him in the interior of the United States, after

he was lawfully admitted and paroled. "Federal courts are not precluded from reviewing 'how' Respondents exercise their discretion and determining whether such exercise is violative of the Constitution or federal law." *E.V. v. Raycraft,* No. 4:25-CV-2069, 2025 WL 3122837, at *6 (N.D. Ohio Nov. 7, 2025).

## A. Subject Matter Jurisdiction

16.  This Court has subject matter jurisdiction over claims related to detention and constitutional violations. A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are met: (1) the applicant is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1191–92 (D. Colo. 2024), citing 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).

17. Because Mr. Umarov challenges the legality of his re-detention rather than a final order of removal 8 USC § 1252(b)(9) does not strip this Court of jurisdiction. *Perez v. LaRose*, No. 3:25-CV-02620-RBM-JLB, 2025 WL 3171742, at *3 (S.D. Cal. Nov. 13, 2025).

18. Furthermore, Mr. Umarov challenges the legality of DHS's re-detention under the Immigration and Nationality Act and the Administrative Procedure Act. "The question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *EDUARDO DUVALLON BOFFILL, Petitioner, v. FIELD OFFICE DIRECTOR, Miami Field Off., U.S. Immigr. & Customs Enf't, et al., Respondents*., No. 25-CV-25179-JB, 2025 WL 3246868, at *6 (S.D. Fla. Nov. 20, 2025).

19. This Court has jurisdiction to review whether Respondents followed required statutory and regulatory procedures to terminate Mr. Umarov's parole which was granted to him October 23,

2022. *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137 (D. Or. 2025).

## IV. VENUE

20. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because at least one Respondent is in this District, Mr. Umarov is detained in this District, Mr. Umarov's immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. See generally *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("the proper respondent to a habeas petition is 'the person who has custody over the petitioner'") (citing *28 U.S.C. §2242*) (cleaned up).  In addition, no real property is involved in this matter.

## V. PARTIES

21. Petitioner Rasul Umarov is currently detained by Respondents at the South Central Regional Jail ("SCRJ"), a West Virginia state jail with which ICE has a task order for detention services/ bed space.. He has been in ICE custody since on or about January 14, 2026.

22. Respondent Christopher Mason is the Superintendent of South Central Regional Jail, where Petitioner is currently detained. He is the physical custodian of Petitioner and is named in his official capacity.

23. Respondent Michael T. Rose is the Acting Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in his official capacity.

24. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Mr. Umarov and is named in his official capacity.

25. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security. She is a legal custodian of Mr. Umarov and is named in her official capacity.

26. Respondent Pamela Jo Bondi is the Attorney General of the United States and leads the U.S. Department of Justice. She is a legal custodian of Mr. Umarov and is named in her official capacity.

## VI. EXHAUSTION

27. Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022). Other courts in the Fourth Circuit have declined to require prudential exhaustion when evaluating a detained immigrant's petition under similar circumstances. *See Duarte Escobar v. Perry*, No. 3:25-cv758, ___ F.Supp.3d ____, 2025 WL 3006742, at *5 (E.D. Va. Oct. 27, 2025); *Velasquez v. Noem*, No. GLR-25-3215, ___ F.Supp.3d ___, 2025 WL 3003684, at *2, 2025 U.S. Dist. LEXIS 210601, at *5 (D. Md. Oct. 27, 2025). Here, Mr. Umarov's liberty interests significantly outweigh any interest in exhausting administrative remedies when the agency has "predetermined the issue before it" and has no intention of granting Mr. Umarov an opportunity for release. *Id.*; *Velasquez*, F.Supp.3d ___, 2025 WL 3003683, at *2, 2025 U.S. Dist. LEXIS 210601, at *5 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 148, 112 S. Ct. 1081 (1992)).

28. Prudential exhaustion is not required here because it would be futile, and Mr. Umarov will "suffer irreparable harm if unable to secure immediate judicial consideration of [their] claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Any further exhaustion requirements would be unreasonable.

## VII. STATEMENT OF FACTS

29. Mr. Umarov is 37-years-old. He arrived to the United States on October 23, 2022, fleeing persecution in his country of citizenship, the Russian Federation.

