UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **KHASAN ABDUGAFFOROV,** | |
| **Petitioner,** | |
| **v.** | **Case No:** |
| **CHRISTOPHER MASON, Superintendent, South Central Regional Jail; MICHAEL ROSE, Director, ICE Philadelphia Field Office; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, KRISTI NOEM, Secretary of the Department of Homeland Security; PAMELA JO BONDI, Attorney General of the United States,** *in their official capacities,* | |
| **Respondents.** | |

## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

Petitioner Khasan Abdugafforov ("Petitioner"), by and through undersigned counsel, hereby challenges his unlawful detention, which is premised on a legal fiction and an erroneous application of the immigration detention statutes. In October 2024, Petitioner, a citizen of Uzbekistan, entered the United States near the Texas border for the purpose of seeking asylum and was not detained, inspected, or paroled at the border. After affirmatively applying for asylum with U.S. Citizenship and Immigration Services ("USCIS") and remaining at liberty in the community while awaiting his asylum interview, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") during an interior enforcement action in West Virginia. Nevertheless, Respondents are detaining Petitioner pursuant to 8 U.S.C. § 1225(b), a statute limited to noncitizens seeking admission in connection with a border or inspection process, thereby

unlawfully denying him access to an individualized custody determination required by law.

## I.    <u>INTRODUCTION</u>

1.      Petitioner Khasan Abdugafforov sought safety in the United States through lawful means by seeking asylum. In October 2024, Petitioner, a citizen of Uzbekistan, *see Exhibit 1, Passport*, entered the United States near the Texas border for the purpose of requesting protection. He entered the interior of the United States without any custodial encounter with immigration authorities.

2.      After his entry, Petitioner affirmatively applied for asylum with U.S. Citizenship and Immigration Services ("USCIS") on October 30, 2024, and remained at liberty in the community while awaiting adjudication of his asylum application. *Exhibit 2, Notice of Receipt of Application for Asylum*. USCIS collected Petitioner's biometrics in connection with that application. *See Exhibit 3, Biometrics Appointment Notice*. Throughout this period, Petitioner was not in immigration custody and complied with all applicable legal requirements.

3.      Since his entry, Petitioner has established meaningful ties to the United States, including maintaining a fixed residence and integrating into the community. He remained continuously present in the United States and did not attempt to evade immigration authorities or abscond.

4.      While his affirmative asylum application remained pending before USCIS and he was awaiting an asylum interview, Petitioner continued to reside peacefully in the community. During this period, Petitioner obtained employment authorization, secured a commercial driver's license (CDL), and began working as a truck driver pursuant to valid employment authorization. *See Exhibit 4, Employment Authorization Document; Exhibit 5, Driver's License.* At no point during this time was Petitioner subject to detention, removal proceedings, or any finding that he posed a flight risk or danger to the community.

2

5.      On or about January 10, 2026, Respondents detained Petitioner under 8 U.S.C. § 1225(b), even though Petitioner was apprehended well inside the United States, long after his entry, and while his affirmative asylum application was pending with USCIS. The use of § 1225(b) in this context bears no relationship to Petitioner's actual procedural posture and unlawfully denies him access to any individualized custody determination.

6.      Following his arrest on or about January 10, 2026, Petitioner was detained without being presented before an Immigration Judge and without being afforded any opportunity to seek bond or an individualized custody determination.

7.      Petitioner was taken into custody in West Virginia while working as a truck driver on an interstate highway during a routine regulatory inspection conducted in the course of his employment.

8.      Following his arrest, Petitioner was transported to South Central Regional Jail ("SCRJ") in Charleston, West Virginia.

9.      Petitioner's detention is civil and administrative in nature. On information and belief, his confinement is not based on any criminal conviction or charge.

10.     While detained, Petitioner remains physically confined and deprived of his liberty as his immigration case proceeds through the administrative process.

11.     On information and belief, no Immigration Judge has conducted an individualized custody determination assessing whether Petitioner's continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release.

12.     On information and belief, no immigration officer or decisionmaker has determined that continued physical confinement is justified by a legitimate governmental purpose in Petitioner's case—i.e., the risk of flight or danger to the community.

13.    Although Petitioner's detention is civil in character, it has resulted in ongoing physical confinement without release.

14.    Petitioner remains detained while his immigration proceedings continue, without any individualized custody review reflected in the record.

15.    As a result, Petitioner continues to suffer a deprivation of physical liberty solely on the basis of civil immigration detention.

16.    Petitioner's detention has imposed significant restraints on his freedom of movement and personal autonomy.

17.    On information and belief, there has been no mechanism by which Petitioner has received a meaningful opportunity to challenge the necessity of his continued detention.

18.    Absent judicial intervention, Petitioner will remain detained without an individualized custody determination addressing whether continued confinement is necessary or justified.

19.    Petitioner respectfully requests that this Court find his detention unlawful under 8 U.S.C. § 1225(b) and order his release, or in the alternative, direct that he be placed into standard removal proceedings under 8 U.S.C. § 1229(a), consistent with the due process principles established in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Landon v. Plasencia*, 459 U.S. 21 (1982), and require that Petitioner be released unless Respondents provide Petitioner an immigration bond hearing under 8 U.S.C. 1226(a) within seven days.

