W. Shane Wilson (WV Bar Number: 11994)
Wilson Legal Group PLLC
1215 Quarrier Street Ste 1
Charleston, WV 25314
Email: shane@wilsonvisalaw.com
Telephone: (304) 757-6541
*Local Civil Rule P. 44.6 Counsel for Plaintiffs*

Veronica Cardenas (NJ022052010)
Cardenas Immigration Law
2 Arnot St., Ste 6, Unit 122
Lodi, NJ 07644
Phone: (201) 470-4549
Email: veronica.cardenas@cardenasimmigrationlaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

ZAKRO ROSHNIASHVILI,

      Petitioner,

      **v.**

TOBY ALLEN, in his official capacity as Superintendent, Southwestern Regional Jail; MARCOS CHARLES, in his official capacity as the Acting Executive Director of Enforcement and Removal Operations for U.S. Immigration and Customs Enforcement; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as U.S. Secretary of Homeland Security; PAMELA BONDI, in her official capacity as U.S. Attorney General; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY;

      Respondents

Case No.

1

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241

### PRELIMINARY STATEMENT

1.      This case challenges the unlawful and indefinite re-detention under a new and erroneous interpretation of the Immigration and Nationality Act ("INA"). Petitioner Zakro Roshniashvili is detained without the possibility of bond solely because the Department of Homeland Security (DHS) and the Executive Office for Immigration Review (EOIR) have chosen to treat him as if he were an "arriving" alien and present at the border, even though they had already processed him pursuant to 8 U.S.C. § 1226(a) at his initial encounter. Immigration and Customs Enforcement (ICE)'s misapplication of 8 U.S.C. § 1225(b)(2)(A) and the Board of Immigration Appeals' (BIA's) recent decision in *Matter of Yajure Hurtado* have stripped Petitioner — and thousands of similarly situated individuals — of the bond hearings guaranteed by § 1226(a).

2.      Petitioner Zakro Roshniashvili also challenges his detention on Fifth Amendment grounds as a person held by a local jail with no authority to detain individuals on ICE's behalf. Upon information and belief, Petitioner Zakro Roshniashvili was detained on Thursday January 8, 2026 in West Virginia close to Charleston at 6:30 am. He is currently in the physical custody of Respondents at the Southwestern Regional Jail in Holden, West

Virginia. *See* Exhibit A, ICE Locator. Upon information and belief, Southwestern Regional Jail does not have a 287(g) agreement with ICE ERO. *See* Exhibit B, 287(g) Participating Agencies. Nor does it have a pending 287(g) application. *See* Exhibit C, 287(g) Pending Agencies. In the absence of criminal charges and an ICE detainer, local jails have no authority to hold persons arrested solely on immigration charges unless they possess a formalized 287(g) agreement with ICE. Upon information and belief, Petitioner Zakro Roshniashvili was arrested exclusively on immigration charges, not criminal. Therefore Southwestern Regional Jail has no authority to hold Petitioner beyond a 48-hour ICE detainer (should one exist). If ICE cannot produce a 287(g) agreement with Southwestern Regional Jail or any other legal authority to hold Petitioner, he must be released from detention on Fifth Amendment grounds immediately.

3.     Petitioner's posture is similar to that of the petitioner in the instant court's recent decision in *Flores v. Mason*. *See* Flores v. Mason, Civil Action 2:26-cv-00044 (S.D. W.Va. Jan. 28, 2026). As in *Flores*, Petitioner Roshniashvili is held in a state jail after arrest and detention by ICE. As this court correctly pointed out, "This sequence is indistinguishable in principle from holding a citizen on a criminal  charge without arraignment or bail hearing. The Constitution does not tolerate such delay simply because the detained person is subject to immigration law. In fact, the Petitioner's immigration status does not burden

the relevant constitutional protections." *Id*. at 8.

4.      As in *Flores*, upon information and belief, Petitioner Roshniashvili has not been deemed a danger to the community or a flight risk. "The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant." *Id*. at 9.

