UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **FRANKLIN CARLOS HERNANDEZ-HERRARA,**<br><br>   Petitioner,<br><br>   v.<br><br>**CHRISTOPHER MASON,** Superintendent, South Central Regional Jail; **MICHAEL T. ROSE,** Acting Field Office Director, Philadelphia Field Office, United States Immigration and Customs Enforcement; **TODD M. LYONS,** Acting Director, United States Immigration and Customs Enforcement; **KRISTI NOEM,** Secretary of Homeland Security; **PAMELA JO BONDI,** United States Attorney General, *in their official capacities*,<br><br>   Respondents. | Civ. Act. No.: |

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

1. Petitioner, Franklin Carlos Hernandez-Herrara, by and through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge his ongoing civil immigration detention by the United States Department of Homeland Security and its agents. Petitioner is a citizen and national of Nicaragua and is currently detained in the custody of Immigration and Customs Enforcement at South Central Regional Jail (SCRJ) in Charleston, West Virginia.

2. Petitioner seeks immediate release from immigration detention, or in the alternative, a constitutionally adequate custody hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions.

3. Petitioner's continued civil confinement, based on the application of a statute that does not apply to him and maintained without any individualized custody determination by a neutral decisionmaker authorized to assess flight risk, danger to the community, or the availability of conditions of release, violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Civil immigration detention must bear a reasonable relation to its purported purpose and may not be imposed in a punitive or arbitrary manner. Accordingly, issuance of the writ of habeas corpus is warranted.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner is in federal immigration custody and challenges the legality of his ongoing civil immigration detention by the United States Department of Homeland Security and its officers. The relief sought lies at the core of the writ of habeas corpus.

5. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action raises questions of federal law arising under the Constitution and laws of the United States, including the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

6. The Suspension Clause of the United States Constitution independently guarantees Petitioner the right to seek habeas corpus review to test the legality of his physical confinement where no other adequate and effective remedy exists.

7. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because at least one Respondent is in this District, Petitioner is detained in this District, Petitioner's

immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("the proper respondent to a habeas petition is 'the person who has custody over [the petitioner]'") (quoting 28 U.S.C. 2242).

## PARTIES

8. Petitioner Franklin Carlos Hernandez-Herrara is a citizen and national of Nicaragua and is detained at SCRJ. As of the date of this filing, he is in his second or third day in ICE custody since he was pulled over and arrested without a warrant around midnight on February 14, 2026.

9. Respondent Chrisopher Mason is the Superintendent of South Central Regional Jail, where Petitioner is currently detained. He is the physical custodian of Petitioner and is named in his official capacity.

10. Respondent Michael T. Rose is the Acting Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in his official capacity.

11. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

12. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

13. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

## FACTUAL BACKGROUND

14.     Petitioner Franklin Carlos Hernandez-Herrara is a citizen and national of Nicaragua who has resided long-term in Houston, Texas, and has been recently temporarily residing in Cornelia, Georgia, where he has been working at Fieldale Farms. He entered the United States on or around June 23, 2022, at which time he was detained for approximately two days and then released into the United States. He has applied for political asylum and received a still-valid work permit.

15.     Petitioner is currently detained in the custody of Immigration and Customs Enforcement. Around midnight on February 14th, Petitioner was arrested without a warrant following a traffic stop initiated by West Virginia State Police; he was arrested after the state police called ICE.

16.     Petitioner is currently detained in the custody of Immigration and Customs Enforcement. On information and belief, no warrant for Petitioner had been issued at the time Petitioner was arrested. Petitioner's detention is civil and administrative in nature. On information and belief, Petitioners has no criminal history and hi confinement is not based on any criminal conviction or charge. While detained, Petitioner remains physically confined and deprived of his liberty as his immigration case proceeds through the administrative process.

17.     On information and belief, no immigration officer or decisionmaker has determined that physical confinement is justified by a legitimate governmental purpose in Petitioner's case— i.e., the risk of flight or danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022). On information and belief, no Immigration Judge or other judge or magistrate has conducted an individualized custody determination assessing whether Petitioner's continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release. *See id*.

18. Although Petitioner's detention is civil in character, it has resulted in ongoing physical confinement without release. Petitioner remains detained while his immigration proceedings continue, without any individualized custody review reflected in the record. As a result, Petitioner continues to suffer a deprivation of physical liberty solely on the basis of civil immigration detention. Petitioner's detention has imposed significant restraint on his freedom of movement and personal autonomy.

