UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **FREDY NAHUN SANCHEZ MARTINEZ,**<br><br>Petitioner,<br><br>v.<br><br>**CHRISTOPHER MASON,** Superintendent, South Central Regional Jail; **MICHAEL T. ROSE,** Acting Field Office Director, Philadelphia Field Office, United States Immigration and Customs Enforcement; **TODD M. LYONS,** Acting Director, United States Immigration and Customs Enforcement; **KRISTI NOEM,** Secretary of Homeland Security; **PAMELA JO BONDI,** United States Attorney General, *in their official capacities*,<br><br>Respondents. | Civ. Act. No.: |

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

1. Petitioner, Fredy Nahun Sanchez Martinez, by and through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge his ongoing civil immigration detention by the United States Department of Homeland Security and its agents. Petitioner is a citizen and national of Honduras and is currently detained in the custody of Immigration and Customs Enforcement (ICE) at South Central Regional Jail (SCRJ) in Charleston, West Virginia.

2. Petitioner seeks immediate release from immigration detention, or in the alternative, a prompt and constitutionally adequate custody hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions.

1

3. Petitioner's continued civil confinement, initiated via an unlawful arrest and maintained without any individualized custody determination by a neutral decisionmaker authorized to assess flight risk, danger to the community, or the availability of conditions of release, violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Civil immigration detention must bear a reasonable relation to its purported purpose and may not be imposed in a punitive or arbitrary manner. Accordingly, issuance of the writ of habeas corpus is warranted.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner is in federal immigration custody and challenges the legality of his ongoing civil immigration detention by the United States Department of Homeland Security and its officers. The relief sought lies at the core of the writ of habeas corpus.

5. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action raises questions of federal law arising under the Constitution and laws of the United States, including the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

6. The Suspension Clause of the United States Constitution independently guarantees Petitioner the right to seek habeas corpus review to test the legality of his physical confinement where no other adequate and effective remedy exists.

7. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because at least one Respondent is in this District, Petitioner is detained in this District, Petitioner's immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. *See generally Rumsfeld v. Padilla*, 542

U.S. 426, 434 (2004) ("the proper respondent to a habeas petition is 'the person who has custody over [the petitioner]'") (quoting 28 U.S.C. 2242).

## PARTIES

8. Petitioner Fredy Nahun Sanchez Martinez is a citizen and national of Honduras and is detained at SCRJ. As of the date of this filing, he is in his fifth day in ICE custody since he was pulled over and arrested without a warrant on the evening of February 12, 2026.

9. Respondent Chrisopher Mason is the Superintendent of South Central Regional Jail, where Petitioner is currently detained. He is the physical custodian of Petitioner and is named in his official capacity.

10. Respondent Michael T. Rose is the Acting Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in his official capacity.

11. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

12. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

13. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

## FACTUAL BACKGROUND

14. Petitioner Fredy Nahun Sanchez Martinez is a citizen and national of Honduras who was residing with his family, including his pregnant wife and his two-year-old child, in Gallipolis Ferry, West Virginia. He entered the United States on a work visa in 2022.

15. On February 12, 2026, Petitioner and his brother-in-law stopped at a Latin American grocery store in the Huntington, West Virginia area on their way home. As they were driving away, they were pulled over by Cabell County Sheriffs. Sheriffs held their IDs for approximately 20 minutes before arresting Petitioner and his brother-in-law and taking them to Western Regional Jail. No traffic citation was issued, and Petitioner was not served with any documents at the time of his arrest. On information and belief, the officers arresting Petitioner made no particularized inquiry into his family or life circumstances at the time that he was initially detained and incarcerated.

16. Petitioner is currently detained in the custody of Immigration and Customs Enforcement. On information and belief, no warrant for Petitioner had been issued at the time Petitioner was arrested. Petitioner's detention is civil and administrative in nature. On information and belief, Petitioners has no criminal history and his confinement is not based on any criminal conviction or charge. While detained, Petitioner remain physically confined and deprived of his liberty as his immigration case proceeds through the administrative process.

17. On information and belief, no immigration officer or decisionmaker has determined that physical confinement is justified by a legitimate governmental purpose in Petitioner's case—i.e., the risk of flight or danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022). On information and belief, no Immigration Judge or other judge or magistrate has conducted an individualized custody determination assessing whether Petitioner's continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release. *See id*.

