UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **HILARIO RAMIREZ-SERRANO** and **DARWIN REDONDO-SALAZAR**,<br><br>Petitioners,<br><br>v.<br><br>**CHRISTOPHER MASON**, Superintendent, South Central Regional Jail; **MICHAEL T. ROSE**, Acting Field Office Director, Philadelphia Field Office, United States Immigration and Customs Enforcement; **TODD M. LYONS**, Acting Director, United States Immigration and Customs Enforcement; **KRISTI NOEM**, Secretary of Homeland Security; **PAMELA JO BONDI**, United States Attorney General, *in their official capacities*,<br><br>Respondents. | Civ. Act. No.: |

### VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

1. Petitioners, Hilario Ramirez-Serrano and Darwin Redondo-Salazar, by and through undersigned counsel, respectfully petition this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge their ongoing civil immigration detention by the United States Department of Homeland Security and its agents. Petitioners are citizens and nationals of Mexico and Honduras, respectively, and are detained in the custody of Immigration and Customs Enforcement at South Central Regional Jail ("SCRJ") in Charleston, West Virginia at the time of filing of this petition.

1

2. Petitioners seek immediate release from immigration detention, or in the alternative, an order directing Respondents to provide them with a constitutionally adequate custody hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions.

3. Petitioners' continued civil confinement, based on the application of a statute that does not apply to them and maintained without any individualized custody determination by a neutral decisionmaker authorized to assess flight risk, danger to the community, or the availability of conditions of release, violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Civil immigration detention must bear a reasonable relation to its purported purpose and may not be imposed in a punitive or arbitrary manner. Accordingly, issuance of the writ of habeas corpus is warranted.

**JURISDICTION & VENUE**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioners are in federal immigration custody and challenge the legality of their ongoing civil immigration detention by the United States Department of Homeland Security and its officers. The relief sought lies at the core of the writ of habeas corpus.

5. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action raises questions of federal law arising under the Constitution and laws of the United States, including the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

6. The Suspension Clause of the United States Constitution independently guarantees Petitioners the right to seek habeas corpus review to test the legality of their physical confinement where no other adequate and effective remedy exists.

7. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because at least one Respondent is in this District, Petitioners are detained in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("the proper respondent to a habeas petition is 'the person who has custody over [the petitioner]'") (quoting 28 U.S.C. 2242).

## PARTIES

8. Petitioners Hilario Ramirez-Serrano and Darwin Redondo-Salazar are citizens of Mexico and Honduras, respectively, and are detained by Respondents at South Central Regional Jail ("SCRJ"), a West Virginia state jail with which ICE has a task order for detention services/bed space.

9. Respondent Chrisopher Mason is the Superintendent of South Central Regional Jail, where Petitioners are currently detained. He is the physical custodian of Petitioners and is named in his official capacity.

10. Respondent Michael T. Rose is the Acting Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioners' immigration case. He is a legal custodian of Petitioners and is named in his official capacity.

11. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioners and is named in his official capacity.

12. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioners and is named in her official capacity.

13. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioners and is named in her official capacity.

## FACTUAL BACKGROUND

14. Petitioner Hilario Ramirez-Serrano is a citizen of Mexico who currently resides in Lexington, Kentucky, with his wife and children. His fourteen-year-old son and sixteen-year-old daughter are U.S. citizens. On February 15, 2026, he was pulled over by a West Virginia State Trooper in the Huntington area, then arrested and taken to Western Regional Jail. The officer did not serve him with any documents at the time, and reportedly informed Petitioner that he (the officer) "was ICE."

15. Petitioner Darwin Redondo-Salazar is a citizen of Honduras who currently resides in Winston-Salem, North Carolina. On February 14, 2026, he was pulled over, purportedly for a broken vehicle light, while driving home to North Carolina on I-77 south of Beckley. Petitioner's understanding is that after issuing him a traffic citation, the officer called ICE. Petitioner was detained for approximately half an hour before being arrested and taken to Southern Regional Jail.

