**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHEN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

|  |  |
|---|---|
| **MARIANO RENE GONZALEZ FALLA** | |
| **Petitioner,** | |
| **v.** | **Civ. Act. No.:** |
| **LEONARD ODDO, Facility Administrator of the Moshannon Valley Processing Center; JOHN RIFE, Field Office Director, Philadelphia Field Office, United States Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; PAMELA JO BONDI, United States Attorney General,** *in their official capacities*, | |
| **Respondents.** | |

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2241**

1.    Petitioner, Mariano Rene Gonzalez Falla, by and through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge his ongoing civil immigration detention by the United States Department of Homeland Security and its agents. Petitioner is a citizen and national of Guatemala and is currently detained in the custody of Immigration and Customs Enforcement at the Moshannon Valley Processing Center (MVPC) in Phillipsburg, Pennsylvania at or around the time of filing of this petition.

2.      Petitioner seeks immediate release from immigration detention, or in the alternative, a constitutionally adequate custody hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions.

3.      Petitioner's continued civil confinement, based on the application of a statute that does not apply to him and apparently maintained without any individualized custody determination by a neutral decisionmaker authorized to assess flight risk, danger to the community, or the availability of conditions of release, violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. [1] Civil immigration detention must bear a reasonable relation to its purported purpose and may not be imposed in a punitive or arbitrary manner. Accordingly, issuance of the writ of habeas corpus is warranted.

## JURISDICTION & VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner is in federal immigration custody and challenges the legality of his ongoing civil immigration detention by the United States Department of Homeland Security and its officers. The relief sought lies at the core of the writ of habeas corpus.

5.      This Court also has jurisdiction under 28 U.S.C. § 1331 because this action raises questions of federal law arising under the Constitution and laws of the United States, including the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

---

[1] Although counsel made several attempts to schedule a consultation with Petitioners at MVPC beginning on Saturday morning, counsel has not yet had an opportunity to have a reliably privileged and confidential conversation with Petitioner and therefore reserves all rights of Petitioner to amend the Petition upon an opportunity for privileged and confidential consultation and receipt of subsequent information.

6.      The Suspension Clause of the United States Constitution independently guarantees Petitioner the right to seek habeas corpus review to test the legality of his physical confinement where no other adequate and effective remedy exists.

7.      Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because Petitioner was detained in this District, a substantial part of the events giving rise to the claims in this action took place in this District, and Petitioner would still be detained in this District if he had not been transported out of the District for the purpose of evading the jurisdiction of this Court. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 451-55 (2024) (Kennedy, J., concurring); *Suri v. Trump*, 785 F.Supp.3d 128 (E.D. Va. 2025).[2]

8.      In habeas challenges to physical confinement, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official" and the "general rule" is that "jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 435, 443.

9.      However, the "immediate custodian" and territorial jurisdiction rules set forth in the *Padilla* majority "are not jurisdictional in the sense of a limitation on subject-matter jurisdiction." *Id.* at 451 (Kennedy, J., concurring); *see also Padilla*, 542 U.S. at 434 n. 7 (recognizing that the opinion in *Padilla* does not use the term "jurisdiction" to mean "subject-matter jurisdiction of the District Court"); *Kanai v. McHugh*, 638 F.3d 251, 258 (4th Cir. 2011);

---

[2] Justice Kennedy's concurrence was also joined by Justice O'Connor, who together constituted two members of the five-Justice majority opinion in *Padilla*. The majority opinion in *Padilla* must be read in light of this concurrence. *See Suri*, 785 F.Supp.3d at 138 ("[B]ecause Justice Kennedy and Justice O'Connor's votes were necessary to the formation of a majority, Justice Kennedy's opinion is at least given particular weight.") (internal quotations omitted).

Other district courts have noted that *Padilla* leaves open the question of whether the "district of confinement" rule or the traditional venue standard governs venue in the specific context of immigration detention cases. *See Navarro v. Gonzales*, No. C05-5107 THE, 2006 WL 954191, at *2 (N.D. Cal. Apr. 12, 2006); *Chen v. Holder*, No. 6:14-2530, 2015 WL 13236635, at *2-3 (W.D. La. Nov. 20, 2015). Here, traditional venue factors strongly favor this Court's retention of jurisdiction.

*Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2026 WL 309631, at *6 (D. Utah Feb. 5, 2026) ("Courts have held that the district-of-confinement rule is not a limitation on subject matter jurisdiction, but rather a venue consideration."); *Gabriel A.H.L. v. Noem*, No. CV 26-860 (JRT/EMB), 2026 WL 323106, at *2 (D. Minn. Feb. 6, 2026) (invoking Justice Kennedy's concurrence and finding venue for immigration habeas petition proper in Minnesota even though Petitioner's location in Texas was known to counsel at the time of filing); *Moore v Olson*, 368 F.3d 757, 759-60 (7th Cir. 2004).

10.     Here, this Court should recognize an exception to the default rules set forth in *Padilla* and hold that venue is proper in the Southern District of West Virginia. First, MVPC— where Petitioner is currently held—is a "privately owned and operated secure immigration processing center."[3] This in itself provides a reason to depart from the default rules of *Padilla. See Saravia v. Sessions*, 280 F.Supp.3d 1168, 1185 (N.D. Cal. 2017) (holding that where a detainee is "held in a facility solely pursuant to a contract, rather than by the state or federal government itself, application of the immediate custodian rule must take account of that fact" and that the detainee should "sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ").

11.     Second, and perhaps more importantly here, Justice Kennedy's concurrence in *Padilla* contemplates that additional exceptions to the default jurisdictional rule set forth in *Padilla* may be recognized, including exceptions resulting from government conduct obstructing access to courts. *Id.* at 454; *see also id.* at 453 (noting that, in that case, there was "no need to consider some further exception to protect the integrity of the writ or the rights of the person detained"); *Suri*, 785 F.Supp.3d at 139 ("the very nature of the writ [of habeas corpus] demands that it be administered

---

[3] *See* https://www.geogroup.com/facilities/moshannon-valley-processing-center/ (last accessed March 2, 2026).

with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected") (internal quotations omitted).

12.    Notably, counsel for Petitioner had scheduled a phone call with Petitioner at Western Regional Jail (WRJ), which was to take place the morning of Friday, February 27—the morning after Petitioner's detention on Thursday, February 26.[4] While on the phone with other ICE detainees at WRJ that morning, counsel was informed that Petitioner and others would be transferred, and it was understood that their destination would be South Central Regional Jail (SCRJ) via the ICE processing facility in Poca..

13.    This transfer to SCRJ did not proceed as scheduled. On information and belief, ICE arrived at SCRJ with Petitioner and other detainees from WRJ at approximately 4:00 P.M. However, on information and belief, due to Judge Goodwin's orders of that day[5], ICE opted not to commit Petitioner and other prospective transferees from WRJ to SCRJ. On information and belief, prior to transferring Petitioner to Moshannon, ICE attempted to house Petitioner in a DCR facility in the Northern District of West Virginia but was not permitted to do so.

14.    In short, based on the information available to counsel at this time, it appears that Petitioner was transferred out of the Southern District of West Virginia for the specific purpose of attempting to evade the jurisdictional authority of the Southern District of West Virginia. This Court should not countenance such a shameless attempt to evade the jurisdiction of the Southern

---

[4] Counsel can provide documentation of such to the extent this is disputed.

[5] *See*, *e.g.*, *Lezama-Hernandez v. Mason*, Civil Action No. 2:26-cv-00148, ECF No. 18, pp. 5-11 (one of seven substantially similar orders issued on February 27, 2026, providing notice to Respondents of their continuous pattern of constitutional violations and warning Respondents of the possibility of civil liability, contempt, and other consequences should the pattern of constitutional violations continue).

District of West Virginia and should find that venue in the Southern District of West Virginia is proper under the circumstances of this case.[6]

## PARTIES

15.     Petitioner Mariano Rene Gonzalez Falla is a citizen and national of Guatemala and is detained at MVPC. As of the date of this filing, he is in fifth day in ICE custody since he was arrested on February 26, 2026.

16.     Respondent Leonard Oddo is the Facility Administrator of the Moshannon Valley Processing Center, where Petitioner is currently detained. He is the physical custodian of Petitioner and is named in his official capacity.

