UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **ESWIN GONZALEZ-HERNANDEZ,**<br><br>Petitioner,<br><br>v.<br><br>**LEONARD ODDO**, Facility Administrator of the Moshannon Valley Processing Center; **JOHN RIFE**, Field Office Director, Philadelphia Field Office, United States Immigration and Customs Enforcement; **TODD M. LYONS**, Acting Director, United States Immigration and Customs Enforcement; **KRISTI NOEM**, Secretary of Homeland Security; **PAMELA JO BONDI**, United States Attorney General, *in their official capacities*,<br><br>Respondents. | Civ. Act. No.: |

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

1. Petitioner, Eswin Gonzalez-Hernandez, by and through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge his ongoing civil immigration detention by the United States Department of Homeland Security and its agents. Petitioner is a citizen and national of Guatemala and is currently detained in the custody of Immigration and Customs Enforcement at the Moshannon Valley Processing Center (MVPC) in Phillipsburg, Pennsylvania at or around the time of filing of this petition.

1

2. Petitioner seeks immediate release from immigration detention, or in the alternative, a constitutionally adequate custody hearing before a neutral decisionmaker with authority to assess the necessity of detention and to order release on appropriate conditions.

3. Petitioner's continued civil confinement, apparently maintained without any individualized custody determination by a neutral decisionmaker authorized to assess flight risk, danger to the community, or the availability of conditions of release, violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. Civil immigration detention must bear a reasonable relation to its purported purpose and may not be imposed in a punitive or arbitrary manner. Accordingly, issuance of the writ of habeas corpus is warranted.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioner is in federal immigration custody and challenges the legality of his ongoing civil immigration detention by the United States Department of Homeland Security and its officers. The relief sought lies at the core of the writ of habeas corpus.

5. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action raises questions of federal law arising under the Constitution and laws of the United States, including the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.

6. The Suspension Clause of the United States Constitution independently guarantees Petitioner the right to seek habeas corpus review to test the legality of his physical confinement where no other adequate and effective remedy exists.

7. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because Petitioner was detained in this District, a substantial part of the events giving rise to the claims in this action took place in this District, and Petitioner would still be detained in this District if he

had not been transported out of the District for the purpose of evading the jurisdiction of this Court. *See generally Rumsfeld v. Padilla*, 542 U.S. 426, 451-55 (2024) (Kennedy, J., concurring); *Suri v. Trump*, 785 F.Supp.3d 128 (E.D. Va. 2025).[1]

8. In habeas challenges to physical confinement, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official" and the "general rule" is that "jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 435, 443.

9. However, the "immediate custodian" and territorial jurisdiction rules set forth in the *Padilla* majority "are not jurisdictional in the sense of a limitation on subject-matter jurisdiction." *Id.* at 451 (Kennedy, J., concurring); *see also Padilla*, 542 U.S. at 434 n. 7 (recognizing that the opinion in *Padilla* does not use the term "jurisdiction" to mean "subject-matter jurisdiction of the District Court"); *Kanai v. McHugh*, 638 F.3d 251, 258 (4th Cir. 2011); *Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2026 WL 309631, at *6 (D. Utah Feb. 5, 2026) ("Courts have held that the district-of-confinement rule is not a limitation on subject matter jurisdiction, but rather a venue consideration."); *Gabriel A.H.L. v. Noem*, No. CV 26-860 (JRT/EMB), 2026 WL 323106, at *2 (D. Minn. Feb. 6, 2026) (invoking Justice Kennedy's concurrence and finding venue for immigration habeas petition proper in Minnesota even though

---

[1] Justice Kennedy's concurrence was also joined by Justice O'Connor, who together constituted two members of the five-Justice majority opinion in *Padilla*. The majority opinion in *Padilla* must be read in light of this concurrence. *See Suri*, 785 F.Supp.3d at 138 ("[B]ecause Justice Kennedy and Justice O'Connor's votes were necessary to the formation of a majority, Justice Kennedy's opinion is at least given particular weight.") (internal quotations omitted).

Other district courts have noted that *Padilla* leaves open the question of whether the "district of confinement" rule or the traditional venue standard governs venue in the specific context of immigration detention cases. *See Navarro v. Gonzales*, No. C05-5107 TEH., 2006 WL 954191, at *2 (N.D. Cal. Apr. 12, 2006); *Chen v. Holder*, No. 6:14-2530, 2015 WL 13236635, at *2-3 (W.D. La. Nov. 20, 2015). Here, traditional venue factors strongly favor this Court's retention of jurisdiction.