30. Mr. Umarov was paroled into the United States on October 23, 2022. (Exhibit B).

31. Mr. Umarov timely filed his affirmative application for asylum with United States Citizenship and Immigration Services (USCIS) on August 16, 2023. (Exhibit C).

32. He received employment authorization from USCIS and began gainfully working in the United States. He was never arrested or charged with any criminal conduct. He lived in compliance with all the laws of the United States.

33. Mr. Umarov's United States Citizen daughter was born on April 20, 2025.

34. On March 11, 2025, the Department of Homeland Security began removal proceedings against Mr. Umarov.  (Exhibit D).

35. On April 1, 2025, USCIS referred Mr. Umarov's application to the Immigration Court (Executive Office for Immigration Review), without having conducted an interview or made any assessment regarding Mr. Umarov's application. (Exhibit E).

36. Mr. Umarov dutifully hired an attorney and complied with all of the requirements of the Immigration Court. His Immigration Court case was scheduled for an individual merits hearing for April 4, 2028. (Exhibit F).

37. On January 14, 2026, Mr. Umarov was unexpectedly detained by Immigration and Customs Enforcement officers, without a warrant.


**VIII. STANDARD OF LAW**

 **A. Requirements of 28 U.S.C. §§ 2241, 2243**

38. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the Respondents "forthwith," unless Mr. Umarov is not entitled to relief.  *28 U.S.C. § 2243.* If an OSC is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

39. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia,* 372 U.S. 391, 400 (1963) (emphasis added).

40. Mr. Umarov is "in custody" for the purpose of § 2241 because he was detained and taken into custody by Respondents on January 14, 2026, and is held in custody in West Virginia at Respondents' detention center.

41. Habeas relief is the proper vehicle by which Mr. Umarov can challenge his civil immigration detention. *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas") (citing *Zadvydas v. Davis,* 533 U.S. 678, 687-88 (2001)).

**B. Mr. Umarov's re-detention violated his inherent liberty interest, protected by the Fifth Amended of the United States Constitution**

43. Mr. Umarov's re-detention, by DHS, over thirty-eight (38) months after he was inspected and paroled by DHS at the southern United States border, is a due process violation and because it arbitrarily and unjustifiably infringed on his fundamental liberty interest.

44. His re-detention also violates due process because it is in violation of the Immigration and Nationality Act and the Administrative Procedure Act.

45. Mr. Umarov was arrested and re-detained even though there were no changes in his circumstances since the time he was paroled into the United States. There is no evidence that DHS could provide that since he was paroled into the United States he has now become a danger to the public or that he poses a flight risk.

8

46. Application of the *Mathews* factors to Mr. Umarov's detention supports a finding that Mr. Umarov's detention violates his due process rights. The Court must consider (1) the private interest at issue, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the Government's interest. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

47. Mr. Umarov has an inherent private liberty interest granted to him by the Fifth Amendment Due Process Clause. When DHS released and paroled Mr. Umarov into the United States pursuant to 8 USC §1182(d)(5)(A), and allowed him to lived at liberty in the United States, obtain employment authorization, file an application for asylum with USCIS, and pursue all other indicators of a "normal" life, Mr. Umarov obtained this Fifth Amendment inherent private liberty interest. *Pruitt v. Heimgartner*, 620 F. App'x 653, 657 (10th Cir. 2015) (quoting *Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005)).

48. Mr. Umarov's more than thirty-eight (38) months, non-confined residence in the United States "crystallize[d]" into a protected liberty interest because Mr. Umarov "'reasonably thought the release was deliberate and lawful.'" *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025), quoting *Hurd v. D.C., Gov't,* 864 F.3d 671, 683–84 (D.C. Cir. 2017). The thirty-eight (38)  months is enough time to "afforded [Mr. Umarov] the Fifth Amendment's guaranteed due process before removal." *Perez v. LaRose*, No. 3:25-CV-02620-RBM-JLB, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025) citing *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025).