## II.    PARTIES

20.    Petitioner is a citizen and national of Uzbekistan who resided in Brooklyn, New York, prior to his detention. Following his entry into the United States, Petitioner affirmatively applied for asylum with USCIS and remained present in the United States while that application was pending. He is currently detained by Respondents at SCRJ, a West Virginia state jail with

which ICE has a task order for detention services/bed space. As of the date of filing (February 10, 2026), Petitioner has been in ICE custody for approximately a month since he was detained on January 10, 2026, when he was arrested during a routine regulatory inspection conducted during the course of his employment as a truck driver.

21.    Respondent Chrisopher Mason is the Superintendent of South Central Regional Jail, where Petitioner is currently detained. He is the physical custodian of Petitioner and is named in his official capacity.

22.    Respondent Michael T. Rose is the Acting Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in his official capacity.

23.    Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

24.    Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

25.    Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

### III.    JURISDICTION

26.    This Court has jurisdiction over this Petition pursuant to 28 U.S.C. § 2241, which authorizes federal courts to grant habeas relief to individuals who are "in custody in violation of the Constitution or laws or treaties of the United States."

27.    Petitioner is currently detained within this District at SCRJ in Charleston, West Virginia, and therefore, jurisdiction is proper in this Court. See *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (a habeas petition must be filed in the district of confinement and name the immediate

custodian).

28.    This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No 104-208, 110 Stat. 1570. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 and the Suspension Clause of the Constitution because this action is a habeas corpus petition, and under 28 U.S.C. § 1331 because this action arises under federal law, including the INA, 8 U.S.C. § 1101, et seq., and the Administrative Procedure Act, 5 U.S.C. § 551, et seq. In sum, this Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

29.    This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. §2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

30.    Congress has stripped district courts of habeas jurisdiction in certain immigration-related contexts, including through provisions such as 8 U.S.C. § 1252. Those jurisdiction-stripping provisions, however, are inapplicable here. Although Congress possesses the authority to limit habeas jurisdiction, that authority is subject to strict construction. *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482–83 (1999) (explaining that jurisdiction-stripping provisions should not be read expansively to encompass claims beyond those expressly identified). *See also Jennings v. Rodriguez*, 583 U.S. 281, 138 S. Ct. 830, 840–41 (2018) (noting that courts have historically declined to apply overly literal readings to broad statutory language when construing the scope of immigration statutes). Because the vast majority of jurisdiction-stripping provisions do not expressly reference challenges to immigration detention, they do not deprive this Court of habeas jurisdiction over Petitioner's detention-based claims.

31.    Consistent with that principle, the Supreme Court has made clear that habeas

jurisdiction under 28 U.S.C. § 2241 remains available for statutory and constitutional challenges to immigration detention unless Congress has spoken with unmistakable clarity to eliminate such review. *See INS v. St. Cyr*, at 289, 305–14. The jurisdiction-stripping provisions set forth in 8 U.S.C. § 1252(a)(2) are limited in scope and address discrete categories of review, such as challenges to expedited removal orders or certain forms of discretionary relief. Those provisions do not purport to eliminate habeas jurisdiction over claims challenging the legality of immigration detention itself. Accordingly, where a petitioner challenges the statutory and constitutional basis of his continued detention—rather than the merits of a removal order—§ 1252(a)(2) does not deprive this Court of jurisdiction to entertain a petition for habeas corpus.

32.     Section 1226(e) limits judicial review of discretionary judgments regarding the detention or release of noncitizens. That provision, however, does not bar habeas review of statutory or constitutional challenges to the legality of detention itself. See *Jennings*, at 295 (explaining that § 1226(e) does not preclude challenges to the statutory framework governing detention). Accordingly, where a petitioner contests whether the government is detaining him under a lawful statutory authority, § 1226(e) does not deprive this Court of habeas jurisdiction.

33.     The inapplicability of 8 U.S.C. § 1226(e) to habeas challenges is confirmed by the statutory history of the INA. Prior to the Supreme Court's decision in *St. Cyr*, the INA's jurisdiction-stripping provisions did not specifically reference habeas corpus. See, e.g., 8 U.S.C. § 1252(a)(2)(A) (no express reference to habeas corpus). The Supreme Court explained that, absent a clear statement from Congress, statutory and constitutional challenges remained cognizable in habeas corpus proceedings. See *St. Cyr*, at 312–13.

34.     At that time, Congress did not amend 8 U.S.C. § 1226(e) to include any reference to habeas corpus, and it has not done so since. Compare, for example, 8 U.S.C. § 1252(a)(2)(A) (2005), which expressly references habeas corpus, with 8 U.S.C. § 1226(e) (2005) and 8 U.S.C. §

1226(e) (2020), both of which contain no reference to habeas corpus. This statutory contrast supports the conclusion that Congress did not intend § 1226(e) to eliminate habeas review. See also H.R. Rep. No. 109-72, at 175 (2005) (explaining that the amendments were designed to eliminate habeas review over challenges to removal orders, while preserving habeas review over challenges to detention independent of removal orders).

35.     Canons of statutory construction support that conclusion. Courts presume that when Congress amends a statute, the amendment is intended to have meaningful effect. See *Stone v. INS*, 514 U.S. 386, 397 (1995) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979), and *Moskal v. United States*, 498 U.S. 103, 109–11 (1990)). By contrast, where Congress elects not to amend a statutory provision while amending related provisions, that choice supports the inference that no change was intended. Accordingly, Congress's decision to leave 8 U.S.C. § 1226(e) unchanged supports the conclusion that habeas corpus jurisdiction over challenges to detention was preserved.