## INTRODUCTION

5.      Petitioner Zakro Roshniashvili is in the physical custody of Respondents at the Southwestern Regional Jail in Holden, West Virginia. He now faces unlawful detention because the DHS and the EOIR have concluded Petitioner is subject to mandatory detention.

6.      Petitioner is charged with, *inter alia*, having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Based on this allegation in Petitioner's 240 removal proceedings pursuant to 8 U.S.C. § 1229(a), DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all ICE employees to consider anyone who entered the United States without admission or parole to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and  therefore ineligible to be released on bond.

7.      Similarly, on September 5, 2025, the  Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all

immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

8. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. These individuals are instead subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

9. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

10. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within seven (7) days.

## JURISDICTION AND VENUE

11. Petitioner is presently in custody under or by color of the authority of the United States, and he challenges his custody as in violation of the

Constitution, laws, or treaties of the United States.

12. This Court has original subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, Section 9, Clause 2 of the United States Constitution (Suspension Clause).

13. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* and the All Writs Act, 28 U.S.C. § 1651.

14. Petitioner is detained at the Southwestern Regional Jail in Holden, West Virginia, at the time of filing. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 493-500 (1973), venue therefore lies in the United States District Court for the Southern District of Western Virginia, the judicial district in which Petitioner currently is detained.

15. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the United States District Court for Southern District of West Virginia.

## REQUIREMENTS OF 28 U.S.C. § 2243

16. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not

6

entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

17.     Habeas corpus is "perhaps the most important writ known to the constitutional law... affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia,* 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. INS.,* 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

18.     Petitioner, Zakro Roshniashvili, is alleged to be a citizen of Georgia who has been in immigration detention since January 8, 2026. After arresting Petitioner, ICE did not set bond and Petitioner is unable to obtain review of his custody by an immigration judge, pursuant to the Board's decision in *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025).

19.     Respondent TOBY ALLEN is employed as Superintendent of the Southwestern Regional Jail, 13 Gaston Caperton Dr., Holden, West Virginia 25625 where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

20.     Respondent ACTING FIELD OFFICE DIRECTOR, Philadelphia

Field Office, oversees operations in Delaware, Pennsylvania, and West Virginia for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE). As such, s/he is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. S/he is sued in his/her official capacity.

21.     Respondent Marcos Charles is the Acting Executive Associate Director of Enforcement and Removal Operations for Respondent ICE. He is responsible for ICE's operations in the arrest, detention, and removal of aliens. He is a legal custodian of Petitioner. He is sued in his official capacity.

22.     Respondent Todd Lyons is the Acting Director of ICE. He is responsible for the administration of ICE and the implementation and enforcement of immigration laws, including detention. He is a legal custodian of Petitioner. He is sued in his official capacity.

23.     Respondent Kristi Noem is the U.S. Secretary of the Department of Homeland Security and is responsible for the administration of DHS. She is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner. She is sued in her official capacity.

24.     Respondent Pamela Bondi is the U.S. Attorney General of the United States. She is responsible for the Department of Justice (DOJ), of which the EOIR is a component agency. She is sued in her official capacity.

25.     Respondent Department of Homeland Security (DHS) is a governmental agency of the United States responsible for implementing and enforcing the INA, including the detention and removal of noncitizens. It is charged, inter alia, with the adjudication of applications and petitions related to immigration and citizenship. It is a legal custodian of the Petitioner.

26.     Respondent U.S. Immigration and Customs Enforcement (ICE) is a governmental agency of the United States, and part of Respondent DHS. ICE is charged with the enforcement of immigration laws. It is a legal custodian of the Petitioner.

27.     Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

**LEGAL FRAMEWORK**

**INA § 1226 and § 1225**

28.     The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

29.     First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in

standard removal proceedings before an Immigration Judge ("IJ"), *see* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.l(d). However, noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

30.     Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(l) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

31.     Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)-(b).