19. On information and belief, there has been no mechanism by which Petitioner has received a meaningful opportunity to challenge the necessity of his continued detention. Absent judicial intervention, Petitioner will remain detained without any opportunity to contest whether his continued confinement is lawful, necessary, or justified.

## STANDARD OF LAW

20. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (cleaned up). A petitioner may seek a writ of habeas corpus when their custody violates the US Constitution or a federal law, 28 U.S.C. § 2241(c)(3), which should be granted if the petitioner meets their burden of proof–a preponderance of evidence. *See Post v. Boles*, 332 F.2d 738, 742 (4th Cir. 1964); *see also, e.g., Aroca v. Mason*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *6 (S.D.W. Va. Feb. 9, 2026) (Goodwin, J.).

21. The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless a petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three

days unless *for good cause* additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

22. Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda*, 34 F.4th at 351. This Court and many other district courts have declined to require prudential exhaustion when evaluating a detained immigrant's petition under similar circumstances. *See, e.g.*, *Briceno Solano v. Mason*, No. 2:26-cv-00045, ___ F.Supp.3d ___, 2026 WL 311624, at *8 (S.D.W. Va. Feb. 4, 2026) (Johnston, J.).

23. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also, e.g.*, *Aroca v*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *18-19.

24. In July of 2025, DHS began ignoring the decades-long consensus of how 8 U.S.C. § 1225(b)(2) should be interpreted; the Board of Immigration Appeals ("BIA") articulated this new policy in a subsequent precedential ruling. *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA Sept. 5, 2025). Respondents now claim that individuals who are arrested while residing within the United States are somehow "seeking admission."

25. However, the overwhelming majority of district courts across the country—and every judge in the Southern District of West Virginia to rule on this issue—have made clear that 8 U.S.C. § 1225(b)(2) only authorizes detention for noncitizens who are at the border seeking physical entry at the time of detention, not those who reside in the United States, whose detention is discretionary and governed by 8 U.S.C. § 1226(a). *See, e.g.*, *Umarov v. Mason* No. 2:26-cv-00081, 2026 WL 381614, at *1 (S.D.W. Va. Feb. 11, 2026) (Berger, J.) ("As dozens, perhaps hundreds, of courts have found in thousands of cases in recent months, the United States

government has again violated the United States Constitution by arresting and detaining a person without due process and without statutory authority."); *Briceno Solano v. Mason*, No. 2:26-cv-00045, 2026 WL 311624, at *10-15.

26. Only under certain circumstances are immigrants subject to ongoing detention without a bond hearing. *See*, *e.g.*, 8 U.S.C. § 1226(c) (individuals with certain criminal convictions may be detained without a bond hearing for the pendency of removal proceedings[1]) *and* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (authorizing mandatory detention of immigrants in expedited removal proceedings).

27. Otherwise, the "default rule" is that detention of immigrants already present in the United States and subject to pending removal proceedings is governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

28. Under this default rule, detained immigrants are constitutionally and statutorily entitled to both an initial custody determination by an immigration officer and a prompt bond hearing. *See*, *e.g.*, *Simanca Gonzalez v. Aldridge*, No. 3:26-0055, 2026 WL 313476, at *6 (S.D.W. Va. Feb. 5, 2026) (Chambers, J.); *Miranda*, 34 F.4th at 362.

## CLAIMS FOR RELIEF
### COUNT ONE
### Fifth Amendment Due Process

*Petitioner is being deprived of an adequate and meaningful process to challenge his ongoing confinement.*

29. Petitioner realleges and incorporates by reference the allegations contained above.

30. Petitioner has due process rights as a resident of the United States. *Zadvydas*, 533 U.S. at 693.

---

[1] Even when detained under 1226(c), immigrants retain due process rights and are entitled to a hearing if the period of detention becomes unreasonable. *See*, *e.g.*, *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 (E.D. Va. 2018).

7

31. Civil immigration detention is constitutionally permissible only when it is reasonably related to a legitimate governmental purpose and is accompanied by adequate procedural safeguards. Detention that becomes arbitrary or imposed without proper statutory authority violates the Due Process Clause.

32. Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

33. Here, all three factors favor the petitioner.

34. First, Petitioner has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner currently experiences the gambit of deprivations that come with physical detention, including separation from his family and community, barriers to full participation in his pending immigration proceedings, and forced imprisonment under inhumane conditions.