18. Although Petitioner's detention is civil in character, it has resulted in ongoing physical confinement without release. Petitioner remains detained while his immigration

proceedings continue, without any individualized custody review reflected in the record. As a result, Petitioner continues to suffer a deprivation of physical liberty solely on the basis of civil immigration detention. Petitioner's detention has imposed significant restraint on his freedom of movement and personal autonomy.

19. On information and belief, there has been no mechanism by which Petitioner has received a meaningful opportunity to challenge the necessity of his continued detention. Absent judicial intervention, Petitioner will remain incarcerated absent the *ex ante* individualized custody determination which he was due at the time of his detention, absent a prompt custody redetermination by an immigration judge, and absent the opportunity for any custody determination by a genuinely neutral and detached adjudicatory body.[1]

## STANDARD OF LAW

20. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (cleaned up). A petitioner may seek a writ of habeas corpus when their custody violates the US Constitution or a federal law, 28 U.S.C. § 2241(c)(3), which should be granted if the petitioner meets their burden of proof–a preponderance of evidence. *See Post v. Boles*, 332 F.2d 738, 742 (4th Cir. 1964); *see also, e.g.*, *Aroca v. Mason*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *6 (S.D.W. Va. Feb. 9, 2026) (Goodwin, J.).

---

[1] There is substantial reason to believe that any bond hearing Petitioner might eventually receive in immigration court would not be conducted by a fair and neutral adjudicatory body. *See Exhibit A, Declaration of Jorge E. Artieda of January 28, 2026*; *Exhibit B, Affidavit of Lawrence O. Burman of February 13, 2026*, discussed further in the "REMEDY" section, *infra*.

21. The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless a petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless *for good cause* additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

22. Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda*, 34 F.4th at 351. This Court and many other district courts have declined to require prudential exhaustion when attempts at exhaustion would be futile. *See, e.g., Briceno Solano v. Mason*, No. 2:26-cv-00045, ___ F.Supp.3d ___, 2026 WL 311624, at *8 (S.D.W. Va. Feb. 4, 2026) (Johnston, J.).

23. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also, e.g., Aroca v*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *18-19.

24. It is no secret that this country is currently experiencing a massive uptick in unlawful civil immigration detentions. *See, e.g., Umarov v. Mason* No. 2:26-cv-00081, 2026 WL 381614, at *1 (S.D.W. Va. Feb. 11, 2026) (Berger, J.) ("As dozens, perhaps hundreds, of courts have found in thousands of cases in recent months, the United States government has again violated the United States Constitution by arresting and detaining a person without due process and without statutory authority.").

25. As this Court has noted, "[o]ther courts have found that DHS is detaining people 'to fulfill an arrest quota' rather than based on any individual determination that those detained pose a danger or flight risk." *Id.* at *2, citing Rangel v. Knight*, No. 1:25-CV-00607-BLW, 2025

WL 3229000, at *8 (D. Idaho Nov. 19, 2025) and *Pichardo Medina v. Hermosilla*, No. 3:25-CV-02233-MC, 2025 WL 3712271, at fn. 6 (D. Or. Dec. 22, 2025).

26. The "default rule" is that detention of immigrants already present in the United States and subject to pending removal proceedings is governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

27. Under this default rule, detained immigrants are constitutionally and statutorily entitled to both an initial custody determination by an immigration officer and a prompt bond hearing. *See*, *e.g.*, *Simanca Gonzalez v. Aldridge*, Civil Action No. 3:26-0055, 2026 WL 313476, at *6 (S.D.W. Va. Feb. 5, 2026) (Chambers, J.); *Miranda*, 34 F.4th at 362. *Tumba v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025)

## CLAIMS FOR RELIEF

### COUNT ONE

### Fifth Amendment Due Process

*Petitioner is being deprived of an adequate and meaningful process to challenge his ongoing confinement.*

28. Petitioner realleges and incorporates by reference the allegations contained above.

29. Petitioner has due process rights as a resident of the United States. *Zadvydas*, 533 U.S. at 693.

30. Civil immigration detention is constitutionally permissible only when it is reasonably related to a legitimate governmental purpose and is accompanied by adequate procedural safeguards. Detention that becomes arbitrary or imposed without proper statutory authority violates the Due Process Clause.

31. Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this

test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

32. Here, all three factors favor the petitioner.

33. First, Petitioner has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner currently experiences the gambit of deprivations that come with physical detention, including separation from his family and community, barriers to full participation in his pending immigration proceedings, and forced imprisonment under inhumane conditions.