16. Petitioners are currently detained in the custody of Immigration and Customs Enforcement. On information and belief, no warrants for Petitioners had been issued at the time Petitioners were arrested. Petitioners' detention is civil and administrative in nature. On information and belief, Petitioners' confinement is not based on any criminal conviction or charge. While detained, Petitioners remain physically confined and deprived of their liberty as their immigration case proceeds through the administrative process.

17. On information and belief, no immigration officer or decisionmaker has determined that physical confinement is justified by a legitimate governmental purpose in Petitioners' cases—i.e., the risk of flight or danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022). On information and belief, no Immigration Judge or other judge or magistrate has conducted an individualized custody determination assessing whether Petitioners' continued

4

detention is necessary to address flight risk, danger to the community, or the availability of conditions of release. *See id*.

18. Although Petitioners' detention is civil in character, it has resulted in ongoing physical confinement without release. Petitioners remain detained without any individualized custody review reflected in the record. As a result, Petitioners continue to suffer a deprivation of physical liberty solely on the basis of civil immigration detention.

19. Petitioners' detention has imposed significant restraint on their freedom of movement and personal autonomy. On information and belief, there has been no mechanism by which Petitioners have received a meaningful opportunity to challenge the necessity of their continued detention, and Respondents have no intention of providing any. Absent judicial intervention, Petitioners will remain detained without an opportunity to contest whether their continued confinement is lawful, necessary, or justified.

## STANDARD OF LAW

20. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (cleaned up). A petitioner may seek a writ of habeas corpus when their custody violates the US Constitution or a federal law, 28 U.S.C. § 2241(c)(3), which should be granted if the petitioner meets their burden of proof–a preponderance of evidence. *See Post v. Boles*, 332 F.2d 738, 742 (4th Cir. 1964); *see also*, *e.g.*, *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *3 (D. Minn. 2025) (collecting cases).

21. The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless a petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless *for good cause* additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

22. Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda*, 34 F.4th at 351. Courts in this jurisdiction have consistently declined to require prudential exhaustion when evaluating a detained immigrant's petition under similar circumstances.

23. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

24. In July of 2025, DHS began ignoring the decades-long consensus of how 8 U.S.C. § 1225(b)(2) should be interpreted; the Board of Immigration Appeals ("BIA") articulated this new policy in a subsequent precedential ruling. *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA Sept. 5, 2025). Respondents now claim that individuals who are arrested while residing within the United States are somehow "seeking admission."

25. However, the overwhelming majority of district courts across the country, including numerous courts within the Fourth Circuit and four Judges in this District, have made clear that 8 U.S.C. § 1225(b)(2) only authorizes detention for noncitizens who are at the border seeking physical entry at the time of detention, not those who reside in the United States, whose detention is discretionary and governed by 8 U.S.C. § 1226(a). *See*, *e.g.*, *Umarov v. Mason* No. 2:26-CV-00081, 2026 WL 381614, at *1 (S.D.W. Va. Feb. 11, 2026) ("As dozens, perhaps

hundreds, of courts have found in thousands of cases in recent months, the United States government has again violated the United States Constitution by arresting and detaining a person without due process and without statutory authority.").

26. As this Court has noted, "[o]ther courts have found that DHS is detaining people 'to fulfill an arrest quota' rather than based on any individual determination that those detained pose a danger or flight risk." *Id.* at *2, citing *Rangel v. Knight*, No. 1:25-CV-00607-BLW, 2025 WL 3229000, at *8 (D. Idaho Nov. 19, 2025) and *Pichardo Medina v. Hermosilla*, No. 3:25-CV-02233-MC, 2025 WL 3712271, at fn. 6 (D. Or. Dec. 22, 2025).

27. Otherwise, the "default rule" is that detention of immigrants already present in the United States and subject to pending removal proceedings is governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

28. Under this default rule, detained immigrants are constitutionally and statutorily entitled to both an initial custody determination by an immigration officer and a prompt bond hearing. *See*, *e.g.*, *Campos-Flores v. Bondi*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303 (E.D. Va. Dec. 2, 2025); *Lopez v. Lyons*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, 2025 U.S. Dist. LEXIS 232158 (E.D. Va. Nov. 25, 2025); *Miranda*, 34 F.4th at 362; *Tumba v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025).