17.     Respondent John Rife is the Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in his official capacity.

18.     Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

19.     Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

20.     Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

## FACTUAL BACKGROUND

---

[6] Respondents may property waive any objections based on the immediate-custodian and territorial-jurisdiction rules. *See Padilla*, 542 U.S. at 452 (Kennedy, J., concurring). Petitioner submits that Respondents have waived any objections by virtue of their bad-faith conduct in this case. To the extent Respondents intend to raise a venue/jurisdictional objection here and dispute Petitioner's representations herein, Petitioner will seek expedited discovery on the facts and circumstances surrounding Petitioner's transfer to MVPC to enable full, fair, and prompt adjudication on the factual question of whether Petitioner was transferred based upon Respondents' intent to evade the jurisdiction of the Southern District of West Virginia in habeas corpus and related matters.

21.     Petitioner Mariano Rene Gonzalez Falla is a citizen and national of Guatemala who resides in Richmond, Virginia. [7]

22.     Petitioner is currently detained in the custody of Immigration and Customs Enforcement. On February 26th, Petitioner was arrested when he was pulled over, asked for identification, detained for approximately 15-20 minutes, and then arrested and jailed on this civil immigration violation.

23.     Petitioner's detention is civil and administrative in nature. On information and belief, Petitioner has no criminal history and his confinement is not based on any criminal conviction or charge. While detained, Petitioner remains physically confined and deprived of his liberty as his immigration case proceeds through the administrative process.

24.     On information and belief, no immigration officer or decisionmaker has determined that physical confinement is justified by a legitimate governmental purpose in Petitioner's case— i.e., the risk of flight or danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022). On information and belief, no Immigration Judge or other judge or magistrate has conducted an individualized custody determination assessing whether Petitioner's continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release. *See id.*

25.     Although Petitioner's detention is civil in character, it has resulted in ongoing physical confinement without release. Petitioner remains detained while his immigration proceedings continue, without any individualized custody review reflected in the record. As a result, Petitioner continues to suffer a deprivation of physical liberty solely on the basis of civil

---

[7] Again, counsel has not yet had an opportunity to speak with Petitioner in a reliably privileged and confidential setting and therefore reserves all rights of Petitioner to amend the Petition upon an opportunity for a privileged and confidential consultation and receipt of subsequent information.

immigration detention. Petitioner's detention has imposed significant restraint on his freedom of movement and personal autonomy.

26.     On information and belief, there has been no mechanism by which Petitioner has received a meaningful opportunity to challenge the necessity of his continued detention. Absent judicial intervention, Petitioner will remain detained without any opportunity to contest whether his continued confinement is lawful, necessary, or justified.

## STANDARD OF LAW

27.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (cleaned up). A petitioner may seek a writ of habeas corpus when their custody violates the US Constitution or a federal law, 28 U.S.C. § 2241(c)(3), which should be granted if the petitioner meets their burden of proof–a preponderance of evidence. *See Post v. Boles*, 332 F.2d 738, 742 (4th Cir. 1964); *see also*, *e.g.*, *Aroca v. Mason*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *6 (S.D.W. Va. Feb. 9, 2026) (Goodwin, J.).

28.     The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless a petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless *for good cause* additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

29.     Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda*, 34 F.4th at 351. This Court and many other district courts have

declined to require prudential exhaustion when evaluating a detained immigrant's petition under similar circumstances. *See*, *e.g.*, *Briceno Solano v. Mason*, No. 2:26-cv-00045, ___ F.Supp.3d ___, 2026 WL 311624, at *8 (S.D.W. Va. Feb. 4, 2026) (Johnston, J.).

30.     "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also*, *e.g.*, *Aroca v*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *18-19.

31.     In July of 2025, DHS began ignoring the decades-long consensus of how 8 U.S.C. § 1225(b)(2) should be interpreted; the Board of Immigration Appeals ("BIA") articulated this new policy in a subsequent precedential ruling. *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA Sept. 5, 2025). Respondents now claim that individuals who are arrested while residing within the United States are somehow "seeking admission."

32.     However, the overwhelming majority of district courts across the country—and every judge in the Southern District of West Virginia to rule on this issue—have made clear that 8 U.S.C. § 1225(b)(2) only authorizes detention for noncitizens who are at the border seeking physical entry at the time of detention, not those who reside in the United States, whose detention is discretionary and governed by 8 U.S.C. § 1226(a). *See*, *e.g.*, *Umarov v. Mason* No. 2:26-cv-00081, 2026 WL 381614, at *1 (S.D.W. Va. Feb. 11, 2026) (Berger, J.) ("As dozens, perhaps hundreds, of courts have found in thousands of cases in recent months, the United States government has again violated the United States Constitution by arresting and detaining a person without due process and without statutory authority."); *Briceno Solano v. Mason*, No. 2:26-cv-00045, 2026 WL 311624, at *10-15.