3

Petitioner's location in Texas was known to counsel at the time of filing); *Moore v Olson*, 368 F.3d 757, 759-60 (7th Cir. 2004).

10. Here, this Court should recognize an exception to the default rules set forth in *Padilla* and hold that venue is proper in the Southern District of West Virginia. First, MVPC—where Petitioner is currently held—is a "privately owned and operated secure immigration processing center."[2] This in itself provides a reason to depart from the default rules of *Padilla*. *See Saravia v. Sessions*, 280 F.Supp.3d 1168, 1185 (N.D. Cal. 2017) (holding that where a detainee is "held in a facility solely pursuant to a contract, rather than by the state or federal government itself, application of the immediate custodian rule must take account of that fact" and that the detainee should "sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ").

11. Second, and perhaps more importantly here, Justice Kennedy's concurrence in *Padilla* contemplates that additional exceptions to the default jurisdictional rule set forth in *Padilla* may be recognized, including exceptions resulting from government conduct obstructing access to courts. *Id.* at 454; *see also id.* at 453 (noting that, in that case, there was "no need to consider some further exception to protect the integrity of the writ or the rights of the person detained"); *Suri*, 785 F.Supp.3d at 139 ("the very nature of the writ [of habeas corpus] demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected") (internal quotations omitted).

12. Notably, counsel for Petitioner had scheduled a phone call with Petitioner at Western Regional Jail (WRJ), which was to take place the morning of Friday, February 27—the

---

[2] *See* https://www.geogroup.com/facilities/moshannon-valley-processing-center/ (last accessed March 6, 2026).

morning after Petitioner's detention on Thursday, February 26.[3] While on the phone with other ICE detainees at WRJ that morning, counsel was informed that Petitioner and others would be transferred, and it was understood that their destination would be South Central Regional Jail (SCRJ) via the ICE processing facility in Poca.

13. This transfer to SCRJ did not proceed as scheduled. ICE arrived at SCRJ with Petitioner and other detainees from WRJ at approximately 4:00 P.M. *See Exhibit A*, *Declaration of Donnie Ames of March 5, 2026.* Mr. Ames serves as Immigration and Customs Enforcement Liaison for the West Virginia Department of Corrections (DCR). *Id.* Around 4:00 P.M. on February 27, Mr. Ames received a call from Major Michael Toney, who supervises DCR booking, informing him that ICE had received a court order[4] of which DCR was not yet in possession. *Id.* Major Toney stated that ICE intended to transfer seven inmates from WRJ, but due to the order, ICE would not be committing these inmates to SCRJ. *Id.* When Mr. Ames contacted ICE, he was informed that ICE would be moving the detainees and not committing them to SCRJ because of the recent court order. *Id.* Mr. Ames's declaration explicitly states that at the time ICE made this decision, the detainees could have been processed into SCRJ, as no directive from DCR counsel or administration prohibited their admission at that time. *Id.*

14. Mr. Ames' declaration further indicates that ICE later requested to book these detainees into a different DCR facility, Northern Regional Jail (NRJ). *Id.* NRJ is in the Northern District of West Virginia. That request was ultimately denied. *Id.*

---

[3] Counsel can provide documentation of such to the extent this is disputed.

[4] *See*, *e.g.*, *Lezama-Hernandez v. Mason*, Civil Action No. 2:26-cv-00148, ECF No. 18, pp. 5-11 (one of seven substantially similar orders issued on February 27, 2026, providing notice to Respondents of their continuous pattern of constitutional violations and warning Respondents of the possibility of civil liability, contempt, and other consequences should the pattern of constitutional violations continue).

15. Based on the information available to counsel at this time, including the declaration from Mr. Ames, it appears that Petitioner was transferred out of the Southern District of West Virginia in direct response to Judge Goodwin's orders. All credible evidence indicates that ICE chose to try and evade the jurisdictional authority the Court which has clarified "over and over and over" that ICE's activity is unlawful and unconstitutional. *See*, *e.g.*, *Lezama-Hernandez v. Mason*, No. 2:26-cv-00148, ECF 18, p. 7 (collecting authorities). This Court should not countenance such a shameless attempt to evade its jurisdiction and should find that venue in the Southern District of West Virginia is proper under the exceptional circumstances of this case.[5]

## PARTIES

16. Petitioner Eswin Gonzalez-Hernandez is a citizen and national of Guatemala and is detained at MVPC. As of the date of this filing, he is in his ninth day in ICE custody since he was arrested on February 26, 2026.