49. Even without having been paroled by DHS, Mr. Umarov has an interest in being "free from physical detention" by virtue of having been given access to reside in the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

50. As to the second factor of the *Mathews* assessment, Respondents did not implement any procedures, at all, when they revoked Mr. Umarov's parole - which Respondent's granted to him - initiate expedited removal proceedings over three yeas after Mr. Umarov presented himself at the U.S. border, removed his pending application for asylum from USCIS to the Immigration Court and detained Mr. Umarov without having a neutral fact-finder determine whether there was a reason for Mr. Umarov's detention.

51. Mr. Umarov's inherent private liberty interest that he obtained when he entered the territory of the United States is ongoing and does not expire. *Young v. Harper*, 520 U.S. 143, 147–149, 152-153 (1997). See also *Rodriguez v. Kaiser, No. 1:25-CV-01111-KES-SAB (HC)*, 2025 WL 2855193, at *6 (E.D. Cal. Oct. 8, 2025). "That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a individualized hearing prior to re-detaining the parolee. . . .Once established, [Mr. Umarov's] interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether [Mr. Umarov]'s re-detainment is warranted." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025)

52. Mr. Umarov's protected liberty interest entitles to him to protections against arbitrary and baseless re-detention by DHS, even if it is allegedly pursuant to 8 USC §1225. *Rodriguez v. Kaiser,* No. 1:25-CV-01111-KES-SAB (HC), 2025 WL 2855193, at *5 (E.D. Cal. Oct. 8, 2025). Mr. Umarov's initial inspection, release and parole by DHS in October of 2022 "reflects a

determination by the government that [he] is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)."Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest." *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *3 (E.D. Cal. Nov. 3, 2025) citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *See also Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *4 (W.D. Ky. Nov. 20, 2025).

53. Mr. Umarov's re-detention after parole, without any hearing or individualized determination regarding whether such re-detention is warranted, constitutes an erroneous deprivation of his inherent liberty interest. "[T]he Due Process Clause requires procedural protections before [Mr. Umarov] can be deprived of that interest." *Ortiz Reyes v. LaRose*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025). Accordingly, Mr. Umarov's current detention is a deprivation of his due process liberty interest.

54. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). These due process rights are both substantive and procedural.

55. First, "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

11

56. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

57. Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. See *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; see also *Demore v. Kim*, 538 U.S. 510 at 519–20, 527–28, 31 (2003).

58. Second, the procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards.

59. Generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch,* 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. See *Hurd v. D.C., Gov't*, 864 F.3d at 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context)

60. After a determination has been made that an individual is not a flight risk or danger, DHS may not re-arrest them "absent a change of circumstance." *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *See also Jose Argeny Portillo-Argueta, Petitioner, v. Joseph Simon, et al.,*

*Respondents.,* No. 1:25-CV-2285 (AJT-WEF), 2026 WL 184194, at *4 (E.D. Va. Jan. 23, 2026).

61. It has become clear that due process requires not only "changed circumstances" but also "evidence of urgent concerns," if Respondents seek to re-detain a person without a hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ") (emphasis added). *Rodriguez v. Kaiser*, No. 1:25-CV-01111-KES-SAB (HC), 2025 WL 2855193, at *7 (E.D. Cal. Oct. 8, 2025) (concluding that, "given the absence of evidence of urgent concerns . . . a pre-deprivation hearing [was] required to satisfy due process," and collecting cases); *Y.M.M. v. Wamsley*, No. 2:25-cv-02075, 2025 U.S. Dist. LEXIS 219064, at *5 (W.D. Wash. Nov. 6, 2025) ("Numerous courts in this district and throughout the Ninth Circuit have recognized this requirement" of a pre-deprivation hearing, "absent evidence of urgent concerns").

62. A pre-deprivation hearing before the government can re-detain a noncitizen is a crucial safeguard against pretextual arrests, especially in the current political environment where ICE is under intense pressure to meet arrest quotas. See *E.A. T.-B. v. Wamsley,* No. C25-1192-KKE2025, U.S. Dist. LEXIS 160809, at *10 (Aug. 19, 2025).

63. The legal principle is clear: Once the government makes the release determination, the individual has a liberty interest that cannot be taken away without a hearing—unless an "urgent" "change of circumstances" makes such a pre-deprivation hearing infeasible.