36.     Furthermore, even if 8 U.S.C. § 1226(e) were construed to apply to petitions for habeas corpus generally, it would not extend to Petitioner's specific claims. Section 1226(e) limits judicial review only with respect to discretionary judgments regarding detention or release. Administrative agencies lack discretion to act in violation of the Constitution, and constitutional challenges therefore fall outside the scope of discretionary determinations. See *Jennings v. Rodriguez*, at 830, 841. Accordingly, as a matter of statutory interpretation, § 1226(e) does not preclude habeas review of constitutional challenges to the legality of detention.

37.     This Court has already confirmed that habeas jurisdiction exists to review whether Respondents are detaining a noncitizen under the correct statutory authority. In recent decisions arising from this District, the Court has expressly held that it retains jurisdiction to determine whether Respondents have misapplied 8 U.S.C. § 1225(b) to noncitizens who were already present in the United States and apprehended through interior enforcement actions, rather than at the

border or during the inspection process. *See, e.g., Larrazabal-Gonzalez v. Mason*, 2:26-cv-00049 (S.D.W. Va. Jan. 28, 2026); *Rodriguez Flores v. Mason*, 2:26-cv-00044 (S.D.W. Va. Jan. 28, 2026).

38.     In those cases, this Court rejected the government's contention that § 1225(b) or the jurisdiction-stripping provisions of 8 U.S.C. § 1252 preclude judicial review, holding instead that habeas review is proper where the petitioner challenges the statutory basis of detention itself, rather than a discretionary custody determination. The Court emphasized that it has a "narrow, unavoidable duty to ensure that custody itself is lawful," and that habeas jurisdiction squarely encompasses claims that DHS lacks statutory authority to detain a noncitizen under the provision it has invoked.

39.     Accordingly, where, as here, Petitioner challenges Respondents' authority to detain him under 8 U.S.C. § 1225(b) following an interior arrest occurring long after entry, rather than under 8 U.S.C. § 1226(a), this Court has jurisdiction to adjudicate that claim and to order appropriate habeas relief.

40.     Therefore, this Court has jurisdiction to review this habeas petition on behalf of Petitioner.

## IV.    VENUE

41.     The Southern District of West Virginia has recognized habeas jurisdiction over comparable challenges to statutory detention authority. *See, e.g., Machado de Oliveira v. Warden*, 2:25-cv-00668 (S.D.W. Va.) (Berger, I.); *Simanca Gonzalez v. Aldridge, et al.*, 3:26-cv-00055 (S.D.W. Va.) (Chambers, R.); *Gutierrez Aroca v. Mason, et al.*, 2:26-cv-00057 (S.D.W. Va.) (Goodwin, J.); *Serna Zarate et al. v. Mason et al.*, 2:26-cv-00069 (S.D.W. Va.) (Johnston, T.).

42.     Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial

part of the events or omissions giving rise to the claims occurred in the Southern District of West Virginia.

43.     The venue is therefore proper in this District, as the Petitioner is detained here, and the immediate custodian responsible for his detention is located within this District.

## V.     REQUIREMENTS OF 28 U.S.C. § 2243

44.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

45.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. Habeas corpus is "perhaps the most important writ known to constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement*." Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## VI.     STANDARD OF LAW

46.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (cleaned up). A petitioner may seek a writ of habeas corpus when their custody violates the US Constitution or a federal law. 28 U.S.C. § 2241(c)(3), which should be

granted if the petitioner meets their burden of proof–a preponderance of evidence. *See Post v. Boles*, 332 F.2d 738, 742 (4th Cir. 1964); *see also*, *e.g.*, *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *3 (D. Minn. 2025) (collecting cases).

47. The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless *for good cause* additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

48. Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022). Other courts in the Fourth Circuit have declined to require prudential exhaustion when evaluating a detained immigrant's petition under similar circumstances. *See Duarte Escobar v. Perry*, No. 3:25-cv758, ___ F.Supp.3d ____, 2025 WL 3006742, at *5 (E.D. Va. Oct. 27, 2025); *Velasquez v. Noem*, No. GLR-25-3215, ___ F.Supp.3d ___, 2025 WL 3003684, at *2, 2025 U.S. Dist. LEXIS 210601, at *5 (D. Md. Oct. 27, 2025). Here, petitioner's liberty interests significantly outweigh any interest in exhausting administrative remedies when the agency has "predetermined the issue before it" and has no intention of granting petitioner an opportunity for release. *Id.*; *Velasquez*, F.Supp.3d ___, 2025 WL 3003683, at *2, 2025 U.S. Dist. LEXIS 210601, at *5 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 148, 112 S. Ct. 1081 (1992)).

49. "[T]he Due Process Clause applies to all 'persons' within the United States, including [immigrants], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

50. In July of 2025, DHS began ignoring the decades-long consensus of how 8 U.S.C. § 1225(b)(2) should be interpreted; the Board of Immigration Appeals ("BIA") articulated this

new policy in a subsequent precedential ruling. *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA Sept. 5, 2025). Respondents now claim that individuals who are arrested while residing within the United States are somehow "seeking admission" simply because they may have pending claims for asylum or other forms of status.