32.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

33.     The detention provisions at § 1226(a) and§ 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302-03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119·1, 139 Stat. 3 (2025).

34.     Following the enactment of the IIRIRA, EOIR drafted new

regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

35.     In the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

36.     On July 8, 2025, ICE, "in coordination with" the Department of Justice, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

37.     The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

38.     On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado.* There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

39.     Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado,* which adopts the same reading of the statute as ICE.

40.     Court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation, including courts in the Tenth Circuit. *See Garcia Cortes v. Noem,* No, 1:25-cv-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Salazar v. Dedos,* No. 1:25·cv·00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); and *Gamez Lira v. Noem,* No. 1:25-cv-00855 (D.N.M. Sept. 24, 2025).

41.     Other District Courts across the country have also rejected ICE's erroneous interpretation. *See, e.g., Gomes v. Hyde,* No. 1:25-CV·ll57l·JEK,

2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde,* No. CV 25-11613-BEM, ••• F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa,* No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted,* No. CV-25-02157·PHX·DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis,* No. 26 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson,* No. Q:25·cv·03142·SRN·SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola·Gonzalez v. Noem,* No. 5:25-cv·0l 789· ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde,* No. 25·11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce,* No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser,* No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem,* No. 1:25-cv·02428·JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump,* No. 3:25·cv·0l093·JE· KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi,* No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft,* No. 2:25-cv·12486·BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem,* No. 25-cv· 02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem,* No. 5:25·CV·02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft,* No. 25-CV-12546, 2025 WL

2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde,* No. 1:25-CV-11981•
JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g., Palma Perez v.
Berg,* No. s:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting
that "[t]he Court tends to agree" that§ 1226(a) and not§ 1225(b)(2) authorizes
detention); *Jacinto v. Trump,* No. 4:25·cv·03161·JFB-RCC, 2025 WL 2402271
at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer,* No. 4:25-
cv·03158·JFB·RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

42.     Even before ICE or the BIA introduced these nationwide policies,
IJs in the Tacoma, Washington immigration court had stopped providing
bond hearings for persons who entered the United States without inspection
and who have since resided here. There, in *Rodriguez Vazquez v. Bostock,*
the U.S. District Court in the Western District of Washington found that such
a reading of the INA is likely unlawful and that § 1226(a), not§ 1225(b),
applies to noncitizens who are not apprehended upon arrival to the United
States. *Rodriguez Vazquez v. Bostock,* 779 F. Supp. 3d 1239 (W.D. Wash.
2025).

43.     Courts have uniformly rejected DHS's and EOIR's new
interpretation because it defies the INA**.** As the *Rodriguez Vazquez* court and
others have explained, the plain text of the statutory provisions demonstrates
that § 1226(a), not § 1225(b), applies to people like Petitioner.

44.     Section 1226(a) applies by default to all persons "pending a

decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229(a), to "decid[e] the inadmissibility or deportability of a [noncitizen]."

45.     The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(l)(E). Section 1226 Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez,* 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 400 (2010)); *see also Gomes,* 2025 WL 1869299, at *7.

46.     Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

47.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme

15

applies "at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018).

48. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## INA § 287(g)

49. ICE's "287(g) program" delegates authority to local and state law enforcement officers and facilities to perform particular immigration functions under ICE's direction.[2] ICE's authority for this program lies at 8 U.S.C. § 1357(g), which was added to the U.S. Code by Section 133 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. It states, in relevant part:

> Notwithstanding section 1342 of title 31, the Attorney General may enter into a *written agreement* with a State, or any *political subdivision* of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified *to perform a function of an immigration officer in relation to* the investigation, apprehension, or *detention of aliens* in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law. 8 U.S.C. § 1357(g)(1) (emphasis added)

50. As is clearly delineated in Section 1357(g) above, a written agreement is required in order for a political subdivision of a state to perform the functions of immigration officers, *including* the function of immigration detention. At the outset