35. Second, Petitioner has already been deprived of this interest and will continue to be deprived of this interest if the current procedure (detaining Petitioner without a legal basis) is followed. Petitioner was already deprived of an initial custody determination, when he was arrested

8

on a civil immigration violation without consideration of Petitioner's individual circumstances indicating a lack of threat to the community or risk of flight. *See Miranda*, 34 F.4th at 362 (first opportunity for release under 1226(a) occurs "almost immediately" after arrest); *Tumba v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025) (holding that the violation of Petitioner's due process rights "originated with her detention in the first instance."). Further, Petitioner was already released during the pendency of his immigration proceedings and faces the unjustified and unlawful revocation of the liberty this Government chose to grant him. *See, e.g.*, *Luna Sanchez v. Bondi*, No. 1:25-cv-018888-MSN-IDD, 2025 WL 3191922 (E.D. Va. Nov. 14, 2025). Petitioner should never have been detained absent adequate pre-deprivation process. And even if Petitioner were properly detained pursuant to a determination under 8 U.S.C. § 1226(a), he has a strong likelihood of meeting the criteria for being released on bond. 8 CFR 236.1(c)(8); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999).

36. Lastly, the Government has no legitimate interest in refusing to follow its own rules. Petitioner poses no safety threats to the community. No evidence indicates a likelihood of absconding. Releasing him, or holding a hearing to release him on bond, would in fact *save* the government the resources and expense of continuing to imprison him. *See, e.g.*, *Briceno-Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *19.

37. The placement of Petitioner in detention pending the resolution of his ongoing immigration court proceedings violates Petitioner's constitutional right to due process guaranteed by the Fifth Amendment.

## COUNT TWO

### Immigration and Nationality Act, 8 U.S.C. § 1226

*Petitioner's Ongoing Detention, without the Opportunity for an Initial Custody Determination and a Bond Hearing, Violates his Statutory Rights Under 8 U.S.C. § 1226(a)*

38. Petitioner realleges and incorporates by reference the allegations contained above.

39. Respondents' attempt to apply mandatory detention through 8 U.S.C. § 1225(b)(2) to Petitioner violates the Immigration and Nationality Act.

40. Petitioner is detained without being afforded an opportunity to advocate for his release back into their community as the law requires.

41. In the absence of an individualized custody determination, Petitioner's continued detention is not meaningfully tethered to the limited statutory purposes authorized by the Immigration and Nationality Act and its implementing regulations.

## COUNT THREE
### Violation of the Administrative Procedure Act

42. Petitioner realleges and incorporates by reference the allegations contained above.

43. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

44. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

45. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States. Such noncitizens could potentially be detained under § 1226(a) but would then be eligible for release on bond unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

46. Nonetheless, the Board has adopted a policy and practice of applying § 1225(b)(2) to Petitioner and others in the same position.

47. Respondents through its recent administrative decision failed to articulate any reasoned explanations for new interpretation of the Act. The Board's decision represents a change in the agencies' policies and positions that negates the plain language of the Act, the will of Congress, and decades of administrative precedent.

48. The application of § 1225(b)(2) to Petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. See 5 U.S.C. § 706(2).

49. Further, the continued detention of Petitioner in the absence of any articulated individualized assessment addressing whether detention is necessary to ensure appearance at future proceedings or to protect the community in light of Petitioner's individual circumstances constitutes arbitrary and capricious agency action and must be set aside.

## COUNT FOUR
### Violation of the Equal Protection Guarantee of the Fifth Amendment

50. Petitioner realleges and incorporates by reference the allegations contained above.

51. The Fifth Amendment prohibits the federal government from treating similarly situated persons differently unless the differential treatment bears a rational relationship to a legitimate governmental purpose.

52. By continuing to detain Petitioner without providing access to an individualized custody determination, the Department of Homeland Security has subjected him to disparate treatment that is not supported by a rational justification tied to the purposes of civil immigration detention.

53. The unequal denial of access to individualized custody process, as applied to Petitioner, lacks a rational basis and violates the equal protection component of the Fifth Amendment.

## COUNT FIVE
### Violation of the Suspension Clause of the United States Constitution

54. Petitioner realleges and incorporates by reference the allegations contained above.

55. The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Suspension Clause guarantees the availability of judicial review to test the legality of executive detention.