34. Second, Petitioner has already been deprived of this interest and will continue to be deprived of this interest if the current procedure (detaining Petitioner without a legal basis) is followed. Petitioner's detention was *ultra vires* at its inception, as he was arrested without a warrant and without satisfaction of the requirements for a warrantless civil immigration arrest. Further, Petitioner has already been deprived of an initial custody determination, as he was jailed on this alleged civil immigration violation without consideration of his individual circumstances indicating a lack of threat to the community or risk of flight. *See Miranda*, 34 F.4th at 362 (first opportunity for release under 1226(a) occurs "almost immediately" after arrest); *Tumba*, 2025 WL

3079014, at *7 (holding that the violation of Petitioner's due process rights "originated with her detention in the first instance.").

35. Lastly, the Government has no legitimate interest in refusing to follow its own rules. Petitioner poses no safety threats to the community. No evidence indicates a likelihood of absconding. Releasing him would in fact *save* the government the resources and expense of continuing to imprison him. *See, e.g., Briceno-Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *19.

36. The placement of Petitioner in detention pending the resolution of his ongoing immigration court proceedings violates Petitioner's constitutional right to due process guaranteed by the Fifth Amendment.

## COUNT TWO

### Immigration and Nationality Act, 8 U.S.C. § 1226

*Petitioner's Ongoing Detention, Initiated Without a Warrant or an Initial Custody Determination, Violates his Statutory Rights Under 8 U.S.C. § 1226(a) and its Implementing Regulations*

37. Petitioner realleges and incorporates by reference the allegations contained above.

38. Petitioner's warrantless detention was *ultra vires* in violation of 8 U.S.C. § 1226(a) and its implementing regulations. *See* 8 C.F.R. § 236.1(b)-(c); 8 C.F.R. § 287.3(d); *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).[2]

39. Petitioner is detained without being afforded a prompt or meaningful opportunity to advocate for his release back into their community as the law requires.

---

[2] To the extent Respondents argue that a *post hoc* warrant issued after the time of Petitioner's arrest justifies his detention, Petitioner reserve the right to assert any deficiencies with respect to any such warrant at that time.

40. In the absence of an individualized custody determination, Petitioner's continued detention is not meaningfully tethered to the limited statutory purposes authorized by the Immigration and Nationality Act and its implementing regulations.

## COUNT THREE

### Violation of the Suspension Clause of the United States Constitution

41. Petitioner realleges and incorporates by reference the allegations contained above.

42. The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Suspension Clause guarantees the availability of judicial review to test the legality of executive detention.

43. Where no adequate and effective administrative substitute exists to permit review of executive detention, habeas corpus remains the sole means through which a detained individual may challenge the lawfulness of confinement.

44. Absent access to habeas corpus review, Petitioner would have no forum in which to test whether his continued civil immigration detention exceeds the limits imposed by the Immigration and Nationality Act and the Constitution.

45. The Suspension Clause forbids the government from maintaining a detention framework that eliminates all meaningful opportunity for a detainee to challenge the legality of executive confinement.

46. Petitioner's arbitrary civil immigration detention falls within the core protections safeguarded by the Suspension Clause.

47. By continuing to detain Petitioner under civil immigration authority without providing any mechanism to challenge the legality of his confinement to date, and with no

constitutionally adequate mechanism to challenge the legality of his confinement on the horizon, Respondents have violated the Suspension Clause of the United States Constitution.

## REMEDY

48. The appropriate remedy for Respondents' unlawful conduct as outlined in this complaint is for Petitioner to be released.

49. Immigration detention is civil in nature, and as a result Congress must have expressly authorized it by statute, and the detention must be reasonably related to its statutory purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

50. When a habeas petitioner's detention is without legal basis, the typical remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

51. Respondents have already denied Petitioner the process he was due by summarily incarcerating him based on no offense other than the alleged failure to comply with the terms of his visa in the absence of a warrant, in the absence of satisfaction of the requirements for a warrantless civil immigration arrest, and in the absence of an individualized custody determination. Petitioner's continued civil detention is *ultra vires* and unjustified by the statutory and regulatory authorities governing immigration detention.