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Fifth Amendment Due Process**

*Petitioners are being deprived of an adequate and meaningful process to challenge their ongoing confinement.*

29. Petitioners reallege and incorporate by reference the allegations contained above.

30. Petitioners have due process rights as residents of the United States. *Zadvydas*, 533 U.S. at 693.

31. Civil immigration detention is constitutionally permissible only when it is reasonably related to a legitimate governmental purpose and is accompanied by adequate procedural safeguards. Detention that becomes arbitrary or imposed without proper statutory authority violates the Due Process Clause.

32. Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

33. Here, all three factors favor the petitioner.

34. First, Petitioners have a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioners currently experience the gambit of deprivations that come with physical detention, including separation from their family and their community, barriers to full participation in their pending immigration proceedings, and forced imprisonment under inhumane conditions.

35. Second, Petitioners have already been deprived of this interest and will continue to be deprived of this interest if the current procedure (detaining Petitioners without a legal basis) is followed. Petitioners' respective detentions were *ultra vires* from the start, as they were arrested without a warrant and without satisfaction of the requirements for warrantless civil immigration arrests. Further, Petitioners have already been deprived of an initial custody determination, as they have been jailed on these alleged civil immigration violation without consideration of their individual circumstances indicating a lack of threat to the community or risk of flight. *See Miranda*, 34 F.4th at 362 (first opportunity for release under 1226(a) occurs "almost immediately" after arrest); *Tumba*, 2025 WL 3079014, at *7 (holding that the violation of Petitioner's due process rights "originated with her detention in the first instance."). Even if they were detained pursuant to a determination under 8 U.S.C. § 1226(a), they have a strong likelihood of meeting the criteria for being released on bond. 8 CFR 236.1(c)(8); 8 CFR 1236.1(c)(8); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999).

36. Lastly, the Government has no legitimate interest in refusing to follow its own rules. Petitioners pose no safety threats to the community. No evidence indicates a likelihood of absconding. Releasing them, or holding a hearing to release them on bond, would in fact *save* the government the resources and expense of continuing to imprison them.

37. The placement of Petitioners in detention pending the resolution of their ongoing immigration court proceedings violates Petitioners' constitutional right to due process guaranteed by the Fifth Amendment.

## COUNT TWO

### Immigration and Nationality Act, 8 U.S.C. § 1226

*Petitioners' Ongoing Detention, without the Opportunity for an Initial Custody Determination and a Bond Hearing, Violates their Statutory Rights Under 8 U.S.C. § 1226(a) and its Implementing Regulations*

38. Petitioners reallege and incorporate by reference the allegations contained above.

39. Respondents' attempt to apply mandatory detention through 8 U.S.C. § 1225(b)(2) to Petitioners violates the Immigration and Nationality Act.

40. Further, Petitioners' warrantless detentions were *ultra vires* in violation of 8 U.S.C. § 1226(a) and its implementing regulations. *See* 8 C.F.R. § 236.1(b)-(c); 8 C.F.R. § 287.3(d); *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).[1]

41. Petitioners are detained without being afforded an opportunity to advocate for their release back into their community as the law requires.

42. In the absence of an individualized custody determination, Petitioners' continued detention is not meaningfully tethered to the limited statutory purposes authorized by the Immigration and Nationality Act.

## COUNT THREE
### Violation of the Administrative Procedure Act

43. Petitioners reallege and incorporate by reference the allegations contained above.

44. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

45. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

46. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As

---

[1] To the extent Respondents argue that any *post hoc* warrants issued after the time of Petitioner's arrest justifies their detention, Petitioners reserve the right to assert any deficiencies with respect to any such warrants at that time.

relevant here, it does not apply to those who previously entered the country and have been residing in the United States. Such noncitizens could potentially be detained under § 1226(a) but would then be eligible for release on bond unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

47. Nonetheless, the Board has adopted a policy and practice of applying § 1225(b)(2) to Petitioners and others in the same position.

48. Respondents through its recent administrative decision failed to articulate any reasoned explanations for new interpretation of the Act. The Board's decision represents a change in the agencies' policies and positions that negates the plain language of the Act, the will of Congress, and decades of administrative precedent.