33.     Only under certain circumstances are immigrants subject to ongoing detention without a bond hearing. *See*, *e.g.*, 8 U.S.C. § 1226(c) (individuals with certain criminal convictions may be detained without a bond hearing for the pendency of removal proceedings[8]) *and* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (authorizing mandatory detention of immigrants in expedited removal proceedings).

34.     Otherwise, the "default rule" is that detention of immigrants already present in the United States and subject to pending removal proceedings is governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

35.     Under this default rule, detained immigrants are constitutionally and statutorily entitled to both an initial custody determination by an immigration officer and a prompt bond hearing. *See*, *e.g.*, *Simanca Gonzalez v. Aldridge*, No. 3:26-0055, 2026 WL 313476, at *6 (S.D.W. Va. Feb. 5, 2026) (Chambers, J.); *Miranda*, 34 F.4th at 362.

## CLAIMS FOR RELIEF

### COUNT ONE

### Fifth Amendment Due Process

*Petitioner is being deprived of an adequate and meaningful process to challenge his ongoing confinement.*

36.     Petitioner realleges and incorporates by reference the allegations contained above.

37.     Petitioner has due process rights as a resident of the United States. *Zadvydas*, 533 U.S. at 693.

38.     Civil immigration detention is constitutionally permissible only when it is reasonably related to a legitimate governmental purpose and is accompanied by adequate

---

[8] Even when detained under 1226(c), immigrants retain due process rights and are entitled to a hearing if the period of detention becomes unreasonable. *See*, *e.g.*, *Portillo v. Hott,* 322 F. Supp. 3d 698, 709 (E.D. Va. 2018).

procedural safeguards. Detention that becomes arbitrary or imposed without proper statutory authority violates the Due Process Clause.

39.    Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

40.    Here, all three factors favor the petitioner.

41.    First, Petitioner has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner currently experiences the gambit of deprivations that come with physical detention, including separation from his family and community, barriers to full participation in his pending immigration proceedings, and forced imprisonment under inhumane conditions.

42.    Second, Petitioner has already been deprived of this interest and will continue to be deprived of this interest if the current procedure (detaining Petitioner without a legal basis) is followed. Petitioner was already deprived of an initial custody determination, when he was arrested on a civil immigration violation without consideration of Petitioner's individual circumstances indicating a lack of threat to the community or risk of flight. *See Miranda*, 34 F.4th at 362 (first

opportunity for release under 1226(a) occurs "almost immediately" after arrest); *Tumba v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025) (holding that the violation of Petitioner's due process rights "originated with her detention in the first instance"). And even if Petitioner were properly detained pursuant to a determination under 8 U.S.C. § 1226(a), he has a strong likelihood of meeting the criteria for being released on bond. 8 CFR 236.1(c)(8); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999).

43.     Lastly, the Government has no legitimate interest in refusing to follow its own rules. Petitioner poses no safety threats to the community. No evidence indicates a likelihood of absconding. Releasing him, or holding a hearing to release him on bond, would in fact *save* the government the resources and expense of continuing to imprison him. *See*, *e.g.*, *Briceno-Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *19.

44.     The placement of Petitioner in detention pending the resolution of his ongoing immigration court proceedings violates Petitioner's constitutional right to due process guaranteed by the Fifth Amendment.

## COUNT TWO

### Immigration and Nationality Act, 8 U.S.C. § 1226

*Petitioner's Ongoing Detention, without the Opportunity for an Initial Custody Determination and a Bond Hearing, Violates his Statutory Rights Under 8 U.S.C. § 1226(a)*

45.     Petitioner realleges and incorporates by reference the allegations contained above.

46.     Respondents' attempt to apply mandatory detention through 8 U.S.C. § 1225(b)(2) to Petitioner violates the Immigration and Nationality Act.

47.     Petitioner is detained without being afforded an opportunity to advocate for his release back into their community as the law requires.