17. Respondent Leonard Oddo is the Facility Administrator of the Moshannon Valley Processing Center, where Petitioner is currently detained. He is the physical custodian of Petitioner and is named in his official capacity.

18. Respondent John Rife is the Field Office Director responsible for the Philadelphia Field Office of ICE with administrative jurisdiction over Petitioner's immigration case. He is a legal custodian of Petitioner and is named in his official capacity.

19. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

---

[5] Respondents may properly waive any objections based on the immediate-custodian and territorial-jurisdiction rules. *See Padilla*, 542 U.S. at 452 (Kennedy, J., concurring). Petitioner submits that Respondents have waived any objections by virtue of their bad-faith conduct in this case. To the extent Respondents intend to raise a venue/jurisdictional objection here and dispute Petitioner's representations herein, Petitioner will seek expedited discovery on the facts and circumstances surrounding Petitioner's transfer to MVPC to enable full, fair, and prompt adjudication on the factual question of whether Petitioner was transferred based upon Respondents' intent to evade the jurisdiction of the Southern District of West Virginia in habeas corpus and related matters.

20. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

21. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

## FACTUAL BACKGROUND

22. Petitioner Eswin Gonzalez-Hernandez is a citizen and national Guatemala who most recently resided in Pennsylvania. On information and belief, he entered the United States on a work visa in May 2024.

23. Petitioner is currently detained in the custody of Immigration and Customs Enforcement. On February 26th, Petitioner was arrested after the vehicle in which he was a passenger was pulled over on route 64 near exit 20. Petitioner is unaware of any lawful basis for the stop. The officer asked every individual in the vehicle (including Jesus Lopez-Bonilla and Jose Manuel Lopez-Espinola, petitioners in a separately filed action) for identification. Four individuals in the vehicle were arrested and taken to Western Regional Jail in Barboursville, WV.

24. The following morning, on February 27th, Petitioner was taken to the ICE processing center in Poca, WV. As detailed above, he was then taken (although not processed into) SCRJ and eventually taken to MVPC after DCR declined to admit him to NRJ.

25. Petitioner's detention is civil and administrative in nature. On information and belief, Petitioner's confinement is not based on any criminal conviction or charge. While detained, Petitioner remain physically confined and deprived of his liberty as his immigration case proceeds through the administrative process.

26. On information and belief, no immigration officer or decisionmaker has determined that physical confinement is justified by a legitimate governmental purpose in Petitioner's case—i.e., the risk of flight or danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022). On information and belief, no Immigration Judge or other judge or magistrate has conducted an individualized custody determination assessing whether Petitioner's continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release. *See id.*

27. Although Petitioner's detention is civil in character, it has resulted in ongoing physical confinement without release. Petitioner remains detained while his immigration proceedings continue, without any individualized custody review reflected in the record. As a result, Petitioner continues to suffer a deprivation of physical liberty solely on the basis of civil immigration detention. Petitioner's detention has imposed significant restraint on his freedom of movement and personal autonomy.

28. On information and belief, there has been no mechanism by which Petitioner has received a meaningful opportunity to challenge the necessity of his continued detention. Absent judicial intervention, Petitioner will remain incarcerated absent the *ex ante* individualized custody determination which he was due at the time of his detention and absent the opportunity for a prompt custody determination by a genuinely neutral and detached adjudicatory body.[6]

## STANDARD OF LAW

29. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The "Great Writ" has been referred to by US Courts as

---

[6] There is substantial reason to believe that any bond hearing Petitioner might eventually receive in immigration court would not be conducted by a fair and neutral adjudicatory body. *See Exhibit B*, *Declaration of Jorge E. Artieda of January 28, 2026*; Exhibit C, *Affidavit of Lawrence O. Burman of February 13, 2026*, discussed further in the "REMEDY" section, *infra*.

"perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (cleaned up). A petitioner may seek a writ of habeas corpus when their custody violates the US Constitution or a federal law, 28 U.S.C. § 2241(c)(3), which should be granted if the petitioner meets their burden of proof–a preponderance of evidence. *See Post v. Boles*, 332 F.2d 738, 742 (4th Cir. 1964); *see also*, *e.g.*, *Aroca v. Mason*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *6 (S.D.W. Va. Feb. 9, 2026) (Goodwin, J.).

30. The Court must grant a petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless a petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless *for good cause* additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

31. Detained immigrants challenging their confinement as unlawful face no statutory exhaustion requirements. *Miranda*, 34 F.4th at 351. This Court and many other district courts have declined to require prudential exhaustion when attempts at exhaustion would be futile. *See*, *e.g.*, *Briceno Solano v. Mason*, No. 2:26-cv-00045, ___ F.Supp.3d ___, 2026 WL 311624, at *8 (S.D.W. Va. Feb. 4, 2026) (Johnston, J.).

32. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also*, *e.g.*, *Aroca v*, No. 2:26-cv-00057, ___ F.Supp.3d ___, 2026 WL 357872, at *18-19.

33. It is no secret that this country is currently experiencing a massive uptick in unlawful civil immigration detentions. *See*, *e.g.*, *Umarov v. Mason* No. 2:26-cv-00081, 2026 WL

381614, at *1 (S.D.W. Va. Feb. 11, 2026) (Berger, J.) ("As dozens, perhaps hundreds, of courts have found in thousands of cases in recent months, the United States government has again violated the United States Constitution by arresting and detaining a person without due process and without statutory authority.").

34. As this Court has noted, "[o]ther courts have found that DHS is detaining people 'to fulfill an arrest quota' rather than based on any individual determination that those detained pose a danger or flight risk." *Id.* at *2, *citing Rangel v. Knight*, No. 1:25-CV-00607-BLW, 2025 WL 3229000, at *8 (D. Idaho Nov. 19, 2025) and *Pichardo Medina v. Hermosilla*, No. 3:25-CV-02233-MC, 2025 WL 3712271, at fn. 6 (D. Or. Dec. 22, 2025).

35. The "default rule" is that detention of immigrants already present in the United States and subject to pending removal proceedings is governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

36. Under this default rule, detained immigrants are constitutionally and statutorily entitled to both an initial custody determination by an immigration officer and a prompt bond hearing. *See*, *e.g.*, *Simanca Gonzalez v. Aldridge*, No. 3:26-0055, 2026 WL 313476, at *6 (S.D.W. Va. Feb. 5, 2026) (Chambers, J.); *Miranda*, 34 F.4th at 362.

37. Two Judges of this Court have recently ordered the immediate release of habeas petitioners detained under 8 U.S.C. § 1226(a) who had not received an initial custody determination following incarceration. *See Sanchez Martinez v. Mason*, No. 2:26-cv-00110, ECF No. 20 (S.D.W. Va. Feb. 23, 2026) (Goodwin, J.), pp. 3-5; *Tinajero Rodriguez v. Mason*, No. 2:26-cv-00122, ECF No. 20 (S.D.W. Va. Feb. 24, 2026) (Berger, J.), pp. 2-4.

## CLAIMS FOR RELIEF

### COUNT ONE

**Fifth Amendment Due Process**

*Petitioner is being deprived of an adequate and meaningful process to challenge his ongoing confinement.*

38. Petitioner realleges and incorporates by reference the allegations contained above.

39. Petitioner has due process rights as a resident of the United States. *Zadvydas*, 533 U.S. at 693.

40. Civil immigration detention is constitutionally permissible only when it is reasonably related to a legitimate governmental purpose and is accompanied by adequate procedural safeguards. Detention that becomes arbitrary or imposed without proper statutory authority violates the Due Process Clause.

41. Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

42. Here, all three factors favor the petitioner.

43. First, Petitioner has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner currently experiences the gambit of deprivations that come with physical detention, including separation from his family and

community, barriers to full participation in his pending immigration proceedings, and forced imprisonment under inhumane conditions.