64. Mr. Umarov was afforded no such procedures and therefore his detention erroneously deprived him of his liberty interest.

65. As to the third *Matthews* factor, DHS has "no legitimate interest that would support [detaining

Mr. Umarov] without a pre-detention hearing." *Ramirez Tesara v. Wamsley,* No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *4 (W.D. Wash. Sept. 12, 2025). They cannot prove an evidentiary, administrative or financial burden that would overcome Mr. Umarov's Fifth Amended Due Process Right. *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025)

66. One Federal District Court found that "even the two-day curtailment of liberty" of a habeas petitioner "upon her re-detention by ICE was not justified by any valid interest. Providing her with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *4 (W.D. Wash. Sept. 12, 2025).

67. Overall, "there is no countervailing government interest . . . that supports conducting a bond hearing only after [Mr. Umarov] has been detained, rather than in advance thereof." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025).

68. DHS has a low interest in detaining Mr. Umarov without basic due process protections, such as a pre-detention hearing. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

**C. Termination of Mr. Umarov's parole violated the Administrative Procedure Act, Immigration and Nationality Act and applicable regulations**

69. Under the Administrative Procedure Act a reviewing court *shall* set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *5 U.S.C. § 706(2)(a)*; *see also LUZ LOAIZA ARIAS, Petitioner, v. CHRISTOPHER LAROSE, Warden, Otay Mesa Det. Ctr.*, *et al*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *2 (S.D. Cal. Nov. 25, 2025).

70. DHS must "articulate[] a satisfactory explanation for its action, including" providing a

"rational connection between" their decision to grant Mr. Umarov parole in October of 2022 and subsequently revoke Mr. Umarov's parole in January of 2026. *Perez v. LaRose*, No. 3:25-CV-02620-RBM-JLB, 2025 WL 3171742, at *6 (S.D. Cal. Nov. 13, 2025); *LUZ LOAIZA ARIAS, Petitioner, v. CHRISTOPHER LAROSE, Warden, Otay Mesa Det. Ctr*., *et al*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *2 (S.D. Cal. Nov. 25, 2025), quoting *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019).

71. Although the Attorney General's parole authority is discretionary, it is not without limits by mandatory guidelines. "Revocation of humanitarian parole has additional limitations under law." *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *13 (S.D. Cal. Oct. 1, 2025). To terminate the previously granted parole, Respondents must comply with the applicable regulatory requirements set forth in 8 C.F.R. § 212.5(e)(2)(i).

72. Section 1182(d)(5) "is a grant of discretionary authority, but it has a mandatory requirement— parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met. . . Agency action is not 'specified ... to be in the discretion' of the official where the action 'was not performed in accordance with the mandatory ... procedures.'" *Y-Z-L-H v. Bostock,* 792 F. Supp. 3d 1123, 1137–38 (D. Or. 2025), *quoting Sharkey v. Quarantillo, 541 F.3d 75, 86 (2d Cir. 2008).*

73. "Under the governing regulation, [§ 1182(d)(5)(A)] parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole." *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. § 212.5(e)); *Dorvis Jesus Rodriguez Martinez, v. Raycraft et al.,* No. 1:25-CV-1504, 2025 WL 3511093, at *5 (W.D. Mich. Dec. 8, 2025).

74. At the time that Mr. Umarov's parole was revoked and he was detained, he was still pursuing

his application for asylum in the United States, therefore the purpose of his parole had not been accomplished.

75. The abrupt and unjustified termination of Mr. Umarov's parole is not warranted under the regulations. "Petitioner was paroled into the United States based on his intent to seek asylum— the purpose of his parole. He applied for asylum and was still in the middle of those proceedings when Respondents issued and executed the revocation." *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *13 (S.D. Cal. Oct. 1, 2025); *see also*. "Moreover, there is nothing before the Court to suggest that the humanitarian reason or public benefit that justified Petitioner's parole no longer applies." *Dorvis Jesus Rodriguez Martinez, v. Raycraft et al.,* No. 1:25-CV-1504, 2025 WL 3511093, at *5 (W.D. Mich. Dec. 8, 2025).