51.     However, the overwhelming majority of district courts across the country, including numerous courts within the Fourth Circuit, have made clear that 8 U.S.C. § 1225(b)(2) only authorizes detention for noncitizens who are at the border seeking physical entry at the time of detention, not those who reside in the United States, whose detention is discretionary and governed by 8 U.S.C. § 1226(a). *See, e.g., Villanueva v. Bondi*, No. 25-cv-4152-ABA, 2026 WL 100595, 2026 U.S. Dist. LEXIS 6852 (D. Md. Jan. 14, 2026); *Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, 2025 U.S. Dist. LEXIS 194070 (E.D. Va. Sep. 29, 2025); *Said v. Noem*, No. 3:25-cv-00938-MOC, 2025 WL 3657217, 2025 U.S. Dist. LEXIS 260237 (W.D.N.C. Dec. 17, 2025); *Mercado v. Francis*, No. 25-cv-6582 (LAK), ___ F.Supp.3d ___, 2025 WL 3295903, at *4, 2025 U.S. Dist. LEXIS 232876, at *9 (S.D.N.Y. Nov. 26, 2025) (finding that challenges to the new mandatory detention scheme had prevailed in 350 out of 362 cases decided by over 160 different judges).

52.     Only under certain circumstances are immigrants subject to ongoing detention without a bond hearing. *See, e.g.,* 8 U.S.C. § 1226(c) (individuals with certain criminal convictions may be detained without a bond hearing for the pendency of removal proceedings[1]) *and* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (authorizing mandatory detention of immigrants in expedited removal proceedings).

---

[1] Even when detained under 1226(c), immigrants retain due process rights and are entitled to a hearing if the period of detention becomes unreasonable. *See, e.g., Portillo v. Hott,* 322 F. Supp. 3d 698, 709 (E.D. Va. 2018).

53.     Otherwise, the "default rule" is that detention of immigrants already present in the United States and subject to pending removal proceedings is governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

54.     Under this default rule, detained immigrants are constitutionally and statutorily entitled to a bond hearing. *See*, *e.g.*, *Campos-Flores v. Bondi*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303, (E.D. Va. Dec. 2, 2025); *Lopez v. Lyons*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, 2025 U.S. Dist. LEXIS 232158 (E.D. Va. Nov. 25, 2025).

55.     This case concerns the misapplication of § 1225(b) to a noncitizen who entered the United States without inspection, was apprehended through an interior enforcement action long after entry and was detained while pursuing an affirmative asylum application and prior to any individualized custody determination, such that § 1226(a) governs Petitioner's custody.

56.     Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

57.     By contrast, § 1226(a) applies broadly to noncitizens "pending a decision on whether the alien is to be removed from the United States," including individuals charged as inadmissible and placed into § 1229(a) proceedings.

58.     The basis for Petitioner's continued detention is, therefore, a misapplication of the statute. Although Petitioner entered the United States without inspection and was never detained at the border, ICE is detaining him under 8 U.S.C. § 1225(b) long after his entry and following an interior arrest. By applying a detention provision designed for the inspection and admission process at the border, Respondents have categorically denied Petitioner the opportunity for an individualized custody determination or bond hearing. This detention does not arise from any border encounter or ongoing inspection process; it arises solely from the arrest of an individual

living and working in the United States while pursuing an affirmative asylum application and awaiting adjudication.

59.    Respondents' invocation of 8 U.S.C. § 1225(b) rests on a fundamental legal error. That statute is textually and structurally tied to the inspection and admission process at the Nation's borders and ports of entry, and it is not a general authority to impose mandatory detention through interior enforcement long after a person has entered the country. It does not grant DHS the power to reach into the interior of the United States and retroactively apply a border-based mandatory detention framework to an individual who has been living in the community and pursuing an affirmative asylum application. Petitioner's arrest did not occur at the border or at the time of entry; it occurred in the heart of the United States, while he was residing and working lawfully. By applying § 1225(b) to an interior arrest occurring long after entry, Respondents rely on a legal fiction to deny Petitioner access to an individualized custody determination and a bond hearing.

60.    In recent months, Immigration Courts across the country have routinely declined to exercise custody jurisdiction in cases where DHS invokes 8 U.S.C. § 1225(b), citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). As a result, bond requests in materially identical cases have been categorically denied for lack of jurisdiction, rendering any such request futile. Because the denial of custody jurisdiction under *Yajure Hurtado* is automatic once DHS asserts § 1225(b), Petitioner seeks habeas corpus relief directly to challenge the legality of his detention and DHS's statutory authority, rather than pursuing an administrative process that is foreclosed as a matter of law.

61.    Respondents, on information and belief, are charging Petitioner with having entered the United States without admission or inspection under 8 U.S.C. § 1182(a)(6)(A)(i). Despite Petitioner's explicit processing under non-mandatory detention guidelines and the absence of any prior removal order, Respondents rely on DHS policy which instructs ICE employees to consider

any noncitizen inadmissible under that statute to be ineligible for an immigration bond under 8 U.S.C. § 1225(b)(2)(A).[2]

62.    This position relies on *Matter of Yajure Hurtado*, a BIA precedent holding that an IJ has no jurisdiction to consider bond requests for noncitizens who entered without admission or inspection. However, Respondents' legal interpretation is plainly contrary to the statutory framework and decades of agency practice applying 8 U.S.C. § 1226(a).

63.    Respondents' detention of Petitioner under 8 U.S.C. § 1225(b)(2)(A) violates the plain language of the Immigration and Nationality Act. That provision is limited to the inspection and admission process at the border and does not apply to noncitizens like Petitioner who entered the United States in October 2024, were not detained or processed at the border, and were later apprehended in the interior of the country. Section 1225(b)(2)(A) does not authorize mandatory detention based on an interior arrest occurring long after entry and wholly disconnected from any inspection or admission process.