---

[2] *See* https://www.ice.gov/identify-and-arrest/287g.

of the statute, Section 1357(g) makes clear that these written agreements function as an exception to section 1342 of title 31, which states in relevant part:

> An officer or employee of the United States Government or of the District of Columbia government *may not accept voluntary services* for either government or employ personal services *exceeding that authorized by law* except for emergencies involving the safety of human life or the protection of property. … As used in this section, the term "emergencies involving the safety of human life or the protection of property" does not include ongoing, regular functions of government the suspension of which would not imminently threaten the safety of human life or the protection of property. 31 U.S. Code § 1342 (emphasis added).

51.     Taken together, Section 1342 of title 31 and 8 U.S.C. § 1357(g), by their own language, do not allow state or local government, including law enforcement, to voluntarily provide services in the absence of a formal written agreement. This is the plain reason that ICE's "287(g) program" exists – to conform with the requirements of these statutes.

52.     Were a written agreement not required to hold an individual in ICE custody in a local or state jail, ICE would not have an extensive list of such agreements posted on their website at https://www.ice.gov/identify-and-arrest/287g. This website includes an extensive listing of 287(g) current and pending agreements, from which Southwestern Regional Jail, where Petitioner is being held, is conspicuously absent. *See* Exhibit B, 287(g) Participating Agencies; *see also* Exhibit C, 287(g) Pending Agencies.

53.     Therefore, Petitioner is being held currently in a facility with no legal authority to do so.

## STATEMENT OF FACTS

54.     Petitioner, Zakro Roshniashvili, is a twenty-three-year-old alleged
citizen of Georgia. He entered the United States on or about December 24, 2022, at
or near San Luis, Arizona. At entry, the DHS processed Petitioner and issued a
Notice to Appear (NTA) commencing removal proceedings pursuant to INA § 240 (8
U.S.C. § 1229(a)). *See* Exhibit D, NTA.

55.     The NTA dated December 24, 2022, charged Petitioner as a noncitizen
present in the United States who was not admitted or paroled and removable under 8
U.S.C. § 1182(a)(6)(A)(i). The NTA ordered him to appear before the Immigration
Court at 26 Federal Plaza, 12th Floor, Room 1237, New York, NY 10278, on April
13, 2023, at 8:30 a.m. *See* Exhibit D, NTA.

56.     DHS initially released Petitioner on his own recognizance ("ROR")
following DHS custody processing and an assessment of danger and flight risk
pursuant to 8 U.S.C. § 1226(a). Petitioner understands that DHS's decision to release
him necessarily reflected DHS's determination that he did not pose a danger to the
community or a risk of flight. Petitioner has requested, but does not yet have,
documentary proof of the ROR release.

57.     Following his release, upon information and belief, Petitioner complied
with all conditions imposed by DHS, including appearing for immigration
proceedings as required. Petitioner filed an Application for Asylum and for
Withholding of Removal (Form I-589) in removal proceedings on or about October

2023. *See* Exhibit E, I-589.

58.    On January 8, 2026, Petitioner was re-detained by DHS near
Charleston, West Virginia on or around 6:30 a.m., despite having violated no
condition of his prior release and despite his consistent compliance with DHS and
Immigration Court requirements. Petitioner currently remains in DHS custody at
Southwestern Regional Jail, 13 Gaston Caperton Dr., Holden, West Virginia
25625.

59.    ICE re-detained Petitioner without providing notice, a hearing, or an
individualized determination justifying the revocation of his release. Upon entry,
Petitioner was released on recognizance under 8 U.S.C. § 1226(a). If Respondents
classify Petitioner's initial release under 8 U.S.C. § 1226(a), his re-detention violates
8 U.S.C. § 1226(b), which permits revocation of bond or parole only through a
reasoned exercise of discretion. *See* 8 C.F.R. § 236.1(c)(9) (authorizing revocation by
designated ICE officials in their discretion).