56. Where no adequate and effective administrative substitute exists to permit review of executive detention, habeas corpus remains the sole means through which a detained individual may challenge the lawfulness of confinement.

57. Absent access to habeas corpus review, Petitioner would have no forum in which to test whether his continued civil immigration detention exceeds the limits imposed by the Immigration and Nationality Act and the Constitution.

58. The Suspension Clause forbids the government from maintaining a detention framework that eliminates all meaningful opportunity for a detainee to challenge the legality of executive confinement.

59. Petitioner's continued civil immigration detention, without access to any individualized custody review, falls within the core protections safeguarded by the Suspension Clause.

60. By continuing to detain Petitioner under civil immigration authority without providing any meaningful mechanism to challenge the legality of his confinement, Respondents have violated the Suspension Clause of the United States Constitution.

## **REMEDY**

61. The appropriate remedy for Respondents' unlawful conduct as outlined in this complaint is for Petitioner to be released.

62. Immigration detention is civil in nature, and as a result Congress must have expressly authorized it by statute, and the detention must be reasonably related to its statutory purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

63. Since Section 1225 does not apply to noncitizens who are in Petitioner's situation– who have been detained while residing within the United States—the law that Respondents are using to detain Petitioner simply does not authorize Petitioner's detention.

64. When a habeas petitioner's detention is without legal basis, the typical remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

65. Respondents likely will argue that if the Court rules that Petitioner should have been detained pursuant to § 1226, instead of § 1225, then the remedy is a bond hearing as opposed to outright release. Every Judge in this jurisdiction to rule on this issue has found that immediate release is the appropriate remedy when a Petitioner challenges their unlawful detention under Respondents' current policy of subjecting noncitizens residing within the United States to mandatory incarceration under § 1225(b). *Briceno Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *21 ("Respondents are **PROHIBITED** from re-arresting and detaining petitioner pending further order of this Court."); *Estrada Reyes v. Aldridge*, No. 3:26-0084, 2026 WL 413210, at *4 n. 6 (S.D.W. Va. Feb. 13, 2026) (Chambers, J.) ("The Court finds the broad language [prohibiting re-arrest and detention] appropriate given Respondents' record of a lack of compliance with Court orders and common practice of unlawfully detaining undocumented individuals."); *Larrazabal-*

*Gonzalez v. Mason*, No. 2:26-CV-00049, 2026 WL 221706, at *6 (S.D.W. Va. Jan. 28, 2026) (Goodwin, J.); *Umarov*, No. 2:26-cv-00081, 2026 WL 381614, at *1.

66. *See also*, *e.g.*, *Ahmed M. v. Bondi*, No. 25-cv-4711, 2026 WL 25627, at *3 (D. Minn. 2026) (Tostrud, J.); *Tzi v. Jamison*, No. 26-0099, 2026 WL 116486, *3 (E.D. Pa. Jan. 15, 2026) (ordering petitioner's immediate release and noting that "[s]ince Tzi has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful"); *Rodriguez v. Rokosky* No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) ("the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification").

67. Here, release is the most appropriate remedy. First, detention is unlawfully based on 8 U.S.C. §1225, which does not apply to Petitioner, and Respondents have failed to properly invoke any valid statutory basis for detention. Second, even if 8 U.S.C. §1226 were properly invoked, Petitioner has already suffered a deprivation of the custody determination process which he was due. Moreover, as explained by the Fourth Circuit in *Miranda*:

> [The Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention. The first opportunity is with an immigration officer. *Id.* § 1225(a). An immigration officer is authorized to release the [noncitizen] if the officer is satisfied that the [noncitizen] is not a danger to the community or a flight risk. 8 C.F.R. § 236.1(c)(8). If the immigration officer decides to release a[ ] [noncitizen], the officer may set a bond or place conditions on the [noncitizen's] release. *Id.* If an immigration officer denies bond, sets bond at an amount the [noncitizen] believes is too high or sets alternative conditions to bond the [noncitizen] contends are unreasonable, a[ ] [noncitizen] may appeal the officer's bond determination to an immigration judge, giving the [noncitizen] a second opportunity at release. . . .
>
> The first [opportunity], which occurs before an immigration officer, occurs almost immediately upon an alien being detained. The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter.