52. Respondents likely will argue that Petitioner's remedy is a bond hearing as opposed to outright release. Every Judge in this jurisdiction has found that immediate release is the appropriate remedy for unlawful civil immigration detention. *See Briceno Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *21 ("Respondents are **PROHIBITED** from re-arresting and detaining petitioner pending further order of this Court."); *Estrada Reyes v. Aldridge*, No. 3:26-0084, 2026 WL 413210, at *4 n. 6 (S.D.W. Va. Feb. 13, 2026) (Chambers, J.) ("The Court finds

the broad language [prohibiting re-arrest and detention] appropriate given Respondents' record of a lack of compliance with Court orders and common practice of unlawfully detaining undocumented individuals."); *Larrazabal-Gonzalez v. Mason*, No. 2:26-CV-00049, 2026 WL 221706, at *6 (S.D.W. Va. Jan. 28, 2026) (Goodwin, J.); *Umarov*, No. 2:26-cv-00081, 2026 WL 381614, at *1; *Simanca Gonzalez*, Civil Action No. 3:26-0055, 2026 WL 313476, at *6:

> Considering the present detention is more accurately characterized under Section 1226(a), Petitioner's arrest would require a warrant or exception justifying the absence of one, and Petitioner would be entitled to an individualized custody determination, neither of which were seemingly satisfied here. Additionally, in *Miranda v. Garland*, the Fourth Circuit found the procedure within Section 1226 to be constitutional when it involved an individualized custody determination by an immigration officer "almost immediately" after detention, and a second opportunity for a bond hearing before an Immigration Judge "soon thereafter." *Miranda*, 34 F.4th [at] 362[.] Petitioner has not received such treatment . . . . Petitioner's detention is unlawful, and his release is the appropriate remedy.

53.     *See also*, *e.g.*, *Alberto C.M. v. Noem*, No. 26-380 (DWF/SGE), ___ F.Supp.3d ___, 2026 WL 184530, at *2 (D. Minn. 2026); *Ahmed M. v. Bondi*, No. 25-cv-4711, 2026 WL 25627, at *3 (D. Minn. 2026) (Tostrud, J.); *Tzi v. Jamison*, No. 26-0099, 2026 WL 116486, *3 (E.D. Pa. Jan. 15, 2026) (ordering petitioner's immediate release and noting that "[s]ince Tzi has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful"); *Rodriguez v. Rokosky* No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) ("the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification").

54.     While Respondents will likely attempt to distinguish this case by arguing that Petitioner may ultimately receive a bond hearing, regardless, Petitioner has already suffered a deprivation of the custody determination process which he was due. As explained by the Fourth Circuit in *Miranda*:

> [The Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention. The first opportunity is with an immigration officer. *Id.* § 1225(a). An immigration officer is authorized to release the [noncitizen] if the officer is satisfied that the [noncitizen] is not a danger to the community or a flight risk. 8 C.F.R. § 236.1(c)(8). If the immigration officer decides to release a[ ] [noncitizen], the officer may set a bond or place conditions on the [noncitizen's] release. *Id.* If an immigration officer denies bond, sets bond at an amount the [noncitizen] believes is too high or sets alternative conditions to bond the [noncitizen] contends are unreasonable, a[ ] [noncitizen] may appeal the officer's bond determination to an immigration judge, giving the [noncitizen] a second opportunity at release. . . .
>
> The first [opportunity], which occurs before an immigration officer, occurs almost immediately upon an alien being detained. The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter.

34 F.4th at 346-47, 362. *See also Simanca Gonzalez*, Civil Action No. 3:26-0055, 2026 WL 313476, at *6.

55. While many decisions regarding unlawful immigration detention focus exclusively on the second opportunity for release discussed in *Miranda*—i.e., detainees' right to a bond hearing—Petitioner here was not merely entitled to a bond hearing following his arrest (assuming that the government's authority pursuant to § 1226 had been properly invoked at that time, which it wasn't). He was also entitled to an *ex ante* release determination by an immigration officer prior to his incarceration. On information and belief, here, Petitioner was afforded no such individualized determination by any immigration officer. These due process violations cannot be remedied by a *post facto* bond hearing following continued unlawful incarceration. Immediate release is the only adequate remedy.

56. Additionally, implicit in the *Miranda* court's holding that the three-step custody determination process afforded to persons detained under § 1226 is constitutionally adequate is the assumption that immigrants will be afforded *fair* hearings in front of *neutral* immigration judges. This assumption is increasingly untenable. *See Exhibit A*, *Declaration of Jorge E. Artieda of*

*January 28, 2026*. In the attached declaration, Mr. Artieda—former legal counsel to ICE in Washington D.C. and Virginia—details evidence of what "appears to be a systematic effort to nullify the constitutional protections that federal courts have recognized and enforced through habeas corpus" through the reassignment of Immigration Judges and the use of pretextual and legally insufficient rationales for denying bond. *See id*. at ¶¶ 1-2, 16-20, 26, 32 and generally. While Mr. Artieda's declaration is written specifically to address post-habeas bond determinations, it nonetheless raises serious concerns about the lack of fairness and neutrality of the current immigration court system and its bond practices more generally.