49. The application of § 1225(b)(2) to Petitioners is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA.  See 5 U.S.C. § 706(2).

50. Further, the continued detention of Petitioners in the absence of any articulated individualized assessment addressing whether detention is necessary to ensure appearance at future proceedings or to protect the community in light of Petitioners' individual circumstances constitutes arbitrary and capricious agency action and must be set aside.

## COUNT FOUR
### Violation of the Equal Protection Guarantee of the Fifth Amendment

51. Petitioners reallege and incorporate by reference the allegations contained above.

52. The Fifth Amendment prohibits the federal government from treating similarly situated persons differently unless the differential treatment bears a rational relationship to a legitimate governmental purpose.

53. By continuing to detain Petitioners without providing access to an individualized custody determination, the Department of Homeland Security has subjected them to disparate

treatment that is not supported by a rational justification tied to the purposes of civil immigration detention.

54. The unequal denial of access to individualized custody process, as applied to Petitioners, lacks a rational basis and violates the equal protection component of the Fifth Amendment.

## COUNT FIVE
### Violation of the Suspension Clause of the United States Constitution

55. Petitioners reallege and incorporate by reference the allegations contained above.

56. The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Suspension Clause guarantees the availability of judicial review to test the legality of executive detention.

57. Where no adequate and effective administrative substitute exists to permit review of executive detention, habeas corpus remains the sole means through which a detained individual may challenge the lawfulness of confinement.

58. Absent access to habeas corpus review, Petitioners would have no forum in which to test whether their continued civil immigration detention exceeds the limits imposed by the Immigration and Nationality Act and the Constitution.

59. The Suspension Clause forbids the government from maintaining a detention framework that eliminates all meaningful opportunity for a detainee to challenge the legality of executive confinement.

60. Petitioners' continued civil immigration detention, without access to any individualized custody review, falls within the core protections safeguarded by the Suspension Clause.

61. By continuing to detain Petitioners under civil immigration authority without providing any meaningful mechanism to challenge the legality of their confinement, Respondents have violated the Suspension Clause of the United States Constitution.

## REMEDY

62. An available remedy for Respondents' unlawful conduct as outlined in this complaint is for Petitioners to be released.

63. Immigration detention is civil in nature, and as a result Congress must have expressly authorized it by statute, and the detention must be reasonably related to its statutory purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

64. Since Section 1225 does not apply to noncitizens who are in Petitioners' situation– who have been detained while residing within the United States—the law that Respondents are using to detain Petitioners simply does not authorize Petitioners' detention.

65. When a habeas petitioner's detention is without legal basis, the typical remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

66. Respondents likely will argue that if the Court rules that if Petitioners should have been detained pursuant to § 1226, instead of § 1225, then the remedy is a bond hearing as opposed to outright release. Every Judge in this jurisdiction to rule on this issue has found that immediate release is the appropriate remedy when a Petitioner challenges their unlawful detention under Respondents' current policy of subjecting noncitizens residing within the United States to mandatory incarceration under § 1225(b). *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *21 (S.D.W. Va. Feb. 4, 2026) ("Respondents are **PROHIBITED** from re-arresting and detaining petitioner pending further order of this Court."); *Estrada Reyes v. Aldridge*,

No. 3:26-0084 at *4 n. 6 (S.D.W. Va. Feb. 13, 2026) ("The Court finds the broad language [prohibiting re-arrest and detention] appropriate given Respondents' record of a lack of compliance with Court orders and common practice of unlawfully detaining undocumented individuals."); *Larrazabal-Gonzalez v. Mason*, No. 2:26-CV-00049, 2026 WL 221706, at *6 (S.D.W. Va. Jan. 28, 2026); *Umarov v. Mason*, No. 2:26-cv-00081, 2026 WL 381614, at *1 (S.D.W. Va. Feb. 11, 2026).

67.　　See also, *e.g.*, *Ahmed M. v. Bondi*, No. 25-cv-4711, 2026 WL 25627, at *3 (D. Minn. 2026) (Tostrud, J.); *Tzi v. Jamison*, No. 26-0099, 2026 WL 116486, *3 (E.D. Pa. Jan. 15, 2026) (ordering petitioner's immediate release and noting that "[s]ince Tzi has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful"); *Rodriguez v. Rokosky* No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) ("the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification").