48.     In the absence of an individualized custody determination, Petitioner's continued detention is not meaningfully tethered to the limited statutory purposes authorized by the Immigration and Nationality Act and its implementing regulations.

## COUNT THREE
### Violation of the Administrative Procedure Act

49.     Petitioner realleges and incorporates by reference the allegations contained above.

50.     The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

51.     The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

52.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States. Such noncitizens could potentially be detained under § 1226(a) but would then be eligible for release on bond unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

53.     Nonetheless, the Board has adopted a policy and practice of applying § 1225(b)(2) to Petitioner and others in the same position.

54.     Respondents through its recent administrative decision failed to articulate any reasoned explanations for new interpretation of the Act. The Board's decision represents a change in the agencies' policies and positions that negates the plain language of the Act, the will of Congress, and decades of administrative precedent.

13

55.     The application of § 1225(b)(2) to Petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA.  See 5 U.S.C. § 706(2).

56.     Further, the continued detention of Petitioner in the absence of any articulated individualized assessment addressing whether detention is necessary to ensure appearance at future proceedings or to protect the community in light of Petitioner's individual circumstances constitutes arbitrary and capricious agency action and must be set aside.

## COUNT FOUR
### Violation of the Equal Protection Guarantee of the Fifth Amendment

57.     Petitioner realleges and incorporates by reference the allegations contained above.

58.     The Fifth Amendment prohibits the federal government from treating similarly situated persons differently unless the differential treatment bears a rational relationship to a legitimate governmental purpose.

59.     By continuing to detain Petitioner without providing access to an individualized custody determination, the Department of Homeland Security has subjected him to disparate treatment that is not supported by a rational justification tied to the purposes of civil immigration detention.

60.     The unequal denial of access to individualized custody process, as applied to Petitioner, lacks a rational basis and violates the equal protection component of the Fifth Amendment.

## COUNT FIVE
### Violation of the Suspension Clause of the United States Constitution

61.     Petitioner realleges and incorporates by reference the allegations contained above.

62.     The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion

or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Suspension Clause guarantees the availability of judicial review to test the legality of executive detention.

63.    Where no adequate and effective administrative substitute exists to permit review of executive detention, habeas corpus remains the sole means through which a detained individual may challenge the lawfulness of confinement.

64.    Absent access to habeas corpus review, Petitioner would have no forum in which to test whether his continued civil immigration detention exceeds the limits imposed by the Immigration and Nationality Act and the Constitution.

65.    The Suspension Clause forbids the government from maintaining a detention framework that eliminates all meaningful opportunity for a detainee to challenge the legality of executive confinement.

66.    Petitioner's continued civil immigration detention, without access to any individualized custody review, falls within the core protections safeguarded by the Suspension Clause.

67.    By continuing to detain Petitioner under civil immigration authority without providing any meaningful mechanism to challenge the legality of his confinement, Respondents have violated the Suspension Clause of the United States Constitution.

## **REMEDY**

68.    The appropriate remedy for Respondents' unlawful conduct as outlined in this complaint is for Petitioner to be released.

69.    Immigration detention is civil in nature, and as a result Congress must have expressly authorized it by statute, and the detention must be reasonably related to its statutory purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

70.    Since Section 1225 does not apply to noncitizens who are in Petitioner's situation–who have been detained while residing within the United States—the law that Respondents are using to detain Petitioner simply does not authorize Petitioner's detention.

71.    When a habeas petitioner's detention is without legal basis, the typical remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

72.    Respondents likely will argue that if the Court rules that Petitioner should have been detained pursuant to § 1226, instead of § 1225, then the remedy is a bond hearing as opposed to outright release. Every Judge in this jurisdiction to rule on this issue has found that immediate release is the appropriate remedy when a Petitioner challenges their unlawful detention under Respondents' current policy of subjecting noncitizens residing within the United States to mandatory incarceration under § 1225(b). *Briceno Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *21 ("Respondents are **PROHIBITED** from re-arresting and detaining petitioner pending further order of this Court."); *Estrada Reyes v. Aldridge*, No. 3:26-0084 at *4 n. 6 (S.D.W. Va. Feb. 13, 2026) ("The Court finds the broad language [prohibiting re-arrest and detention] appropriate given Respondents' record of a lack of compliance with Court orders and common practice of unlawfully detaining undocumented individuals."); *Barcarcel Perez v. Mason*, No. 2:26-cv-00108, ECF No. 23, p. 2 n. 1 (adopting this language and "concur[ing] with the Petitioner that the language previously used"—i.e., prohibiting "re-arrest and detention absent a significant change in circumstances to justify detention"—provides "inadequate protection due to the Respondents' lack of lack of respect for the law") *Larrazabal-Gonzalez v. Mason*, No. 2:26-CV-00049, 2026 WL 221706, at *6 (S.D.W. Va. Jan. 28, 2026).