44. Second, Petitioner has already been deprived of this interest and will continue to be deprived of this interest if the current procedure (detaining Petitioner without a legal basis) is followed. Petitioner was already deprived of an initial custody determination, when he was arrested on a civil immigration violation without consideration of Petitioner's individual circumstances indicating a lack of threat to the community or risk of flight. *See Miranda*, 34 F.4th at 362 (first opportunity for release under 1226(a) occurs "almost immediately" after arrest); *Tumba v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025) (holding that the violation of Petitioner's due process rights "originated with her detention in the first instance."). And even if Petitioner were properly detained pursuant to a determination under 8 U.S.C. § 1226(a), he has a strong likelihood of meeting the criteria for being released on bond. 8 CFR 236.1(c)(8); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999).

45. Lastly, the Government has no legitimate interest in refusing to follow its own rules. Petitioner poses no safety threats to the community. No evidence indicates a likelihood of absconding. Releasing him would in fact *save* the government the resources and expense of continuing to imprison him. *See*, *e.g.*, *Briceno-Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *19.

46. The placement of Petitioner in detention pending the resolution of his ongoing immigration court proceedings violates Petitioner's constitutional right to due process guaranteed by the Fifth Amendment.

## COUNT TWO
### Immigration and Nationality Act

*Petitioner's Ongoing Detention, Without the Opportunity for an Initial Custody Determination or a Fair Bond Hearing, Violates his Statutory Rights Under 8 U.S.C. § 1357(a)(2) and § 1226(a).*

47. Petitioner realleges and incorporates by reference the allegations contained above.

48. Petitioner's warrantless detention was *ultra vires* in violation of 8 U.S.C. § 1226(a) and § 1357(a)(2).

49. Petitioner is detained without being afforded a prompt or meaningful opportunity to advocate for his release back into their community as the law requires.

50. In the absence of an individualized custody determination, Petitioner's continued detention is not meaningfully tethered to the limited statutory purposes authorized by the Immigration and Nationality Act and its implementing regulations.

## COUNT THREE
**Violation of the Suspension Clause of the United States Constitution**

51. Petitioner realleges and incorporates by reference the allegations contained above.

52. The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Suspension Clause guarantees the availability of judicial review to test the legality of executive detention.

53. Where no adequate and effective administrative substitute exists to permit review of executive detention, habeas corpus remains the sole means through which a detained individual may challenge the lawfulness of confinement.

54. Absent access to habeas corpus review, Petitioner would have no forum in which to test whether his continued civil immigration detention exceeds the limits imposed by the Immigration and Nationality Act and the Constitution.

55. The Suspension Clause forbids the government from maintaining a detention framework that eliminates all meaningful opportunity for a detainee to challenge the legality of executive confinement.

56. Petitioner's arbitrary civil immigration detention falls within the core protections safeguarded by the Suspension Clause.

57. By continuing to detain Petitioner under civil immigration authority without providing any meaningful mechanism to challenge the legality of his confinement to date, and with no constitutionally adequate mechanism to challenge the legality of his confinement on the horizon, Respondents have violated the Suspension Clause of the United States Constitution.

## REMEDY

58. The appropriate remedy for Respondents' unlawful conduct as outlined in this complaint is for Petitioner to be released.

59. Immigration detention is civil in nature, and as a result Congress must have expressly authorized it by statute, and the detention must be reasonably related to its statutory purpose. *Zadvydas*, 533 U.S. at at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

60. When a habeas petitioner's detention is without legal basis, the typical remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention"); *Tinajero Rodriguez*, No. 2:26-cv-00122, ECF No. 20, p. 4 (release "is the traditional remedy in a successful habeas action for unlawful detention").

61. Respondents have already denied Petitioner the process he was due by summarily incarcerating him based on no offense other than the alleged failure to comply with the terms of his visa, in the absence of an individualized custody determination. Petitioner's continued civil detention is *ultra vires* and unjustified by the statutory and regulatory authorities governing

immigration detention. *See Sanchez Martinez*, No. 2:26-cv-00110, ECF No. 20, pp. 3-5; *Tinajero Rodriguez*, No. 2:26-cv-00122, ECF No. 20, pp. 2-4.