76. Furthermore, Mr. Umarov was re-detained without an individualized assessment of whether he warrants a termination of his parole. *Dorvis Jesus Rodriguez Martinez, v. Raycraft et al.,* No. 1:25-CV-1504, 2025 WL 3511093, at *5 (W.D. Mich. Dec. 8, 2025), citing *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025).

77. Mr. Umarov's parole also could not be revoked because it no longer served the public benefit or humanitarian reasons. *Perez v. LaRose*, No. 3:25-CV-02620-RBM-JLB, 2025 WL 3171742, at *6 (S.D. Cal. Nov. 13, 2025). There is no evidence that since he was granted parole in October of 2022, Mr. Umarov became a flight risk or a danger to the public. "According to the 'Parole Directive' issued by DHS in 2009, if an asylum-seeker establishes her identity and that she presents neither a flight risk nor a danger to the public, her detention is not in the public interest, and thus ICE should, absent additional factors ... parole the [noncitizen]." *Perez v. LaRose*, No. 3:25-CV-02620-RBM-JLB, 2025 WL 3171742, at *6 (S.D. Cal. Nov. 13, 2025), *quoting Mons v. McAleenan,* Civil Action No. 19-1593 (JEB), 2019 WL 4225322, at *2

(D.D.C. Sept. 5, 2019)(internal quotations omitted for clarity).

78. Because the purpose of Mr. Umarov's parole had not been completed and no changed circumstances existed that would support a finding that he poses a danger to the public or a flight risk, DHS cannot "articulate[] a satisfactory explanation for [their] action to revoke [Mr. Umarov's] parole. Moreover, by denying [Mr. Umarov] the required procedure before purporting to terminate his parole, Respondents acted arbitrarily and capriciously and violated the APA." *Perez v. LaRose*, No. 3:25-CV-02620-RBM-JLB, 2025 WL 3171742, at *7 (S.D. Cal. Nov. 13, 2025), *quoting Altera Corp. & Subsidiaries v. Comm'r,* 926 F.3d 1061, 1080 (9th Cir. 2019) and *Y-Z-L-H v. Bostock,* 792 F. Supp. 3d 1123, 1137–38 (D. Or. 2025).

79. Under the Administrative Procedure Act a reviewing court *shall* set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *5 U.S.C. § 706(2)(a)*; *see also LUZ LOAIZA ARIAS, Petitioner, v. CHRISTOPHER LAROSE, Warden, Otay Mesa Det. Ctr*., *et al*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *2 (S.D. Cal. Nov. 25, 2025).

**D. Mr. Umarov's re-detention violated the Immigration and Nationality Act and applicable regulations**

80. DHS violated the Immigration and Nationality Act, and applicable regulations, by detaining him without the possibility of a bond hearing.

81. Mr. Umarov had been admitted and paroled to the United States pursuant to a grant of humanitarian parole and issued an I-94 document. Therefore, his re-detention is governed by 8 USC §1226. He is not subject to mandatory detention under 8 USC §1225.

82. "Whether Petitioner is detained under section 1225(b)(2) or section 1226(a) is an issue of statutory interpretation that hinges on the meaning of 'seeking admission.'" *Puga v. Assistant*

*Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at *4 (S.D. Fla. Oct. 15, 2025).

83. Mr. Umarov is no longer an "applicant for admission" under 8 U.S.C. § 1225, because he is not "arriving" or "recently entered in the United States." *Garcia Domingo v. Castro*, No. 1:25-CV-00979-DHU-GJF, 2025 WL 2941217, at *4 (D.N.M. Oct. 15, 2025). Mr. Umarov was granted humanitarian parole and issued an I-94 document. He resided in the United States for twenty-two (22) months prior to his re-detention within the territory of the United States.

84. Furthermore, Mr. Umarov was detained in the interior of the United States, not at the border seeking admission. *Garcia Domingo v. Castro*, No. 1:25-CV-00979-DHU-GJF, 2025 WL 2941217, at *4 (D.N.M. Oct. 15, 2025) ("He was in Homestead, Florida, on his way to work. Doc. 2-4 at 2. Petitioner had also not just arrived, or even recently arrived, to the United States.").