64.    Respondents have detained Petitioner without ever affording him a meaningful opportunity to seek an individualized custody determination before an Immigration Judge. While Petitioner's affirmative asylum application remained pending with U.S. Citizenship and Immigration Services and he was awaiting further adjudication in that process, Respondents detained him under 8 U.S.C. § 1225(b), a classification that categorically forecloses access to bond. Because binding agency precedent precludes Immigration Judges from exercising custody jurisdiction once DHS invokes § 1225(b), any attempt to seek administrative relief would be futile. Under these circumstances, habeas corpus relief is the only available mechanism to challenge the legality of Petitioner's detention. Petitioner therefore respectfully requests that this Court find his

---

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, issued July 10, 2025, available at https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf (last accessed Feb. 9, 2026).

detention unlawful under 8 U.S.C. § 1225(b) and order his release or, in the alternative, require that he be provided an individualized custody hearing pursuant to 8 U.S.C. § 1226(a).

65.     Petitioner has not been afforded an individualized custody determination or the opportunity to seek release on bond. Because DHS's asserted detention framework forecloses bond jurisdiction as a matter of nationwide administrative practice, Petitioner lacks any meaningful administrative forum in which to challenge the legality of his detention.

66.     Accordingly, Petitioner's detention is not authorized by statute, and habeas relief is warranted.

## VII.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

67.     Exhaustion of administrative remedies is not required in this case. 28 U.S.C. § 2241 contains no statutory exhaustion requirement, and courts apply only a prudential exhaustion doctrine in immigration habeas matters. See *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (exhaustion not required where not mandated by statute); *Hernandez v. Gonzales*, 424 F.3d 42, 49 (1st Cir. 2005) (no exhaustion required for challenges to detention authority). Where, as here, a petitioner challenges the statutory and constitutional authority for detention, exhaustion is not required because administrative agencies cannot adjudicate constitutional claims and lack the power to grant habeas relief. See *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (BIA lacks authority to decide constitutional issues).

68.     Moreover, exhaustion would be futile because neither the IJ nor the Board of Immigration Appeals can review DHS's claim that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), nor can they order release where DHS invokes that statute. Administrative procedures, therefore, cannot provide the relief sought, release from unlawful detention. See *McCarthy*, 503 U.S. at 146–49 (exhaustion excused where agency remedies are inadequate or would cause irreparable injury).

69.    Respondents' reliance on *Matter of Yajure Hurtado* to justify mandatory detention under 8 U.S.C. § 1225(b) is legally unsustainable. Courts within this District have squarely rejected the government's attempt to extend § 1225(b) beyond the border and inspection context to justify detention arising from interior enforcement actions. See *Larrazabal-Gonzalez*; *Rodriguez Flores*. In those cases, the Court emphasized that § 1225(b) is not a roving detention authority and does not permit DHS to impose mandatory detention on individuals apprehended well inside the United States, long after entry, and outside any inspection or admission process. Rather, such detention is governed by 8 U.S.C. § 1226(a), which requires an individualized custody determination. Because Petitioner was arrested in the interior of the United States while pursuing an affirmative asylum application and not in connection with any border or inspection encounter, § 1225(b) does not apply, and Respondents lack statutory authority to deny him access to a bond hearing.

70.    Accordingly, under binding precedent from this Court, challenges to the statutory and constitutional basis of civil immigration detention are properly brought through habeas corpus, and detention without a prompt, individualized custody determination is unlawful.

71.    Courts across multiple jurisdictions have reached the same conclusion as the Northern District of Illinois, holding that 8 U.S.C. § 1225(b) does not authorize mandatory detention of noncitizens who have already entered the United States and are apprehended in the interior while awaiting removal proceedings. In *Rodriguez-Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), the court held that § 1226(a), not § 1225(b), governs detention where a noncitizen was not apprehended at the border or immediately upon entry. The court emphasized that § 1225(b) is limited to individuals "seeking admission" and does not extend to those who are already present in the United States pending adjudication before an Immigration Judge.

72.    Similarly, the District of Massachusetts has repeatedly rejected DHS's attempt to expand § 1225(b) beyond its statutory limits. In *Gomes v. Hyde*, at 6–8, the court held that §

1225(b)(2) applies only at the border or shortly after entry and does not authorize mandatory detention of individuals apprehended in the interior months or years later. The court explained that the phrase "seeking admission" is written in the present tense, confirming that Congress intended § 1225(b) to apply only at the point of entry, not after a noncitizen has been released into the country.

73.     The court applied the same reasoning in *Martinez v. Hyde*, 792 F. Supp. 3d 211 (D. Mass. July 24, 2025), rejecting DHS's interpretation of 8 U.S.C. § 1225(b) as overly expansive and inconsistent with the statute's text, structure, and historical application. The court explained that once a noncitizen is physically present in the United States and placed into removal proceedings under 8 U.S.C. § 1229a, any detention authority must arise under 8 U.S.C. § 1226(a), which requires an individualized custody determination rather than mandatory detention.