60.    In *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board
of Immigration Appeals stripped immigration judges of jurisdiction to conduct
custody redeterminations for noncitizens who entered without inspection, as in
Petitioner's case, leaving habeas corpus as his only avenue for relief. To the extent
*Yajure-Hurtado* eliminates all review mechanisms, it violates due process under
*Zadvydas v. Davis*, 533 U.S. 677 (2001).

61.    Even if Respondents reclassify Petitioner as an "arriving alien" under 8

U.S.C. § 1225(b)(2)(A), his detention remains unlawful. Under § 1225(b)(2)(A), custody redetermination is unavailable (8 C.F.R. § 1003.19(h)(2)(i)), leaving DHS's discretionary parole authority as the sole mechanism for release (8 C.F.R. § 235.3(b)(5)). DHS's failure to provide notice, a hearing, or a reasoned explanation for re-detention, particularly after nearly three years of compliance DHS and Immigration Court requirements and appearances, renders its action arbitrary and capricious, violating the Fifth Amendment to the U.S. Constitution and 5 U.S.C. § 706(2)(A). *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (requiring reasoned agency action).

62. Petitioner was re-detained by DHS despite having violated no condition of his prior release and despite his consistent compliance with DHS, ICE, and Immigration Court requirements.

63. ICE detained Petitioner without bond, asserting that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) based on the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, notwithstanding Petitioner's initial custody determination under § 1226(a), his compliance, and his placement in standard removal proceedings under § 1229a, where § 1226(a) is the default detention rule.

64. Without intervention from this Court, Petitioner faces the prospect of indefinite detention lasting months or even years, separated from his family and community.

## WRIT OF HABEAS CORPUS

65.     The Constitution guarantees the right of writ of habeas corpus to every

individual detained within the United States, including immigration-related detention.

*See Zadvydas v. Davis*, 533 U.S. 677 (2001), at 687. A writ of habeas corpus must be

granted if the person is in custody in violation of the Constitution or federal law. *See*

28 U.S.C. § 2241(c)(3).

66.     The Court must grant the petition for writ of habeas corpus or

issue an Order to Show Cause (OSC) to the Respondents forthwith, unless the

petitioner is not entitled to relief. *See* 28 U.S.C. § 2243. If an OSC is issued,

the Court must require Respondents to file a return "within three days unless

for good cause additional time, not exceeding twenty days, is allowed." *Id*.

67.     Petitioner is "in custody" for the purpose of 28 U.S.C. § 2241 because

Petitioner is arrested and detained by Respondents.

68.     Immigration detention is a form of civil confinement that

"constitutes a significant deprivation of liberty that requires due process

protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Noncitizens in

immigration proceedings are entitled to Due Process under the Fifth

Amendment of the U.S. Constitution. *See Reno v. Flores*, 507 U.S. 292

(1993). Immigration detention should not be used as a punishment and should

only be used when, under an individualized determination, a noncitizen is a flight risk because they are unlikely to appear for immigration court or a danger to the community. *See Zadvydas*, 533 U.S. at 690.

69.    Respondents' position that Petitioner is subject to mandatory detention by recategorizing him as an arriving alien or an applicant for admission deprives him of the opportunity to challenge his detention through any other avenue outside of habeas corpus proceedings.

a.   Violation of Fifth Amendment Right to Due Process

70.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *accord Flores*, 507 U.S. 292. Due process requires that government action be rational and non-arbitrary. See *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

71.    As the instant Court has stated plainly, "Despite what some may have been led to believe, immigrants illegally in this country enjoy protections guaranteed by the Fifth Amendment." *See Flores v. Mason*, Civil Action 2:26-cv-00044 (S.D. W.Va. Jan. 28, 2026), at 8. As the Court pointed out in *Flores*,

72.    Petitioner's detention violates his substantial due process rights under the Fifth Amendment of the U.S. Constitution, which guarantees that no person shall be deprived of liberty without due process of law. Arbitrary civil detention is categorically unconstitutional. The Due Process Clause requires that any deprivation of Petitioner's liberty serve, at minimum, a legitimate purpose. *See Flores*, 507 U.S. at 302 (explaining that infringements on fundamental liberty rights violate due process unless they are "narrowly tailored to serve a compelling state interest").