34 F.4th at 346-47, 362.

68. While many of the recent decisions regarding § 1225 and § 1226 focus exclusively on the second opportunity for release discussed in *Miranda*—i.e., detainees' right to a bond hearing—Petitioner here was not merely entitled to a bond hearing following his arrest (assuming that the government's authority pursuant to § 1226 had been properly invoked at that time, which it wasn't). He was also entitled to an *ex ante* release determination by an immigration officer prior to his incarceration. On information and belief, here, Petitioner was afforded no such individualized determination by any immigration officer. Petitioner was also arrested with no showing that changed circumstances justified the deprivation of his liberty and absent compliance with statutory, regulatory, and constitutional requirements. These due process violations cannot be remedied by a *post facto* bond hearing following continued unlawful incarceration. Immediate release is the only adequate remedy.

69. Additionally, implicit in the *Miranda* court's holding that the three-step custody determination process afforded to persons detained under § 1226 is constitutionally adequate is the assumption that immigrants will be afforded *fair* hearings in front of *neutral* immigration judges. This assumption is increasingly untenable. *See Exhibit A*, *Declaration of Jorge E. Artieda of January 28, 2026*. In the attached declaration, Mr. Artieda—former legal counsel to ICE in Washington D.C. and Virginia—details evidence of what "appears to be a systematic effort to nullify the constitutional protections that federal courts have recognized and enforced through habeas corpus" through the reassignment of Immigration Judges and the use of pretextual and legally insufficient rationales for denying bond. *See id.* at ¶¶ 1-2, 16-20, 26, 32 and generally.

70. A bond hearing in front of an immigration judge is an inadequate remedy if Respondents cannot establish that the hearing officer will be a genuinely neutral and detached decisionmaker, rather than an agent of the executive branch under circumstances indicating a

substantial likelihood of bias. *See Briceno Solano,* 2026 WL 311624, at *20; *see, also, e.g., Hamdi*, 542 U.S. at 533.

    71.    To the extent this Court deems a bond hearing the appropriate remedy, Petitioner respectfully requests that the Court order that Petitioner be released unless a bond hearing pursuant to 8 U.S.C. 1226, at which the government bears the burden of proof, is held within five (5) days of this Court's order. *See Campos-Flores*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303; *Lopez*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, at *3, 2025 U.S. Dist. LEXIS 232158. Petitioner also requests that any bond hearing occur before an Article III court rather than an immigration judge.

## PRAYER FOR RELIEF

Petitioner therefore respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative afforded a bond hearing before a neutral judge, at which the government bears the burden to prove by clear and convincing evidence that continued detention is justified based on danger to the community or risk of flight;

3. Issue an Order requiring Respondents to file a notice within 48 hours of service of this Petition informing the Court and Petitioners of whether Respondents have a good-faith basis to assert that they will present arguments in this case that have not already been considered and rejected by this Court;

4. If Respondents do not file a notice confirming that they have a good-faith basis that they will present arguments in this case that have not already been considered and rejected by

this Court, Order the immediate release of petitioners pending any further order, briefing or hearing the Court may deem necessary or appropriate in this case;

5. Declare that Petitioner's continued detention violates the Immigration and Nationality Act, its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

6. Permanently enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1225 and enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1226 absent notice, a reasonable opportunity to obtain counsel, a hearing before a neutral officer at which Respondents bear the burden of justifying the detention under a clear and convincing evidence standard, and prior leave of this Court;

7. Order that Petitioner be released with all property seized by Respondents incident to his detention;

8. Order that Respondents take all reasonable measures to ensure that all subordinate agencies and officers are on notice of this Court's order to ensure that agents of Respondents do not negligently violate the order; and

9. Grant such other and further relief as the Court deems just and proper.

Dated: February 15, 2026

**Respectfully submitted,**
**COUNSEL FOR PETITIONER**

/s/ *Lesley M. Nash*
Lesley M. Nash (WVSB #14158)
Sarah K. Brown (WVSB #10845)
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV 26505
Phone: (304) 326-0188
lesley@msjlaw.org
sarah@msjlaw.org

Jonathan Sidney
*Pro Hac Vice* Pending
Colorado Bar No. 52463
Ohio Bar No. 0100561
P.O. Box 97
Forest Hill, WV
Phone: (681) 335-0074
jsidney@climatedefenseproject.org

**<u>Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. 2242</u>**

  I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I have discussed with Petitioner the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

<u>/s/ *Jonathan Sidney*</u>　　　　　　　　　　　　　　　　　　　Date: February 15, 2026