57.     *See also Exhibit B, Affidavit of Lawerence O. Burman of February 13, 2026*. Mr. Burman—who served as counsel for Immigration and Naturalization Services from 1988 to 1998 and then as an Immigration Judge from April 1998 until December 31, 2025—presided over both detained and non-detained immigration court dockets in his 27 years as an Immigration Judge. *Id*. at ¶¶ 3-8. In his affidavit, he attests to "a troubling trend of Immigration Judges being terminated without explanation or notice" since January 2025 and notes that he has "never witnessed such a high level of turnover" during his 27 years on the bench. *Id*. at ¶ 18. Mr. Burman attests that, based on his "conversations with the immigration bench and professional organizations, including the National Association of Immigration Judges (of which [he] was an officer), it is clear that judges were removed for their strong commitment to due process for those appearing before them." *Id*. at ¶ 19. Mr. Burman attests to "increasing concern among members of the bench about institutional intimidation and the perception that decisions unfavorable to the government could negatively affect judicial tenure." *Id*. at ¶ 20. Mr. Burman concludes his affidavit by expressing his "concern[ ] that the notable rise in bond denials and adverse case outcomes undermines due process and erodes confidence in the Immigration Court system" *Id*. at ¶ 21. This affidavit and Mr. Artieda's

declaration corroborate each other in substantial part, including with respect to the recent, abrupt reassignment of multiple Immigration Judges on the Annandale, Virginia detained docket. *See id.* at ¶¶ 15-17; *Exhibit A* at ¶¶ 12-15.

58. A bond hearing in front of an immigration judge is an inadequate remedy if Respondents cannot establish that the hearing officer will be a genuinely neutral and detached decisionmaker, rather than an agent of the executive branch under circumstances indicating a substantial likelihood of bias. *See Briceno Solano,* 2026 WL 311624, at *20; *see, also, e.g., Hamdi*, 542 U.S. at 533.

59. To the extent this Court deems a bond hearing the appropriate remedy, Petitioner respectfully requests that the Court order that Petitioner be released unless a bond hearing at which at which the government bears the burden of proof is held within seven (7) days of this Court's order. *See Campos-Flores*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303; *Lopez*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, at *3, 2025 U.S. Dist. LEXIS 232158. Petitioner also requests that any bond hearing occur before an Article III court rather than an immigration judge.

## **PRAYER FOR RELIEF**

Petitioner therefore respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative afforded a bond hearing before a neutral judge, at which the government bears the burden to prove by clear and convincing evidence that continued detention is justified based on danger to the community or risk of flight;

3. Declare that Petitioner's continued detention violates the Immigration and Nationality Act, its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

4. Enjoin Respondents from re-detaining Petitioner absent notice, a reasonable opportunity to obtain counsel, a hearing before a neutral officer at which Respondents bear the burden of justifying the detention under a clear and convincing evidence standard, and prior leave of this Court;

5. Order that Petitioner be released with all property seized by Respondents incident to his detention;

6. Order that Respondents take all reasonable measures to ensure that all subordinate agencies and officers are on notice of this Court's order to ensure that agents of Respondents do not negligently violate the order; and

7. Grant such other and further relief as the Court deems just and proper.

Dated: 16 February 2026

**Respectfully submitted,**
**COUNSEL FOR PETITIONER**

/s/ *Lesley M. Nash*
Lesley M. Nash (WVSB #14158)
Sarah K. Brown WVSB #10845)
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV 26505
Phone: (304) 326-0188
lesley@msjlaw.org
sarah@msjlaw.org

Jonathan Sidney
*Pro Hac Vice Pending*
Colorado Bar No. 52463
Ohio Bar No. 0100561
P.O. Box 97
Forest Hill, WV
Phone: (681) 335-0074
jsidney@climatedefenseproject.org

**<u>Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. 2242</u>**

      I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I have discussed with Petitioner the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

<u>/s/ *Jonathan Sidney*</u>　　　　　　　　　　　　　　　　　　　　Date: February 16, 2026