68.　　Here, release is the most appropriate remedy. First, detention is unlawfully based on 8 U.S.C. §1225, which does not apply to Petitioners, and Respondents have failed to properly invoke any valid statutory basis for detention. Second, even if 8 U.S.C. §1226 were properly invoked, Petitioners have already suffered a deprivation of the custody determination process which they were due. Moreover, as explained by the Fourth Circuit in *Miranda*:

> [The Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention. The first opportunity is with an immigration officer. *Id.* § 1225(a). An immigration officer is authorized to release the [noncitizen] if the officer is satisfied that the [noncitizen] is not a danger to the community or a flight risk. 8 C.F.R. § 236.1(c)(8). If the immigration officer decides to release a[ ] [noncitizen], the officer may set a bond or place conditions on the [noncitizen's] release. *Id.* If an immigration officer denies bond, sets bond at an amount the [noncitizen] believes is too high or sets alternative conditions to bond the [noncitizen] contends are unreasonable, a[ ]

> [noncitizen] may appeal the officer's bond determination to an immigration judge, giving the [noncitizen] a second opportunity at release. . . .
>
> The first [opportunity], which occurs before an immigration officer, occurs almost immediately upon an alien being detained. The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter.

34 F.4th at 346-47, 362.

69. While many of the recent decisions regarding § 1225 and § 1226 focus exclusively on the second opportunity for release discussed in *Miranda*—i.e., detainees' right to a bond hearing—Petitioners here were not merely entitled to a bond hearing following their arrest (assuming that the government's authority pursuant to § 1226 had been properly invoked at that time, which it wasn't). They were also entitled to an *ex ante* release determination by an immigration officer prior to their incarceration. On information and belief, here, Petitioners were afforded no such individualized determination by any immigration officer. This due process violation cannot be remedied by a *post facto* bond hearing following unlawful incarceration. Immediate release is the only adequate remedy.

70. Additionally, implicit in the *Miranda* court's holding that the three-step custody determination process afforded to persons detained under § 1226 is constitutionally adequate is the assumption that immigrants will be afforded *fair* hearings in front of *neutral* immigration judges. This assumption is increasingly untenable. *See Exhibit A*, *Declaration of Jorge E. Artieda of January 28, 2026*. In the attached declaration, Mr. Artieda—former legal counsel to ICE in Washington D.C. and Virginia—details evidence of what "appears to be a systematic effort to nullify the constitutional protections that federal courts have recognized and enforced through habeas corpus" through the reassignment of Immigration Judges and the use of pretextual and legally insufficient rationales for denying bond. *See id.* at ¶¶ 1-2, 16-20, 26, 32 and generally.

71. *See also Exhibit B, Affidavit of Lawerence O. Burman of February 13, 2026.* Mr. Burman—who served as counsel for Immigration and Naturalization Services from 1988 to 1998 and then as an Immigration Judge from April 1998 until December 31, 2025—presided over both detained and non-detained immigration court dockets in his 27 years as an Immigration Judge. *Id.* at ¶¶ 3-8. In his affidavit, he attests to "a troubling trend of Immigration Judges being terminated without explanation or notice" since January 2025 and notes that he has "never witnessed such a high level of turnover" during his 27 years on the bench. *Id.* at ¶ 18. Mr. Burman attests that, based on his "conversations with the immigration bench and professional organizations, including the National Association of Immigration Judges (of which [he] was an officer), it is clear that judges were removed for their strong commitment to due process for those appearing before them." *Id.* at ¶ 19. Mr. Burman attests to "increasing concern among members of the bench about institutional intimidation and the perception that decisions unfavorable to the government could negatively affect judicial tenure." *Id.* at ¶ 20. Mr. Burman concludes his affidavit by expressing his "concern[] that the notable rise in bond denials and adverse case outcomes undermines due process and erodes confidence in the Immigration Court system" *Id.* at ¶ 21. This affidavit and Mr. Artieda's declaration corroborate each other in substantial part, including with respect to the recent, abrupt reassignment of multiple Immigration Judges on the Annandale, Virginia detained docket. *See id.* at ¶¶ 15-17; *Exhibit A* at ¶¶ 12-15.