73.     *See also*, *e.g.*, *Ahmed M. v. Bondi*, No. 25-cv-4711, 2026 WL 25627, at *3 (D. Minn. 2026) (Tostrud, J.); *Tzi v. Jamison*, No. 26-0099, 2026 WL 116486, *3 (E.D. Pa. Jan. 15, 2026) (ordering petitioner's immediate release and noting that "[s]ince Tzi has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful"); *Rodriguez v. Rokosky* No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) ("the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification").

74.     Here, release is the most appropriate remedy. First, detention is unlawfully based on 8 U.S.C. §1225, which does not apply to Petitioner, and Respondents have failed to properly invoke any valid statutory basis for detention. Second, even if 8 U.S.C. §1226 were properly invoked, Petitioner has already suffered a deprivation of the custody determination process which he was due. Moreover, as explained by the Fourth Circuit in *Miranda*:

> [The Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention. The first opportunity is with an immigration officer. *Id.* § 1225(a). An immigration officer is authorized to release the [noncitizen] if the officer is satisfied that the [noncitizen] is not a danger to the community or a flight risk. 8 C.F.R. § 236.1(c)(8). If the immigration officer decides to release a[ ] [noncitizen], the officer may set a bond or place conditions on the [noncitizen's] release. *Id.* If an immigration officer denies bond, sets bond at an amount the [noncitizen] believes is too high or sets alternative conditions to bond the [noncitizen] contends are unreasonable, a[ ] [noncitizen] may appeal the officer's bond determination to an immigration judge, giving the [noncitizen] a second opportunity at release. . . .
>
> The first [opportunity], which occurs before an immigration officer, occurs almost immediately upon an alien being detained. The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter.

34 F.4th at 346-47, 362.

75.     While many of the recent decisions regarding § 1225 and § 1226 focus exclusively on the second opportunity for release discussed in *Miranda*—i.e., detainees' right to a bond

hearing—Petitioner here was not merely entitled to a bond hearing following his arrest (assuming that the government's authority pursuant to § 1226 had been properly invoked at that time, which Petitioner reserves the right to further contest following consultation with counsel). He was also entitled to an *ex ante* release determination by an immigration officer prior to his incarceration. On information and belief, here, Petitioner was afforded no such individualized determination by any immigration officer. Petitioner was also arrested with no showing that changed circumstances justified the deprivation of his liberty and absent compliance with statutory, regulatory, and constitutional requirements. These due process violations cannot be remedied by a *post facto* bond hearing following continued unlawful incarceration. Immediate release is the only adequate remedy.

76.     Additionally, implicit in the *Miranda* court's holding that the three-step custody determination process afforded to persons detained under § 1226 is constitutionally adequate is the assumption that immigrants will be afforded *fair* hearings in front of *neutral* immigration judges. This assumption is increasingly untenable. *See Exhibit A*, *Declaration of Jorge E. Artieda of January 28, 2026*. In the attached declaration, Mr. Artieda—former legal counsel to ICE in Washington D.C. and Virginia—details evidence of what "appears to be a systematic effort to nullify the constitutional protections that federal courts have recognized and enforced through habeas corpus" through the reassignment of Immigration Judges and the use of pretextual and legally insufficient rationales for denying bond. *See id.* at ¶¶ 1-2, 16-20, 26, 32 and generally.