62. Respondents likely will argue that Petitioner's remedy is a bond hearing as opposed to outright release. Every Judge in this jurisdiction has found that immediate release is the appropriate remedy for unlawful civil immigration detention. *See Briceno Solano*, No. 2:26-cv-00045, 2026 WL 311624, at *21 ("Respondents are **PROHIBITED** from re-arresting and detaining petitioner pending further order of this Court."); *Estrada Reyes v. Aldridge*, No. 3:26-0084, 2026 WL 413210, at *4 n. 6 (S.D.W. Va. Feb. 13, 2026) (Chambers, J.) ("The Court finds the broad language [prohibiting re-arrest and detention] appropriate given Respondents' record of a lack of compliance with Court orders and common practice of unlawfully detaining undocumented individuals."); *Larrazabal-Gonzalez v. Mason*, No. 2:26-CV-00049, 2026 WL 221706, at *6 (S.D.W. Va. Jan. 28, 2026) (Goodwin, J.); *Umarov*, No. 2:26-cv-00081, 2026 WL 381614, at *1; *Simanca Gonzalez*, Civil Action No. 3:26-0055, 2026 WL 313476, at *6 (recognizing the right of immigrants detained pursuant to Section 1226(a) to a prompt individualized custody determination); *Tinajero Rodriguez v. Mason*, No. 2:26-cv-00122, ECF No. 20.

63. *See also*, *e.g.*, *Ahmed M. v. Bondi*, No. 25-cv-4711, 2026 WL 25627, at *3 (D. Minn. 2026) (Tostrud, J.); *Tzi v. Jamison*, No. 26-0099, 2026 WL 116486, *3 (E.D. Pa. Jan. 15, 2026) (ordering petitioner's immediate release and noting that "[s]ince Tzi has not had a bond hearing, even if I were to hold that he is detained pursuant to § 1226, his detention without a bond hearing would be unlawful"); *Rodriguez v. Rokosky* No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) ("the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification").

64. Here, release is the most appropriate remedy. Petitioner has already suffered a deprivation of the custody determination process which he was due. As explained by the Fourth Circuit in *Miranda*:

> [The Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention. The first opportunity is with an immigration officer. *Id.* § 1225(a). An immigration officer is authorized to release the [noncitizen] if the officer is satisfied that the [noncitizen] is not a danger to the community or a flight risk. 8 C.F.R. § 236.1(c)(8). If the immigration officer decides to release a[ ] [noncitizen], the officer may set a bond or place conditions on the [noncitizen's] release. *Id.* If an immigration officer denies bond, sets bond at an amount the [noncitizen] believes is too high or sets alternative conditions to bond the [noncitizen] contends are unreasonable, a[ ] [noncitizen] may appeal the officer's bond determination to an immigration judge, giving the [noncitizen] a second opportunity at release. . . .
>
> The first [opportunity], which occurs before an immigration officer, occurs almost immediately upon an alien being detained. The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter.

34 F.4th at 346-47, 362.

65. While many of the recent decisions regarding unlawful immigration detention focus exclusively on the second opportunity for release discussed in *Miranda*—i.e., detainees' right to a bond hearing—Petitioner here was not merely entitled to a bond hearing following his arrest (assuming that the government's authority pursuant to § 1226 had been properly invoked at that time, which it wasn't). He was also entitled to an *ex ante* release determination by an immigration officer prior to his incarceration. On information and belief, here, Petitioner was afforded no such individualized determination by any immigration officer. This due process violations cannot be remedied by a *post facto* bond hearing following continued unlawful incarceration. Immediate release is the only adequate remedy.

66. Additionally, implicit in the *Miranda* court's holding that the three-step custody determination process afforded to persons detained under § 1226 is constitutionally adequate is the

16

assumption that immigrants will be afforded *fair* hearings in front of *neutral* immigration judges. This assumption is increasingly untenable. *See Exhibit B*, *Declaration of Jorge E. Artieda of January 28, 2026*. In the attached declaration, Mr. Artieda—former legal counsel to ICE in Washington D.C. and Virginia—details evidence of what "appears to be a systematic effort to nullify the constitutional protections that federal courts have recognized and enforced through habeas corpus" through the reassignment of Immigration Judges and the use of pretextual and legally insufficient rationales for denying bond. *See id.* at ¶¶ 1-2, 16-20, 26, 32 and generally. While Mr. Artieda's declaration is written specifically to address post-habeas bond determinations, it nonetheless raises serious concerns about the lack of fairness and neutrality of the current immigration court system and its bond practices more generally.