85. When interpreting the meaning of "*seeking admission*" used in 8 USC §1225(b)(2)(A), "[s]ome courts have noted that the phrase 'implies action — something that is currently occurring, and...would most logically occur at the border upon inspection.'" *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr*., No. 25-24535-CIV, 2025 WL 2938369, at *4 (S.D. Fla. Oct. 15, 2025), *quoting Lopez-Campos v. Raycraft,* No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025).

86. "[t]he plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. . . . And "[a]s § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [persons who have] already been residing in the United States for several years." *Victor Garcia Abanil v. Juan Baltazar, et al.* No. 25-

CV-4029-WJM-STV, 2026 WL 100587, at *4–5 (D. Colo. Jan. 14, 2026), *quoting Loa Caballero v. Baltazar,* 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025).

87. Mr. Umarov is detained pursuant to 8 USC § 1226, because he is no longer the category of persons who can be detained under 8 USC § 1225. "Petitioner has been granted humanitarian parole subject to a Form I-94, granting her parole for two years. Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since July 2024." *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025).

88. Mr. Umarov "is not merely an 'applicant for admission' at the border with minimal due process rights" *Ortiz Reyes v. LaRose*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *4–5 (S.D. Cal. Nov. 13, 2025).

89. Federal district courts - and other Federal agencies - which have been presented with re-detention under circumstances similar to those of Mr. Umarov - persons who were paroled into the United States and then re-detained in the interior of the United States after having resided in the United States for some period of time - "have found that an alien who is not presently seeking admission and has been in the United States for an extended time . . . is appropriately classified under § 1226(a) and not § 1225(b)(2)(A). These courts have also either ordered the alien's release or required a bond hearing. . . ." *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 2732717, at *2 (M.D. Fla. Sept. 25, 2025).

## IX. CLAIMS FOR RELIEF

### COUNT ONE

**Petitioner's Detention Violates Due Process Under the Fifth Amended of the U.S. Constitution**

90. Petitioner restates and realleges all paragraphs as if fully set forth here.

91. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. See generally *Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003).

92. Petitioner is currently being detained by DHS/ICE authorities without cause and in violation of his constitutional rights to due process of law.

93. Respondents' unlawful actions have caused and continue to cause Petitioner significant prejudice by depriving him of his liberty and exercise of his statutory and constitutional due process rights.

94. Petitioner's continued detention serves no legitimate governmental purpose. He has a pending application for asylum, no criminal history, strong family and community ties, and has demonstrated compliance with immigration laws.

95. For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

96. Petitioner has no adequate or complete remedy at law to address the wrongs described herein. The injunctive and declaratory relief sought by Petitioner is necessary to prevent continued and future irreparable injury.

## COUNT TWO

**Petitioner's Detention Violates the Immigration and Nationality Act and Applicable Regulations**

97. Petitioner restates and realleges all paragraphs as if fully set forth here.

98. Respondents' re-detention of Petitioner after he was paroled, without affording him a hearing to determine whether his re-detention serves statutory or regulatory purposes violated

Respondents' authority under the Immigration and Nationality Act. *8 U.S.C. § 1357(a)(2)*; *BACHITAR SINGH, v. KRISTI NOEM*, et al., No. CV 25-1110 JB/KK, 2025 WL 3254727 (D.N.M. Nov. 21, 2025); *Loa Caballero v. Baltazar*, No. 25-CV-03120-NYW, 2025 WL 2977650 (D. Colo. Oct. 22, 2025).

99. Respondents' unlawful actions have caused and continue to cause Petitioner significant prejudice by depriving him of his liberty and exercise of his statutory and constitutional due process rights.

100. As a proximate result of Respondents' statutory violations, Petitioner is suffering and will continue to suffer a significant deprivation of his liberty without due process of law.

101. Petitioner has no adequate or complete remedy at law to address the wrongs described herein. The injunctive and declaratory relief sought by Petitioner is necessary to prevent continued and future irreparable injury.