74.     Courts in this District have likewise exercised habeas jurisdiction over challenges to the statutory and constitutional basis of immigration detention arising from interior enforcement actions. In *Larrazabal-Gonzalez* and *Rodriguez Flores*, this Court rejected the Government's reliance on jurisdiction-stripping provisions of the Immigration and Nationality Act and held that challenges to the lawfulness of detention itself are properly brought through habeas corpus. The court emphasized that when the Government restrains an individual's liberty, it bears the burden of establishing a lawful statutory basis for that detention and must provide a prompt, individualized custody determination consistent with due process. Because the Government failed to justify continued detention under the governing statutory framework, the court ordered the petitioners released and prohibited further detention absent a meaningful individualized determination by a neutral decisionmaker. These decisions confirm that civil immigration detention following interior enforcement is subject to habeas review and cannot be sustained without a valid statutory basis and individualized process.

75.    In sum, exhaustion of administrative remedies is neither required nor appropriate where, as here, Petitioner challenges the Government's statutory authority to detain him and the constitutionality of that detention. Because Immigration Judges and the Board of Immigration Appeals lack the power to adjudicate such claims or to order release once DHS invokes 8 U.S.C. § 1225(b), administrative processes offer no meaningful avenue for relief. Habeas corpus therefore remains the sole and proper mechanism for reviewing the legality of Petitioner's detention and for enforcing the statutory and constitutional limits on the Government's power to restrain liberty.

## VIII.    CLAIMS FOR RELIEF

### COUNT ONE
### Immigration and Nationality Act, 8 U.S.C. § 1226

*Petitioner's Ongoing Detention, without the Opportunity for a Bond Hearing, Violates His Statutory Right to a Hearing as Guaranteed by 8 U.S.C. § 1226*

76.    Petitioner realleges and incorporates by reference the allegations above.

77.    Under the statutory framework governing civil immigration detention, noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to an individualized custody determination, including consideration for release on bond. Section 1226(a) governs detention where a noncitizen is apprehended in the interior of the United States and is not subject to mandatory detention based on a contemporaneous border or inspection encounter.[3]

---

[3] Petitioner notes the decision of the Central District of California in *Maldonado Bautista v. Santacruz*, 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); *Maldonado Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), which issued a declaratory judgment holding that the "Bond Denial Class" members are detained under 8 U.S.C. § 1226(a) and, thus, may not be denied consideration for release on bond under § 1225(b)(2)(A). The court further held that the statutory violation identified in *Maldonado Bautista* was not limited to the named plaintiffs, but applied broadly to similarly situated noncitizens detained under § 1225(b)(2) despite falling within the detention framework of § 1226(a). Accordingly, the court extended declaratory relief to the Bond Eligible Class and issued a binding judgment prohibiting Respondents from denying bond eligibility based solely on the invocation of § 1225(b)(2). See 28 U.S.C. § 2201(a).

The court in *Maldonado Bautista* further explained that the Bond Eligible Class includes noncitizens who entered without inspection and were later apprehended in the interior of the United States, where detention is not tied to an inspection or admission process but instead arises from post-entry enforcement. Such individuals are governed by § 1226(a) as a matter of statutory interpretation, regardless of the labels applied by DHS. Petitioner falls squarely within the statutory framework addressed in *Maldonado Bautista*. He entered the United States without inspection, was not

78.     As laid out above, Petitioner was is not "seeking admission" at the border and is therefore subject to 8 U.S.C. § 1226.

79.     Respondents' attempt to apply mandatory detention through 8 U.S.C. § 1225(b)(2) to Petitioner violates the Immigration and Nationality Act.

80.     Petitioner is detained, without being afforded an opportunity to advocate for his release back into his community as the law requires.

81.     In the absence of an individualized custody determination, Petitioner's continued detention is not meaningfully tethered to the limited statutory purposes authorized by the Immigration and Nationality Act.

## COUNT TWO
## Fifth Amendment Due Process

*Petitioner is being deprived of an adequate and meaningful process to challenge his ongoing confinement.*

82.     Petitioner incorporates by reference the allegations set forth above.

83.     Petitioner has due process rights as a resident of the United States. *Zadvydas*, 533 U.S. at 693.

84.     Civil immigration detention is constitutionally permissible only when it is reasonably related to a legitimate governmental purpose and is accompanied by adequate procedural safeguards. Detention that becomes arbitrary or imposed without an individualized determination of necessity violates the Due Process Clause.

85.     Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this

---

apprehended at or near the border, and was later arrested through an interior enforcement action while pursuing an affirmative asylum application. Because his detention does not arise from any inspection or admission process, § 1226(a) governs his custody. By asserting that Petitioner is subject to mandatory detention under § 1225(b)(2) and denying him any opportunity for an individualized custody determination, Respondents violate the Immigration and Nationality Act and the binding declaratory judgment issued in *Maldonado Bautista*

test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

86.    Here, all three factors favor the petitioner.

87.    First, Petitioner has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner currently experiences the gambit of deprivations that come with physical detention, including separation from his family and his community, barriers to full participation in pending immigration proceedings and forced imprisonment under inhumane conditions.

88.    Second, Petitioner has already been deprived of this interest and will continue to be deprived of this interest if the current procedure (detaining Petitioner without a legal basis) is followed. With his lack of criminal record and community ties, there is no rational explanation for detaining Petitioner. Even if he were detained properly under 8 U.S.C. § 1226(a), he has a strong likelihood of meeting the criteria for being released on bond. 8 CFR 236.1(c)(8); 8 CFR 1236.1(c)(8); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999).

89.    Lastly, the Government has no legitimate interest in refusing to follow its own rules. Petitioner poses no safety threats to the community. Releasing him, or holding a hearing to release him on bond, would in fact *save* the government the resources and expense of continuing to imprison him.