73.    Petitioner's detention violates his procedural and substantive due process rights under the three-part test set forth in *Matthews b. Eldridge*, 424 U.S. 319 (1976), at 335, to wit:

(1) the private interest that will be affected by the official action;

(2) the risk of an erroneous deprivation of such interest through the procedures used, and probably value, if any, of additional procedural safeguards; and

(3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

74.    First, Petitioner's liberty interest is substantial. His over three years of compliance with DHS and ICE conditions and Immigration Court requirements during removal proceedings demonstrate a protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690.

75.     Second, the risk of erroneous deprivation is high due to DHS's failure to provide notice, a hearing, or an individualized determination of flight risk or danger before re-detaining him.

76.     Third, the government's interest in detaining Petitioner is minimal compared to his substantial liberty interest. The goal of ensuring compliance with removal proceedings is satisfied by Petitioner's consistent adherence to all DHS, ICE and Immigration Court requirements over three years. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018) (detention must serve a legitimate purpose). Alternatives such as electronic monitoring could address any enforcement concerns at minimal cost, rendering detention unnecessary.

77.     Here, Respondents have chosen to revoke Petitioner's release in an arbitrary manner and not based on a rational and individualized determination of whether he is a safety or flight risk, in violation of due process. Because no individualized custody revocation has been made and no circumstances have changed to make Petitioner a flight risk or a danger to the community, Respondents' revocation of Petitioner's release violates his right to procedural due process.

78.     If Petitioner's initial release was pursuant to 8 U.S.C. § 1226(a), which authorizes release on bond or conditional parole pending removal proceedings, his re-detention violates due process. Section 1226(b) provides that

"(t)he Attorney General at any time may revoke a bond or parole authorized

under subsection (a), rearrest the alien under the original warrant, and detain

the alien." 8 U.S.C. § 1226(b).

This authority, implemented by 8 C.F.R. § 236.1(c)(9), requires a reasoned exercise

of discretion by designated ICE officials. DHS's failure to provide notice of

revocation or an individualized determination of flight risk or danger to the

community renders the re-detention arbitrary and unconstitutional. *See*

*Matthews*, 424 U.S. 319 (requiring procedural safeguards to protect liberty

interests); *see also Zadvydas*, 533 U.S. at 690 (prohibiting arbitrary detention).

79.     Even if classified as an arriving alien, the petitioner is entitled to due

process under *Clark v. Martinez,* 543 U.S. 371, 380-81 (2005) (extending due process

protections to all noncitizens). Re-detaining a compliant individual after three years

without notice or a hearing is arbitrary and violates the Fifth Amendment. *See*

*Jennings*, 583 U.S. 281 (acknowledging due process limits on immigration detention).

80.  8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9) grant ICE discretion to revoke

release. However, Petitioner is subject to § 1226(a), not 1226(b). Even were

Petitioner subject to 1226(b), the discretion it grants to revoke release is not

unfettered and must comport with due process. *See Zadvydas*, 533 U.S. at

690. Re-detaining a compliant individual without notice or a hearing is

arbitrary, particularly given Petitioner's three years' liberty interest. *See*

*Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 95r1 (9th Cir. 2008) (due process requires and individualized determination of flight risk or danger to the community). As the Court in Flores made clear, re-detaining a similarly situated compliant individual is "indistinguishable in principle from holding a citizen on a criminal charge without arraignment or bail hearing. The Constitution does not tolerate such delay simply because the detained person is subject to immigration law." *See* Flores v. Mason, at 8.