72. A bond hearing in front of an immigration judge is an inadequate remedy if Respondents cannot establish that the hearing officer will be a genuinely neutral and detached decisionmaker, rather than an agent of the executive branch under circumstances indicating a substantial likelihood of bias. *See Briceno Solano,* 2026 WL 311624, at *20; *see also, e.g., Hamdi*, 542 U.S. at 533.

73. To the extent this Court deems a bond hearing the appropriate remedy, Petitioners respectfully request that the Court order that Petitioners be released unless a bond hearing at which the government bears the burden of proof, is held within seven (7) days of this Court's order. *See Campos-Flores*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303; *Lopez*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, at *3, 2025 U.S. Dist. LEXIS 232158.

74. Additionally, any bond hearing must be held before a neutral and detached court— i.e., *not* an immigration court.

## **PRAYER FOR RELIEF**

Petitioners therefore respectfully request that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue an Order requiring Respondents to show cause as to why Petitioners should not be released immediately, or in the alternative afforded a bond hearing before a neutral judge, at which the government bears the burden to prove by clear and convincing evidence that continued detention is justified based on danger to the community or risk of flight;

3. Issue an Order requiring Respondents to file a notice within 48 hours of service of this Petition informing the Court and Petitioners of whether Respondents have a good-faith basis to assert that they will present arguments in this case that have not already been considered and rejected by this Court;

4. If Respondents do not file a notice confirming that they have a good-faith basis that they will present arguments in this case that have not already been considered and rejected by this Court, Order the immediate release of petitioners pending any further order, briefing or hearing the Court may deem necessary or appropriate in this case;

5. Declare that Petitioners' continued detention violates the Immigration and Nationality Act, its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

6. Permanently enjoin Respondents from re-detaining Petitioners under 8 U.S.C. § 1225 and enjoin Respondents from re-detaining Petitioners under 8 U.S.C. § 1226 absent notice, a reasonable opportunity to obtain counsel, a hearing before a neutral officer at which Respondents bear the burden of justifying the detention under a clear and convincing evidence standard, and prior leave of this Court;

7. Order that Petitioners be released with all property seized incident to their detention;[2] and

8. Grant such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
| Dated: February 16, 2026 | **Respectfully submitted,**<br>**COUNSEL FOR PETITIONER** |
|  | /s/ *Lesley M. Nash*<br>Lesley M. Nash (WVSB #14158)<br>Sarah K. Brown WVSB #10845)<br>Mountain State Justice, Inc.<br>1029 University Ave., Ste. 101<br>Morgantown, WV 26505<br>Phone: (304) 326-0188<br>lesley@msjlaw.org<br>sarah@msjlaw.org |

Jonathan Sidney
*Pro Hac Vice Pending*
Colorado Bar No. 52463
Ohio Bar No. 0100561
P.O. Box 97
Forest Hill, WV
Phone: (681) 335-0074
jsidney@climatedefenseproject.org

---

[2] *See, e.g.*, *Shailookul Uulu v. Aldridge, et al.*, 3:26-cv-00073, Dkt. 27 ("The Court further **ORDERS** Respondents to facilitate the prompt return of any of Petitioner's seized property, including legal documents") (Chambers, R.); *Gutierrez Aroca v. Mason*, 2:26-cv-00057, Dkt. 30 (Goodwin, J.) ("Respondents are **DIRECTED** to return all seized personal items of the Petitioners."); *Serna Zar[ate] v. Mason*, 2:26-00069, Dkt. 29 (Johnston, T.) ("[T]he Court further **ORDERS** that any personal possessions belonging to Petitioner Romero, including identification and other documentation to include legal documents, be returned to him.").

**<u>Verification by Someone Acting on Petitioners' Behalf Pursuant to 28 U.S.C. 2242</u>**

I am submitting this verification on behalf of Petitioners because I am one of Petitioners' attorneys. I have discussed with Petitioners the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

<u>/s/ *Jonathan Sidney*</u>                                                            Date: February 16, 2026