77.     *See also Exhibit B*, *Affidavit of Lawerence O. Burman of February 13, 2026.* Mr. Burman—who served as counsel for Immigration and Naturalization Services from 1988 to 1998 and then as an Immigration Judge from April 1998 until December 31, 2025—presided over both detained and non-detained immigration court dockets in his 27 years as an Immigration Judge. *Id.*

at ¶¶ 3-8. In his affidavit, he attests to "a troubling trend of Immigration Judges being terminated without explanation or notice" since January 2025 and notes that he has "never witnessed such a high level of turnover" during his 27 years on the bench. *Id.* at ¶ 18. Mr. Burman attests that, based on his "conversations with the immigration bench and professional organizations, including the National Association of Immigration Judges (of which [he] was an officer), it is clear that judges were removed for their strong commitment to due process for those appearing before them." *Id.* at ¶ 19. Mr. Burman attests to "increasing concern among members of the bench about institutional intimidation and the perception that decisions unfavorable to the government could negatively affect judicial tenure." *Id.* at ¶ 20. Mr. Burman concludes his affidavit by expressing his "concern[ ] that the notable rise in bond denials and adverse case outcomes undermines due process and erodes confidence in the Immigration Court system" *Id.* at ¶ 21. This affidavit and Mr. Artieda's declaration corroborate each other in substantial part, including with respect to the recent, abrupt reassignment of multiple Immigration Judges on the Annandale, Virginia detained docket. *See id.* at ¶¶ 15-17; *Exhibit A* at ¶¶ 12-15.

78.     A bond hearing in front of an immigration judge is an inadequate remedy if Respondents cannot establish that the hearing officer will be a genuinely neutral and detached decisionmaker, rather than an agent of the executive branch under circumstances indicating a substantial likelihood of bias. *See Briceno Solano,* 2026 WL 311624, at *20; *Tinajero Rodriguez v. Mason*, Civil Action No. 2:26-cv-00122, ECF No. 20 (S.D.W. Va. Feb. 24, 2026) (Berger. J.), p. 3 n. 3: *Hamdi*, 542 U.S. at 533.

79.     To the extent this Court deems a bond hearing the appropriate remedy, Petitioner respectfully requests that the Court order that Petitioner be released unless a bond hearing pursuant to 8 U.S.C. 1226, at which the government bears the burden of proof, is held within five (5) days

of this Court's order. *See Campos-Flores*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303; *Lopez*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, at *3, 2025 U.S. Dist. LEXIS 232158. Petitioner also requests that any bond hearing occur before an Article III court rather than an immigration judge.

## **PRAYER FOR RELIEF**

Petitioner therefore respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative afforded a bond hearing before a neutral judge, at which the government bears the burden to prove by clear and convincing evidence that continued detention is justified based on danger to the community or risk of flight;

3. Issue an Order requiring Respondents to IMMEDIATELY investigate the circumstances of Petitioner's detention upon receipt of service of the Petition and IMMEDIATELY RELEASE Petitioner to the extent Respondents do not have a good-faith basis to assert that they will present arguments in this case that have not already been considered and rejected by this Court, and explicitly notify Respondents that failure to comply with this Order shall subject them to potential sanctions including contempt;

4. Declare that Petitioner's continued detention violates the Immigration and Nationality Act, its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

5. Permanently enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1225 and enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1226 absent notice, a reasonable opportunity to obtain counsel, a hearing before a neutral officer at which

Respondents bear the burden of justifying the detention under a clear and convincing evidence standard, and prior leave of this Court;

6.  Order that Petitioner be released with all property seized by Respondents incident to his detention, specifying that such property shall be returned to Petitioner **at the time of his release**;

7.  Order that Respondents take all reasonable measures to ensure that all subordinate agencies and officers are on notice of this Court's order to ensure that agents of Respondents do not negligently violate the order; and

8.  Grant such other and further relief as the Court deems just and proper.

Dated: 2 March 2026

                                                              **Respectfully submitted,**
**COUNSEL FOR PETITIONER**

Jonathan Sidney
*Pro Hac Vice* Pending
Colorado Bar No. 52463
Ohio Bar No. 0100561
P.O. Box 97
Forest Hill, WV
Phone: (681) 335-0074
jsidney@climatedefenseproject.org

/s/ *Sarah K. Brown*
Sarah K. Brown (WVSB #10845)
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Phone: (304) 344-3144
sarah@msjlaw.org

**<u>Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. 2242</u>**

I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I have discussed with a member of Petitioner's family the events described in this Petition.[9] I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

<u>/s/ Jonathan Sidney</u>                                          Date: March 2, 2026

---

[9] I have not yet extensively discussed the events described in the Petition with Petitioner due to my lack of reliably privileged and confidential communication with Petitioner to date.