67. *See also Exhibit C*, *Affidavit of Lawerence O. Burman of February 13, 2026.* Mr. Burman—who served as counsel for Immigration and Naturalization Services from 1988 to 1998 and then as an Immigration Judge from April 1998 until December 31, 2025—presided over both detained and non-detained immigration court dockets in his 27 years as an Immigration Judge. *Id.* at ¶¶ 3-8. In his affidavit, he attests to "a troubling trend of Immigration Judges being terminated without explanation or notice" since January 2025 and notes that he has "never witnessed such a high level of turnover" during his 27 years on the bench. *Id.* at ¶ 18. Mr. Burman attests that, based on his "conversations with the immigration bench and professional organizations, including the National Association of Immigration Judges (of which [he] was an officer), it is clear that judges were removed for their strong commitment to due process for those appearing before them." *Id.* at ¶ 19. Mr. Burman attests to "increasing concern among members of the bench about institutional intimidation and the perception that decisions unfavorable to the government could negatively affect judicial tenure." *Id.* at ¶ 20. Mr. Burman concludes his affidavit by expressing his "concern[

17

] that the notable rise in bond denials and adverse case outcomes undermines due process and erodes confidence in the Immigration Court system" *Id.* at ¶ 21. This affidavit and Mr. Artieda's declaration corroborate each other in substantial part, including with respect to the recent, abrupt reassignment of multiple Immigration Judges on the Annandale, Virginia detained docket. *See id.* at ¶¶ 15-17; *Exhibit A* at ¶¶ 12-15.

68. A bond hearing in front of an immigration judge is an inadequate remedy if Respondents cannot establish that the hearing officer will be a genuinely neutral and detached decisionmaker, rather than an agent of the executive branch under circumstances indicating a substantial likelihood of bias. *See Briceno Solano,* 2026 WL 311624, at *20; *Tinajero Rodriguez*, No. 2:26-cv-00122, ECF No. 20, p. 3 n. 3: *Hamdi*, 542 U.S. at 533.

69. To the extent this Court deems a bond hearing the appropriate remedy, Petitioner respectfully requests that the Court order that Petitioner be released unless a bond hearing pursuant to 8 U.S.C. 1226, at which the government bears the burden of proof, is held within five (5) days of this Court's order. *See Campos-Flores*, No. 3:25cv797, 2025 WL 3461551, at *7, 2025 U.S. Dist. LEXIS 235303; *Lopez*, No. 1:25-cv-01838-AJT-IDD, 2025 WL 3285493, at *3, 2025 U.S. Dist. LEXIS 232158. Petitioner also requests that any bond hearing occur before an Article III court rather than an immigration judge.

## PRAYER FOR RELIEF

Petitioner therefore respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;
2. Issue an Order requiring Respondents to show cause as to why Petitioner should not be released immediately, or in the alternative afforded a bond hearing before a neutral judge,

18

at which the government bears the burden to prove by clear and convincing evidence that continued detention is justified based on danger to the community or risk of flight;

3. Declare that Petitioner's continued detention violates the Immigration and Nationality Act, its implementing regulations, and the Due Process Clause of the Fifth Amendment to the United States Constitution;

4. Enjoin Respondents from re-detaining Petitioner absent notice, a reasonable opportunity to obtain counsel, a hearing before a neutral officer at which Respondents bear the burden of justifying the detention under a clear and convincing evidence standard, and prior leave of this Court;

5. Order that Petitioner be released with all property seized by Respondents incident to his detention, specifying that such property shall be returned to Petitioner **at the time of his release**;

6. Order that Respondents take all reasonable measures to ensure that all subordinate agencies and officers are on notice of this Court's order to ensure that agents of Respondents do not negligently violate the order; and

7. Grant such other and further relief as the Court deems just and proper.

Dated: 6 March 2026                                                **Respectfully submitted,**
                                                                    **COUNSEL FOR PETITIONER**

Jonathan Sidney                                                     /s/ *Sarah K. Brown*
*Pro Hac Vice* Pending                                              Sarah K. Brown (WVSB #10845)
Colorado Bar No. 52463                                              Mountain State Justice, Inc.
Ohio Bar No. 0100561                                                1217 Quarrier St.
P.O. Box 97                                                         Charleston, WV 25301
Forest Hill, WV                                                     Phone: (304) 344-3144
Phone: (681) 335-0074                                               sarah@msjlaw.org
jsidney@climatedefenseproject.org

**<u>Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. 2242</u>**

I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I have discussed with Petitioner the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

<u>/s/ Jonathan Sidney</u>                                                                                   Date: March 6, 2026