## **COUNT THREE**

**Revocation of Petitioner's Parole is in violation of the Immigration and Nationality Act and Applicable Regulations**

102. Petitioner restates and realleges all paragraphs as if fully set forth here.

103. Respondents' revocation of Petitioner's parole, without an individualized assessment in his case and prior to completion of the purpose of his parole, violated Respondents' authority under the Immigration and Nationality Act. *8 U.S.C. § 1182(d)(5)(A)*;

104. Respondents' unlawful actions have caused and continue to cause Petitioner significant prejudice by depriving him of his liberty and exercise of his statutory and constitutional due process rights.

105. As a proximate result of Respondents' statutory violations, Petitioner is suffering and will continue to suffer a significant deprivation of his liberty without due process of law.

106. Petitioner has no adequate or complete remedy at law to address the wrongs described herein. The injunctive and declaratory relief sought by Petitioner is necessary to prevent continued and future irreparable injury.

## **COUNT FOUR**

**Revocation of Petitioner's Parole is in violation of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A) and is an Abuse of Discretion Violation of 8 U.S.C. § 1226(b), 8 C.F.R. § 1236.1(c)(9)**

107. Petitioner restates and realleges all paragraphs as if fully set forth here.

108. Respondents revocation of Petitioner's parole, their arrest and re-detention of Petitioner without a warrant or an individualized assessment are all violations of the Administrative Procedure Act.

109. Under the APA, a court shall "hold unlawful and set aside agency action" that is an abuse of discretion. *5 U.S.C. § 706(2)(A)*.

110. An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

111. To survive an APA challenge, the agency must articulate "a satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (citation omitted).

112. By deciding to revoke Petitioner's parole and release without consideration of his individualized facts and circumstances, Respondents have violated the APA.

113. By choosing to categorically detain the Petitioner, Respondents have further abused their discretion because there have been no changes to his facts or circumstances since the agency made its initial custody determinations that support the revocation of his release from custody.

114. Respondents have previously considered Petitioner's facts and circumstances and determined that he was not a flight risk or danger to the community. There have been no changes to the facts that justify this revocation.

115. "Respondents' actions are arbitrary, fail to adhere to the law, and therefore, violate the APA." *Noori v. LaRose,* No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *14 (S.D. Cal. Oct. 1, 2025).

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue an Order to Show Cause requiring Respondents to show why the writ should not be granted within three (3) days, and set a hearing on this Petition within five (5) days of the return, as required by 28 U.S.C. 2243;

3. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately under reasonable conditions of supervision, or in the alternative, to provide him with a bond hearing before an Immigration Judge at which the Government bears the burden of

justifying continued detention;

4. Declare that Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act and the Immigration and Nationality Act.

5. Enjoin Respondents from transferring Petitioner outside this District or deporting Petitioner pending these proceedings;

6. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community;

7. Set aside Respondents' unlawful practice pursuant to 5 U.S.C. §706(2) as contrary to law, contrary to constitutional right, and in excess of statutory authority; and

8. Grant such further relief as this Court deems just and proper.

DATED: February 3, 2026

Respectfully Submitted,

*/s/ Lesley M Nash*
Lesley M Nash (WVSB #14158)
Mountain State Justice, Inc.
1029 University Ave., Suite 101
Morgantown, WV 26505
lesley@msjlaw.org
(304) 326-0188
(304) 326-0189 (fax)
*Attorney for Petitioner*


Inna Parizher, Esq.
*Pro Hac Vice pending*
Law Office of Inna Parizher
PO Box 43097
Los Angeles CA 90043
(310) 630-9499
InnaParizher@ParizherImmigration.com
*Attorney for Petitioner*

1
2
3

<u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

4
5

I, Inna Parizher, do depose and state:

6

      I represent Petitioner Rasul Umarov in these habeas corpus proceedings. Mr. Umarov is

7

currently being held in detention at the South Central Regional Jail and cannot appear in my office

8

to sign this Verification. I hereby verify that the factual statements made in the foregoing Petition

9

for Writ of Habeas Corpus are true and correct to the best of my knowledge and belief.

10
11

Dated: February 3, 2026              RESPECTFULLY SUBMITTED,
Los Angeles, California

12
13

                    _/s/Inna Parizher_____
                    Inna Parizher

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28