90.      The placement of Petitioner in detention pending the resolution of his ongoing immigration proceedings violates Petitioner's constitutional right to due process guaranteed by the Fifth Amendment

**COUNT THREE**
**Violation of the Suspension Clause of the United States Constitution**

91.      Petitioner incorporates by reference all preceding paragraphs.

92.      The Suspension Clause, U.S. Const. art. I, § 9, cl. 2, guarantees that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." The Suspension Clause guarantees the availability of judicial review to test the legality of executive detention.

93.      Where no adequate and effective administrative substitute exists to permit review of executive detention, habeas corpus remains the sole means through which a detained individual may challenge the lawfulness of confinement.

94.      Absent access to habeas corpus review, Petitioner would have no forum in which to test whether his continued civil immigration detention exceeds the limits imposed by the Immigration and Nationality Act and the Constitution.

95.      The Suspension Clause forbids the government from maintaining a detention framework that eliminates all meaningful opportunity for a detainee to challenge the legality of executive confinement.

96.      By asserting mandatory detention authority under 8 U.S.C. § 1225(b) and denying Petitioner any opportunity to seek release or an individualized custody determination, the Government has effectively extinguished the core function of the writ—to test the legality of restraint on personal liberty.

97.      The Supreme Court has long held that habeas relief remains available to noncitizens challenging unlawful executive detention and that, at a minimum, the Suspension Clause protects the writ as it existed in 1789. *See INS v. St. Cyr*, at 289, 301. Habeas review cannot

be withdrawn where, as here, the Executive detains an individual without clear statutory authority and without meaningful procedural safeguards. See *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

98.    Petitioner's continued civil immigration detention, without access to individualized custody review, falls within the core protections safeguarded by the Suspension Clause.

99.    By continuing to detain Petitioner under civil immigration authority without providing any meaningful mechanism to challenge the legality of his confinement, Respondents have violated the Suspension Clause of the United States Constitution.

## REMEDY

100.    An available remedy for Respondents' unlawful conduct as outlined in this complaint is for Petitioner to be released.

101.    Immigration detention is civil in nature, and as a result Congress must have expressly authorized it by statute, and the detention must be reasonably related to its statutory purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

102.    Since Section 1225 does not apply to noncitizens who are in Petitioner's situation– who have been detained while residing within the United States—the law that Respondents are using to detain Petitioner simply does not apply so as to authorize Petitioner's detention.

103.    When a habeas petitioner's detention is without legal basis, the typical remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

104.    Respondents likely will argue that if the Court rules that Petitioner should have been detained pursuant to § 1226, instead of § 1225, then the remedy is a bond hearing as opposed to outright release. Every Judge in this jurisdiction to rule on this issue has found that immediate release is the appropriate remedy when a Petitioner challenges their unlawful detention under

Respondents' current policy of subjecting noncitizens residing within the United States to mandatory incarceration under § 1225(b). *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *21 (S.D.W. Va. Feb. 4, 2026) ("Respondents are **PROHIBITED** from re-arresting and detaining petitioner pending further order of this Court."); *Simanca Gonzalez v. Aldridge*, No. CV 3:26-0055, 2026 WL 313476, at *6 (S.D.W. Va. Feb. 5, 2026); *Larrazabal-Gonzalez v. Mason*, No. 2:26-CV-00049, 2026 WL 221706, at *6 (S.D.W. Va. Jan. 28, 2026); *Gutierrez Aroca v. Mason, et al.*, No. 2:26-cv-00057, Dkt. No. 30, at 2; *Serna Zarate et al. v. Mason et al.*, No. 2:26-cv-00069, Dkt. No. 29, at 2; *Umarov v. Mason, et al.*, 2:26-cv-00081, Dkt. No. 26 at 1.

105.    *See also*, *e.g.*, *Luna Sanchez v. Bondi*, No. 1:25-cv-018888-MSN-IDD, 2025 WL 3191922 (E.D. Va. Nov. 14, 2025); *Kerry-Juma v. Noem*, No. SAG-25-04000, 2025 WL 3537525 (D. Md. Dec. 10, 2025); *Chacon v. Hermosilla*, No. 2:25-cv-022990-TMC, 2025 WL 3562666 (W.D. Wash. Dec. 12, 2025); *Resendiz v. Noem*, No. 4:25-CV-00159-GNS, 2025 WL 3527284 (W.D. Ky. Dec. 9, 2025);  *Luna v. Warden*, No. EP-25-CV-00565-DCG, 2025 WL 3787494, (W.D. Tex. Dec. 29, 2025); *Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110, *4-5 (N.D. Cal. Sept. 3, 2025); *Diego L. v. Bondi*, No. 26-CV-382, 2026 WL 145206, at *3-4 (D. Minn. Jan. 20, 2026); *Tzi v. Jamison*, No. 26-0099, 2026 WL 116486, *3 (E.D. Pa. Jan. 15, 2026) (ordering petitioner's immediate release and noting that "[s]ince Tzi has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful"); *Rodriguez v. Rokosky* No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) ("the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification").