81.     Under the APA, the Court must set aside DHS's decision to re-detain Petitioner as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An action is arbitrary if it fails to consider relevant factors or lacks a rational connection to the facts. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

82.     DHS's decision to re-detain Petitioner lacks a rational basis, as DHS provided no evidence of changed circumstances or individualized findings of flight risk or danger. Petitioner's three years of compliance with DHS, ICE and Immigration Court requirements establish a liberty interest that DHS failed to consider. *See Zadvydas*, 533 U.S. at 690. Alternatives to detention, such as electronic monitoring, could achieve enforcement goals without depriving Petitioner of liberty, underscoring DHS's abuse of discretion. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S.

644, 658 (2007). Respondents may argue that Petitioner is subject to 8 U.S.C. 1226(b) or § 1225(b)(2)A) and per these Sections ICE discretion is unreviewable. However, under *Zadvydas*, agency action must be rational and comport with due process. *See Zadvydas*, 533 U.S. at 690.

CLAIMS FOR RELIEF

**FIRST COUNT**

**Violation of the INA**

83.     Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

84.      The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country, have been residing in the United States, and were apprehended in the interior. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(l), § 1226(c), or § 1231. DHS has treated Petitioner as detained pursuant to § 1226(a).

85.     The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

**SECOND COUNT**

**Violation of Due Process**

86.     Petitioner repeats, re-alleges, and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

87.      The government may not deprive a person of life, liberty, or property without due process of law. *See* U.S. Const. amend. V. "Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that the Clause protects…" *Zadvydas v. Davis,* 533 U.S. 678,690 (2001).

88.      Petitioner has a fundamental interest in liberty and being free from official restraint.

89.     The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

90.     The government's detention of Petitioner at Southwestern Regional Jail in Holden, West Virginia in the absence of a valid 287(g) agreement also constitutes a violation of Section 1342 of title 31 and 8 U.S.C. § 1357(g), and therefore also his due process rights under the Fifth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief.

a.    Assume jurisdiction over this matter;

b.    Order that Petitioner shall not be transferred outside the Southern District of West Virginia while this habeas petition is pending;

c.    Order that Respondents produce a valid 287(g) agreement with Southwestern Regional Jail in Holden, West Virginia showing ICE authority to detain Petitioner at this non-federal facility, or in the alternative produce other documentation outlining DHS/ICE authority to detain persons with immigration-only charges at this local criminal detention center;

d.    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days, per 28 U.S.C. § 2243;

e.    Declare that Petitioner's three years of compliance with DHS/ICE requirements, and removal proceedings, establish a substantial liberty interest protected by the Fifth Amendment to the U.S. Constitution;

f.    Declare that Petitioner's re-detention without notice, a hearing, or individualized findings violates the Fifth Amendment and 5 U.S.C. § 706(2)(A);

g.    Issue a Writ of Habeas Corpus requiring that Respondents

release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;

h.  Declare that Petitioner's detention is unlawful;

i.  Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

j.  Grant any other and further relief that this Court deems just and proper.


DATED this 10th day of February 2026.

Respectfully submitted,

WILSON LEGAL GROUP, PLLC
/s/ W. Shane Wilson_____
W. Shane Wilson
Wilson Legal Group PLLC
1215 Quarrier Street Ste 1
Charleston, WV 25314
Email: shane@wilsonvisalaw.com
Telephone: (304) 757-6541
WV Bar Number: 11994
*Local Civil Rule P. 44.6 Counsel for Plaintiffs*

*s/Veronica Cardenas*

Cardenas Immigration Law
Veronica Cardenas, Esq.
2 Arnot St.,
Ste 6, Unit 122
Lodi, NJ 07644
*Attorney for Petitioner*

## VERIFICATION OF COUNSEL

I, Veronica Cardenas, hereby certify that I am familiar with the case of the named Petitioner and that the facts as stated above are true and correct to the best of my knowledge and belief.

*s/Veronica Cardenas*

## CERTIFICATE OF SERVICE

This is to certify that on 10th Day of February 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a notice of electronic filing to counsel of record. In addition, the document was emailed to the U.S. Attorney's Office.

*s/W. Shane Wilson*