106.    Here, release is the most appropriate remedy. Petitioner has already suffered a deprivation of the custody determination process which he is due. *See* paragraph 73, *supra*. Moreover, as explained by the Fourth Circuit in *Miranda*:

> [The Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention. The first opportunity is with an immigration officer. *Id.* § 1225(a). An immigration officer is authorized to release the [noncitizen] if the officer is satisfied that the [noncitizen] is not a danger to the community or a flight risk. 8 C.F.R. § 236.1(c)(8). If the immigration officer decides to release a[ ] [noncitizen], the officer may set a bond or place conditions on the [noncitizen's] release. *Id.* If an immigration officer denies bond, sets bond at an amount the [noncitizen] believes is too high or sets alternative conditions to bond the [noncitizen] contends are unreasonable, a[ ] [noncitizen] may appeal the officer's bond determination to an immigration judge, giving the [noncitizen] a second opportunity at release. . . .
>
> The first [opportunity], which occurs before an immigration officer, occurs almost immediately upon an alien being detained. The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter.

34 F.4th at 346-47, 362.

107.    While many of the recent decisions regarding § 1225 and § 1226 focus exclusively on the second opportunity for release discussed in *Miranda*—i.e., detainees' right to a bond hearing—Petitioner here was not merely entitled to a bond hearing following to arrest. She was also entitled to an *ex ante* release determination by an immigration officer prior to her (as of the time of filing) week-long period of incarceration. On information and belief, here, Petitioner was afforded no such individualized determination by any immigration officer. This due process violation cannot be remedied by a *post facto* bond hearing following more than a week of incarceration. Immediate release is the only adequate remedy.

108.    Additionally, implicit in the *Miranda* court's holding that the three-step custody determination process afforded to persons detained under § 1226 is constitutionally adequate is the assumption that immigrants will be afforded *fair* hearings in front of *neutral* immigration judges. This assumption is increasingly untenable. *See Exhibit 6*, *Declaration of Jorge E. Artieda of*

*January 28, 2026*. In the attached declaration, Mr. Artieda—former legal counsel to ICE in Washington D.C. and Virginia—details evidence of what "appears to be a systematic effort to nullify the constitutional protections that federal courts have recognized and enforced through habeas corpus" through the reassignment of Immigration Judges and the use of pretextual and legally insufficient rationales for denying bond. *See id.* at ¶¶ 1-2, 16-20, 26, 32, and generally.

109.    A bond hearing in front of an immigration judge is an inadequate remedy if Respondents cannot establish that the hearing officer will be a genuinely neutral and detached decisionmaker, rather than an agent of the executive branch under circumstances indicating a substantial likelihood of bias. *See Briceno Solano,* 2026 WL 311624, at *20; *see also*, *e.g.*, *Hamdi*, 542 U.S. at 533.

110.    To the extent this Court deems a bond hearing the appropriate remedy, given the length and condition of his present detention absent any individualized due process, Petitioner respectfully requests that the Court order that Petitioner be released unless a bond hearing pursuant to 8 U.S.C. 1226, at which the government bears the burden of proof, is held within five (5) days of this Court's order. *See Campos-Flores*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303; *Lopez*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, at *3, 2025 U.S. Dist. LEXIS 232158. Petitioner also requests that any bond hearing occur before an Article III court rather than an immigration judge.

## IX.    PRAYER FOR RELIEF

Petitioner therefore respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative afforded a bond hearing before a neutral judge,

at which the government bears the burden to prove by clear and convincing evidence that

continued detention is justified based on danger to the community or risk of flight;

3. Declare that Petitioner's continued detention violates the Immigration and Nationality Act,

its implementing regulations, and the Due Process Clause of the Fifth Amendment to the

United States Constitution;

4. Permanently enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1225 and

enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1226 absent notice, a

reasonable opportunity to obtain counsel, a hearing before a neutral officer at which

Respondents bear the burden of justifying the detention under a clear and convincing

evidence standard, and prior leave of this Court;

5. Order that Petitioner be released with all property seized by Respondents incident to his

detention;

6. Order that Respondents take all reasonable measures to ensure that all subordinate agencies

and officers are on notice of this Court's order to ensure that agents of Respondents do not

negligently violate the order; and

7. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on February 10, 2026.

**COUNSEL FOR PETITIONER,**

/s/ *Lesley M. Nash*

Lesley M. Nash (WVSB #14158)

Mountain State Justice, Inc.

Harun Taskin

*Pro Hac Vice* Pending

Illinois State Bar #6342748

Kent Law Partners LLC

1701 E. Woodfield Rd., Ste. 820

Schaumburg, IL 60173

Phone: (312) 724-5555

htaskin@kentlawpartners.com

1029 University Ave., Ste. 101

Morgantown, WV 26505

Phone: (304) 326-0188

lesley@msjlaw.org

Sarah K. Brown (WVSB #10845)

Mountain State Justice, Inc.

1217 Quarrier Street

Charleston, WV 25301
Phone: (304) 344-3144
sarah@msjlaw.org

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have reviewed the relevant documentation of the events described in this Petition that was reasonably available to me prior to and at the time of filing. Based on those documents and on discussions with individuals whom the Petitioner authorized to speak on his behalf, I hereby verify that the statements made in this Petition are true and correct to the best of my knowledge.

Respectfully submitted on February 10, 2026.

/s/ *Harun Taskin*
Harun Taskin, Esq.
*Pro Hac Vice* Pending
Illinois State Bar # 6342748
Kent Law Partners LLC
1701 E Woodfield Rd. Suite 820
Schaumburg, IL 60173
Phone: 312-724-5555
Fax: 312-724-5555
htaskin@kentlawpartners.com